UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

|  |  |
|---|---|
| ALISON PATRICIA TAYLOR, on behalf of herself and a class of all others similarly situated, | ) Case No. 1:17-cv-11067 ) ) HON. THOMAS L. LUDINGTON ) MAG. PATRICIA T. MORRIS |
| Plaintiffs, | ) ) |
| v | ) ) |
| CITY OF SAGINAW and TABITHA HOSKINS, sued in her official and individual capacities, | ) ) ) ) |
| Defendants. | ) ) ) |

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Co-Counsel for Plaintiffs
P.O. Box 107
Hemlock, MI  48626
(989) 642-0055
pellison@olcplc.com

MATTHEW E. GRONDA (P73693)
Co-Counsel for Plaintiffs
P.O. Box 70
St. Charles, MI  48655
(989) 249-0350
matthewgronda@gmail.com

O'NEILL, WALLACE & DOYLE, P.C.
GREGORY W. MAIR (P 67465)
BRETT MEYER (P75711)
Attorneys for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
989/790-0960
gregmair@owdpc.com
bmeyer@owdpc.com

_____

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

NOW COME the Defendants, CITY OF SAGINAW, and TABITHA HOSKINS, by and through their Attorney, BRETT MEYER, and for their Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), state as follows:

1.     That this litigation arises out of Plaintiff's claim that she was issued numerous parking citations in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures.

2.     That, specifically, Plaintiff claims that her Fourth Amendment rights were violated when the City of Saginaw ("City"), through its employee, Tabitha Hoskins, "searched" her vehicle by placing a small, temporary chalk mark on her one of her tires in connection with determining whether Plaintiff had violated local parking regulations.

3.      That even under the holding relied upon by Plaintiff in *United States v. Jones*, 565 U.S. 400 (2012), the conduct of Defendant Hoskins did not constitute a "search" under the Fourth Amendment.

4.      That even assuming, *arguendo*, that the City's conduct or Defendant Hoskins's conduct constituted a "search," same was reasonable for reasons including, but not limited to, that it is subject to the community caretaking and administrative search exceptions to the Fourth Amendment's prohibition against warrantless searches.

5.      That, further, Defendant Hoskins is entitled to qualified immunity.

6.      That pursuant to Local Rule 7.1(a)(2), Defendants hereby certify that counsel for these Defendants sought concurrence by way of a conference with the Plaintiff's Attorneys and that concurrence has been denied.

7.      That the instant Motion is further supported by the accompanying Brief in Support.

WHEREFORE, Defendants, CITY OF SAGINAW and TABITHA HOSKINS, respectfully request that this Honorable Court GRANT their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and enter an Order dismissing Plaintiff's First Amended Complaint with prejudice and in its entirety.

Respectfully Submitted,

s/BRETT MEYER (P75711)
Attorney for Defendants
300 St. Andrews Road, Suite 302
Date:  June 5, 2017          Saginaw, Michigan  48638
bmeyer@owdpc.com

4

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send confirmation of such filing to the following:

Philip L. Ellison                    pellison@olcplc.com

Matthew E. Gronda              matthewgronda@gmail.com

Gregory W. Mair                   gregmair@owdpc.com
                                         dana@owdpc.com

Brett Meyer                          bmeyer@owdpc.com
                                         sheryl@owdpc.com


Respectfully submitted,


Dated: June 5, 2017                s/ BRETT MEYER (P75711)
                                         Attorney for Defendants
                                         300 St. Andrews Road, Suite 302
                                         Saginaw, Michigan  48638
                                         989/790-0960
                                         bmeyer@owdpc.com

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| ALISON PATRICIA TAYLOR, on behalf of herself and a class of all others similarly situated, | ) Case No. 1:17-cv-11067 ) ) HON. THOMAS L. LUDINGTON ) MAG. PATRICIA T. MORRIS |
| Plaintiffs, | ) ) |
| v | ) ) |
| CITY OF SAGINAW and TABITHA HOSKINS, sued in her official and individual capacities, | ) ) ) ) |
| Defendants. | ) ) |

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Co-Counsel for Plaintiffs
P.O. Box 107
Hemlock, MI  48626
(989) 642-0055
pellison@olcplc.com

MATTHEW E. GRONDA (P73693)
Co-Counsel for Plaintiffs
P.O. Box 70
St. Charles, MI  48655
(989) 249-0350
matthewgronda@gmail.com

O'NEILL, WALLACE & DOYLE, P.C.
GREGORY W. MAIR (P 67465)
BRETT MEYER (P75711)
Attorneys for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
989/790-0960
gregmair@owdpc.com
bmeyer@owdpc.com
_____

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

PREPARED BY:
BRETT MEYER (P75711)
Attorney for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
989/790-0960

ii

# TABLE OF CONTENTS

**CASES**                                          **PAGES**

Table of Authorities ……………………………………   iv-v

Questions Presented ……………………………………   vi

Statement of Controlling or Most Appropriate Authority for the
Relief Requested ………………………………………...   vii

Introduction  ……………………………………………...   1-3

Statement of Facts ……………………………………   3-5

Standard of Review ……………………………………   5-6

Law and Argument ……………………………………   6-21

   I.  THIS CASE IS DISTINGUISHABLE FROM *JONES*,
      AND NO "SEARCH" OCCURRED IN THIS CASE
      UNDER THE FOURTH AMENDMENT …………….   6-14

   II.  EVEN IF A SEARCH OCCURRED, IT WAS
       REASONABLE ……………………………………   14-21

   III. DEFENDANT HOSKINS IS CLEARLY ENTITLED
        TO QUALIFIED IMMUNITY ………………………..   19-20

Conclusion ………………………………………………..    22

## TABLE OF AUTHORITIES

### CASES                                                    PAGES

*Anderson v. Creighton,*
  483 U.S. 635 (1987).................................................................................... vii, 20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...........................................................................................6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...........................................................................................6

*Cady v. Dombrowski,*
  413 U.S. 433 (1973)........................................................................ vii, 14, 15, 16

*California v. Greenwood,*
  486 U.S. 35 (1988)...........................................................................................13

*Colorado v. Bertine,*
  479 U.S. 367 (1987)..........................................................................................18

*Cooper v. California,*
  386 U.S. 58 (1967)............................................................................................16

*Eidson v. State of Tenn. Dep't of Children's Servs.,*
  510 F.3d 631 (6th Cir. 2007) .............................................................................6

*Elder v. Holloway,*
  510 U.S. 510 (1994)..........................................................................................19

*Florida v. Jardines,*
  133 S.Ct. 1409 (2013) ................................................................................ 11, 12

*Jackson v. Williams,*
  No. 10-cv-14985, 2013 WL 150032 ..................................................................3

*Jones v. City of Cincinnati,*
  521 F.3d 555 (6th Cir. 2008) .............................................................................5

*Katz v. United States,*
  389 U.S. 347 (1967)........................................................................................7, 9

*Kentucky v. King,*
  563 U.S. 452 (2011)..........................................................................................12

*Monell v. Dep't of Social Servs.,*
  436 U.S. 658 (1978)............................................................................................3

*New York v. Burger,*
  482 U.S. 691 (1987)..........................................................................................18

iv

*South Dakota v. Opperman,*
  428 U.S. 364 (1976) ............................................................14
*U.S. v. Skinner,*
  690 F.3d 772 (6th Cir. 2012) ...............................................7
*United States v. Coccia,*
  446 F.3d 233 (1st Cir. 2006) ...............................................16
*United States v. Houston,*
  813 F.3d 282 (6th Cir. 2016) ....................................... vii, 9
*United States v. Jones,*
  565 U.S. 400 (2012) ................................. vii, 1, 3, 6, 7, 8, 9, 10, 11, 13, 14, 16, 17
*United States v. Knotts,*
  460 U.S. 276 (1983) ............................................................11
*United States v. Rodriguez-Morales,*
  929 F.2d 780 (1st Cir. 1991) ...............................................16
*United States v. Williams,*
  354 F.3d 497 (6th Cir. 2003) ...............................................15
*Whren v. United States,*
  517 U.S. 806 (1996) .................................................. vii, 19
*Wilson v. Layne,*
  526 U.S. 603 (1999) ............................................... 19, 20

## **STATUTES**

42 U.S.C. § 1983 ......................................................................3
MCL 257.674 ..........................................................................17
MCL 257.6a .............................................................................18

## **RULES**

FED. R. CIV. P. 12(b)(6) ......................................... ii, 5, 14, 21

## <u>QUESTIONS PRESENTED</u>

I.     DOES THE USE OF CHALK TO MARK THE TIRE OF A VEHICLE ON A PUBLIC ROADWAY FOR PURPOSES OF ENFORCING A PARKING REGULATION CONSTITUTE A SEARCH UNDER THE FOURTH AMENDMENT?

> Defendants would Answer, "No."
> Plaintiff would Answer, "Yes."

II.    EVEN IF USING CHALK TO MARK THE TIRE OF A VEHICLE CONSTITUTES A SEARCH UNDER THE FOURTH AMENDMENT, IS SUCH A SEARCH REASONABLE?

> Defendants would Answer, "Yes."
> Plaintiff would Answer, "No."

III.   IS DEFENDANT TABITHA HOSKINS ENTITLED TO QUALIFIED IMMUNITY?

> Defendants would Answer, "Yes."
> Plaintiff would Answer, "No."

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE
## AUTHORITY FOR THE RELIEF REQUESTED

In this case involving questions of constitutional law, Defendants seek relief in the form of dismissal of Plaintiff's First Amended Complaint with prejudice and in its entirety.  Specifically, Defendants assert that the conduct at issue in this case – marking the tires of a vehicle in connection with enforcing local parking regulations – does not constitute a search under the Supreme Court's holding in *United States v. Jones*, 565 U.S. 400 (2012).  Moreover, photographing of Plaintiff's vehicle in connection with enforcing local parking regulations does not constitute a violation of the Fourth Amendment under the Sixth Circuit's holding in *United States v. Houston*, 813 F.3d 282 (6th Cir. 2016).

Additionally, even if this Court determines that a search occurred in this case, said search was reasonable and falls within the "community caretaking" and administrative search exceptions to the Fourth Amendment's prohibition against warrantless searches as demonstrated by the Courts' decisions in *Cady v. Dombrowski*, 413 U.S. 433 (1973) and *Whren v. United States*, 517 U.S. 806 (1996).

Finally, individual Defendant, Tabitha Hoskins, is entitled to qualified immunity pursuant to *Anderson v. Creighton*, 483 U.S. 635 (1987).

## INTRODUCTION

This case presents a question for this Court that has never been expressly addressed in any decision of which Defendants are aware:  does a public employee's use of chalk to mark the tire of an illegally parked vehicle constitute a violation of the Fourth Amendment's prohibition against unreasonable warrantless searches? Looking beyond the supposed novelty of the question, however, the answer is readily apparent:  it does not.

Plaintiff's erroneous assertion to the contrary appears to be based solely upon the Supreme Court's Opinion in the case of *United States v. Jones*, 565 U.S. 400 (2012). *See Plf's First Am. Compl.* at pg. 4-5, ¶¶ 30-32 (Dkt. 9).  Defendants submit that even under *Jones*, there is no basis for the Plaintiff's claims in this case. However, this Brief will also delve into the universe of Fourth Amendment jurisprudence that is obviously populated by more than just the *Jones* decision. Whereas Plaintiff has not gone beyond the Supreme Court's legally and factually distinguishable Opinion in *Jones*, Defendants will.

By way of example, Plaintiff's First Amended Complaint broadly alleges that the conduct at issue occurred in the absence of any "exigent circumstances," as if that were the controlling issue with regard to her claims.  (Dkt. 9 at pg. 2, ¶ 2).  What Plaintiff fails to recognize, however, is that other exceptions exist to the Fourth Amendment's prohibition against unreasonable warrantless searches – including the

"community caretaker" exception and the "administrative search" exception – under these exceptions, even if Defendants' conduct amounted to a "search" under the Fourth Amendment, the search should otherwise be deemed reasonable.

Indeed, Plaintiff's claims in this case fail as a matter of law on numerous bases, including: (1) that marking a tire with chalk does not amount to a "search" under the Fourth Amendment; (2) that even if "chalking" a tire amounts to search, the search is reasonable; (3) that the conduct at issue is not a constitutional violation under at well-established exceptions to the Fourth Amendment's warrant requirement.

Moreover, the individual Defendant in this case, Tabitha Hoskins, is entitled to dismissal because: (1) she did not commit any constitutional violation; and (2) she is unequivocally entitled to qualified immunity.

A claim is not meritorious simply because it is novel, and this case presents a perfect example of that fact. The "searches" at issue in this case, to the extent they could be considered "searches" at all under the Fourth Amendment, were not for purposes of any criminal investigation. Rather, they were simply conducted for purposes of determining whether Plaintiff had committed a civil infraction by parking her vehicle for periods of time longer than those prescribed by local

regulation.  To that end, the "searches" were entirely a function of a regulatory framework to enforce local parking regulations – City Ordinances.[1]

Simply stated, the attempt here by Plaintiff to extend the holding in *Jones* to an extreme and far-reaching level is contrary to established law.  Dismissal is required.

## STATEMENT OF FACTS

This Court has previously stated that "chalk writing is not permanent and easily washes away with water." *Jackson v. Williams*, No. 10-cv-14985, 2013 WL 150032 at *6 – Exhibit 1.  In the Opinion and Order containing that statement, this Court also indicated that chalk "is normally completely erased after a simple rain storm." *Id.*

Despite this Court's prior common sense approach to the issue of "chalking," Plaintiff claims that employees of Defendant, City of Saginaw ("City"), "vandalized" her vehicles by marking tires with a small chalk line while she was in the process of incurring fourteen (14) parking tickets since 2014. (Dkt. 9 at pg. 1-2,

---

[1] To prevail in a suit under 42 U.S.C. § 1983 against a municipality, a plaintiff must demonstrate that the alleged constitutional violation occurred because of a municipal policy or custom. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.*  While Defendants do not address whether the City of Saginaw maintained a policy or custom that caused the alleged constitutional violations in the instant Motion, they do not concede this point, and expressly reserve the right to raise this issue in a subsequent Motion for Summary Judgment in the event that the instant Motion is denied.

3

¶¶ 1, 11).  Plaintiff goes on to allege that a practice utilized by municipalities across the country amounts to an unreasonable warrantless search.  In that regard, the crux of Plaintiff's allegations, taken in the light most favorable to her for purposes of the instant Motion, is relatively simple.  Plaintiff alleges that Defendant Hoskins, a parking enforcement officer employed by the City of Saginaw, marked her tires with chalk and took photographs of the markings to ascertain whether Plaintiff's vehicles exceeded the time-limits in designated parking zones within the City.  (Dkt. 9 at pg. 3, ¶¶ 14-17).  As stated *supra*, Plaintiff's was issued citations for failing to lawfully park her vehicles on no less than fourteen (14) occasions.  This action seeking, *inter alia*, monetary damages and equitable relief followed.

It is significant that Plaintiff's First Amended Complaint does not allege, nor could it allege, that she has ever been the subject of criminal prosecution relating to any relevant parking citation, as the citations amount to civil infractions under Michigan law.  Additionally, Plaintiff does not allege that Defendants ever obtained any information by temporarily marking her tires beyond how long her vehicle had been parked in a designated area.

Moreover, Plaintiff does not allege that Defendants obtained any "information" regarding where she took her vehicle or what she was doing for relevant time periods while her vehicle was parked.  Simply stated, Defendants did not sustain any "information" by placing a chalk mark on Plaintiff's tires that could

not have been, and was not otherwise obtained by even less invasive means – photographing the Plaintiff's vehicle.[2]

This is not a case where a governmental employee utilized some advanced form of technology, such as GPS tracking device, to determine how long Plaintiff's vehicles had been parked in a certain area. Rather, the technology utilized – if it could even be called technology – was rudimentary at best; it was not invasive; and it did not provide any information to Defendants that was not already provided by way of the governmental employee's photographing of Plaintiff's vehicles.

Simply stated, no Fourth Amendment "search" occurred in this case, and even assuming, *arguendo*, that a search did occur, it was not unreasonable. Plaintiff's claims must fail.

## STANDARD OF REVIEW

The instant Motion requests dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires dismissal where a party has failed to state a claim upon which relief can be granted. In considering the instant Motion to Dismiss, the Court must construe the Complaint in a light most favorable to Plaintiff and accept all well-pled allegations as true. *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). However, the United States Supreme Court has noted that "the tenet that a court must

---

[2] Defendants would vehemently dispute that placing a chalk mark on a tire to determine how long a vehicle has been parked in a time-limited parking area is invasive in any respect.

5

accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Rather, "to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). Thus, it follows that the Plaintiff must allege facts to state a cognizable claim for relief that is more than merely conceivable, but is actually plausible.

## LAW AND ARGUMENT

## I.   THIS CASE IS DISTINGUISHABLE FROM *JONES*, AND NO "SEARCH" OCCURRED IN THIS CASE UNDER THE FOURTH AMENDMENT.

The Fourth Amendment generally prohibits "unreasonable searches and seizures." Consequently, a threshold question for determining whether the Fourth Amendment has been violated is whether a search or seizure has occurred. One of the questions presented by this case is whether the literal touching of the tread on a private citizen's tires constitutes a search under the Fourth Amendment.

As discussed, *supra*, Plaintiff hangs her proverbial hat in this case on the Supreme Court's decision in *United States v. Jones*, 565 U.S. 400 (2012). This case

6

presents factual circumstances that are a far cry from those before the Supreme Court in *Jones*.

In *Jones*, the criminal defendant was the subject of an investigation related to alleged narcotics trafficking. *Id.* at 402. Without a valid warrant, government agents installed a GPS tracking device on the undercarriage of a vehicle registered to the defendant's wife, while it was parked in a public parking lot. *Id.* at 402-403. The Sixth Circuit has previously emphasized the fact that the installation of the tracking device was "secret." *U.S. v. Skinner*, 690 F.3d 772, 779 (6th Cir. 2012) ("[t]hat case involved the **secret placement** of a tracking device on the defendant's car.") (*citing Jones*, 565 U.S. at 403) (emphasis added).

In *Jones*, the majority discussed the Supreme Court's decision in *Katz v. United States*, 389 U.S. 347 (1967), and indicated that *Katz's* "reasonable expectation of privacy" test was meant to supplement, not supersede, a traditional "common law trespassory test." *Jones*, 565 U.S. at 409. The Court also held that a mere trespass by a government official is not enough to constitute a Fourth Amendment violation. *Id.* at 404. Rather, a trespass must occur for the specific purpose of gathering information to constitute a search under the Fourth Amendment. *Id.* at 404 ("[i]t is important to be clear about what occurred in this case: The Government physically occupied private property for the purpose of obtaining information.").

7

Significantly, however, the *Jones* Court also made note of the fact that the governmental agents in that case "trespassorily **inserted the <u>information-gathering device</u>**" on the defendant's vehicle. *Id.* at 410 (emphasis added).

In this case, Defendant Hoskins is not alleged to have inserted any "information-gathering device" on the Plaintiff's vehicle. To the contrary, she is alleged to have marked the tread of a tire – the physical contact point between Plaintiff's vehicle and a public roadway – with a piece of chalk.

By marking the tire with chalk, Defendant Hoskins did not gain any information about where the vehicle had been, where it was going, or any activities that the Plaintiff may have been engaged in. Indeed, she did not gain any information at all. Analogous actions by the government agents in *Jones* would have been to place a GPS tracking device on the suspect's vehicle and return later to ensure that the GPS tracker was still there.

Defendants are not aware of a single case where any Federal Court has ever held that placing a mark on a vehicle and subsequently returning to ensure that the mark is still there constitutes an effort by the government to "obtain information." Indeed, the only effort to obtain information in this case occurred when Defendant Hoskins returned to where Plaintiff's vehicle was unlawfully parked and issued a

8

citation after observing that the vehicle had been in the same location for more than the allotted time by reviewing prior photographs she had taken.[3]

And it is abundantly clear that Defendant Hoskins's observation and photographing of Plaintiff's vehicle did not constitute a violation of the Fourth Amendment. In *United States v. Houston*, 813 F.3d 282, 285 (6th Cir. 2016), the criminal defendant was convicted of being a felon in possession of a firearm. The primary evidence utilized against the defendant at trial was video footage obtained from a camera mounted on a public utility pole to surveil the defendant's family farm. *Id.* at 285-286. The camera was mounted without a warrant. *Id.* at 286.

The Sixth Circuit held that the defendant's "Fourth Amendment rights were not violated because he has no reasonable expectation of privacy in what he 'knowingly exposes to the public.'" *Id.* at 288 (*quoting Katz*, 389 U.S at 351). The *Houston* Court also addressed the concerns of some of the concurrences in the *Jones* decision. Specifically, the Court in *Houston* noted that:

> Because the camera did not track Houston's movements away from the farm, the camera did not do what Justice Sotomayor expressed concern about with respect to GPS tracking: 'generate[] a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations.

*Id*. at 290 (*quoting Jones*, 565 U.S. 414 (Sotomayor, J., concurring).

---

[3] In the criminal context, this would be akin to a "plain view" search.

In this case, the only "information" that Defendants allegedly gathered was whether Plaintiff moved her vehicle while it was parked on a street within the City of Saginaw – i.e., whether the vehicle was parked in an area in excess of a time-limit imposed by local Ordinance. Defendants did not secretly implant any device on the Plaintiff's vehicle, and indeed, did not monitor Plaintiff's movements or her activity in public. The only "monitoring" of Plaintiff's vehicle began when Defendant Hoskins took a photograph of the Plaintiff's vehicle. It ceased when Defendant Hoskins took a subsequent photograph of Plaintiff's vehicle, or at the latest, when Plaintiff removed her vehicle from the area in which it was parked.

**The "chalking" of Plaintiff's vehicle did not relay any actual information to Defendant. The only information that was obtained in this case was by virtue of Defendant Hoskins's physical observation of the Plaintiff's vehicle, which required her to return to the vehicle's location to view whether or not the vehicle had moved.** To the extent that placing a temporary chalk mark on the tread of a vehicle's tire would even constitute a common law trespass of the type envisioned in *Jones*, it does not constitute a search because the chalk did not relate or transmit any information to the Government.

To claim that this case is on all fours with *Jones*, or that it fits neatly within the framework of that decision is an overreach. It remains clear that a person traveling via automobile on public streets has no reasonable expectation of privacy

10

in his movements from one locale to another.  *United States v. Knotts*, 460 U.S. 276, 281 (1983).  In *Knotts*, the Supreme Court held that even in the case of electronic monitoring, where same does not invade upon a legitimate expectation of privacy, no search has occurred.  *Id.* at 285.  The *Jones* decision did not abrogate this rule of law, but indicated that it supplemented a common law trespass test.  However, because no trespass occurred that specifically transmitted information to the government (again, the "information" obtained by Defendants was obtained through visual observation), this Court must return to the "legitimate expectation of privacy" test formulated in *Katz*.

Clearly, the Plaintiff had no legitimate expectation of privacy in the tread of her tires and the location of same upon public thoroughfares.  Moreover, there is an implicit consent or license involved in the alleged searches here because Plaintiff clearly knew, or at least should have known, that chalk marks on her tires were being utilized in connection with Defendants' enforcement of local parking regulations.

In *Florida v. Jardines*, 133 S.Ct. 1409, 1417-1418 (2013), a case decided after *Jones*, the Supreme Court relied upon its holding in *Jones* to determine that the government's use of a drug-sniffing dog to investigate a suspect's home and its immediate surroundings was a search within the meaning of the Fourth Amendment. However, the Court did not invalidate its prior determination that in some

11

circumstances, a license may exist to engage in certain activities without violating the Fourth Amendment. *Id.* at 1415.

In *Jardines*, the Supreme Court reiterated that "[a] license may be implied from the **habits of the country**, notwithstanding the strict Rule of English Common law as to entry upon a close." *Id.* at 1415 (emphasis added). Thus, in the context of approaching a home to knock on a door, "a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" *Id.* at 1416 (*quoting Kentucky v. King*, 563 U.S. 452, 470 (2011)).

That any private citizen might touch the tread on the tires of another vehicle parked in a public area on a public road for any number of reasons, including as an accident or to provide some assistance (e.g., to determine if a tire is flat) should not be disputed. Moreover, it should not be disputed that a "habit" of this country has long been for time-based parking regulations to be enforced by temporarily marking a vehicle's tires with chalk. The utilization of such practices is hardly unique to the City of Saginaw. Rather, it could be characterized as a pervasive practice that has been utilized by municipalities since sometime after the advent of the automobile.

In placing a chalk mark on the tread of a tire of a vehicle parked on a public roadway, Defendant Hoskins was not taking action that should have come as some surprise or shock to Plaintiff. Indeed, Plaintiff does not allege that she was unaware

12

of this activity when she received the first of the fourteen (14) parking citations alleged in her First Amended Complaint.

Simply stated, Defendants' actions in placing a chalk mark on Plaintiff's tire which independently conveyed no information is totally inapposite to utilizing a GPS tracking device to monitor the movements of a vehicle from afar.  Defendants' conduct in this case does not amount to a search under the Fourth Amendment.  This case is really only factually commensurate with *Jones* in the sense that it involves a vehicle.  In terms of the legal inquiry involved, this case is much more similar to the Supreme Court's decision in *California v. Greenwood*, 486 U.S. 35 (1988).

In *Greenwood*, government officials seized and investigated multiple garbage bags left on the roadside by a suspect.  *Id.* at 40.  The Court reasoned that government officials who trespassed on the defendant's property to obtain information from the contents of opaque plastic garbage bags did not commit a Fourth Amendment violation because the defendant had knowingly exposed the garbage to the public.  *Id.* at 40.

The facts in this case are even more supportive of a conclusion that a search did not take place.  Here, Plaintiff knowingly exposed the tread of her tires and her vehicle's stationary location for a limited time to the public.  That any manner of markings on the tread of the Plaintiff's tires (including simple markings picked up in the course of driving her vehicle on public roads) would have been visible and

available to determine whether Plaintiff's vehicle had remained parked in a certain area in excess of the time permitted by local Ordinance is without question.

Dismissal is required pursuant to Fed. R. Civ. P. 12(b)(6).

## II.     EVEN IF A SEARCH OCCURRED, IT WAS REASONABLE.

An issue that was not addressed in the *Jones* decision was whether the government's search by utilizing a GPS tracking device was reasonable.  565 U.S. at 413.  As in *Jones*, the Plaintiff's First Amended Complaint in this case does not address the question of whether the alleged searches were reasonable or justified by some exception to the Fourth Amendment's warrant requirement (beyond a cursory statement that the alleged searches were not justified by exigent circumstances).

Federal constitutional jurisprudence has long recognized an exception to the Fourth Amendment's warrant requirement for searches and seizures made pursuant to the "community caretaking" requirement.  Indeed, "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and conveniences is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976).

The Supreme Court has explained that community caretaking functions justify warrantless searches when the functions are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).  While the Sixth Circuit

14

has cautioned that "[t]he community caretaking function of the police cannot apply where . . . there is significant suspicion of criminal activity," such suspicion is clearly not at issue in this case. *United States v. Williams*, 354 F.3d 497, 508 (6th Cir. 2003). Indeed, it is clear that none of the alleged "searches" in this case were for evidence of criminal activity. Plaintiff does not make any such allegation in her First Amended Complaint, and moreover, the individual Defendant alleged to have conducted the searches is undisputedly not a police officer.

As the Court stated in *Cady*, "[s]tates and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may be operated on public streets and highways." 413 U.S. at 441. Further "[b]ecause of the extensive regulation of motor vehicles and traffic . . . the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office." *Id.* While "[s]ome such contacts will occur because the officer may believe the operator has violated a criminal statute . . . many more will not be of that nature." *Id.*

This case presents one of those types of contacts: the enforcement of parking regulations. Clearly, the enforcement of parking regulations constitutes conduct completely divorced from the investigation of any criminal activity. Rather, the enforcement of parking regulations is simply the City's way of facilitating the efficient movement of traffic on its streets and attempting to assure public safety and

convenience. By creating and enforcing parking regulations the City is simply attempting to ensure that parked vehicles will not impede traffic and create safety hazards.

The community caretaking that is at issue here is analogous to a police officer investigating a traffic accident. Under Plaintiff's reading of *Jones*, if an officer responds to a traffic accident and touches an individual's vehicle without their consent and for purposes of obtaining information about the manner in which the accident occurred, any traffic citation issued to the driver of that vehicle (including a civil infraction) would be invalid as a violation of the Fourth Amendment. This is precisely the type of conduct that the community caretaking exception permits. Indeed, the community caretaking exception even goes so far as to permit warrantless seizures of illegally parked vehicles by way of impounding those vehicles. *See e.g.*, *United States v. Coccia*, 446 F.3d 233, 239 (1st Cir. 2006); *United States v. Rodriguez-Morales*, 929 F.2d 780, 785 (1st Cir. 1991).

As the Court stated in *Cady*, *supra*, "[t]he ultimate standard set forth in the Fourth Amendment is reasonableness." 413 U.S. at 439. Further, "whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case." *Id.* (*quoting Cooper v. California*, 386 U.S. 58, 59 (1967)).

The facts and circumstances in this case give rise to one unassailable conclusion:  that Defendants' alleged search of Plaintiff's vehicle was reasonable under the circumstances as a means for determining whether parking regulations were being violated and engaging in a community caretaking function.  Again, Plaintiff's reliance upon *Jones* to allege that a search occurred in this case does not preclude any proper finding by this Court that such a search would be reasonable under the facts and circumstances alleged.

Because the community caretaking exception applies to Defendants' activities here, Plaintiff's Complaint must be dismissed.

Moreover, the alleged "searches" at issue in this case constitute administrative searches for purposes of enforcing a statutory and / or regulatory scheme.  Michigan statute, and the City of Saginaw Code of Ordinances provide that the City is acting well within its purview in establishing and enforcing parking regulations by limiting the time for parking in a specified parking space.   MCL 257.674, relating to "prohibited parking" provides that:

> (1) A vehicle shall not be parked, except if necessary to avoid conflict with other traffic or in compliance with the law or the directions of a police officer or traffic-control device, in any of the following places:
>
> ***
> (w) In violation of an official sign restricting the period of time for or manner of parking.
>
> ***

17

(4) A person who violates this section is responsible for a civil infraction.[4]

Further, Section 70.03 of the City's Code of Ordinances, provides in part that:

(A)   The City Manager is hereby empowered to direct and control traffic; to create quiet and safety zones; to designate and approve of all official traffic control signals; to designate emergency vehicles; to designate streets or portions thereof closed to traffic by reason of construction or repairs; to designate play streets and their hours of use.

(B)   The City Manager is hereby empowered, subject to approval of the Council, to designate through streets and the speed limits thereon; to designate the location of all official traffic control signals; **to prescribe the manner and duration of parking of vehicles**; to create loading zones and bus, taxicab, and dray stands; to designate the route of trucks, tractors, and trailers through the City; to designate the maximum weight of any vehicle permitted upon any bridge; to make all needful rules for the direction of traffic or parking of vehicles on any highway, alley or place not unlawful nor inconsistent with this title; and to establish fees for the use of temporary traffic regulatory devices or equipment and block party permits.

(emphasis added).

In enforcing this regulatory framework, Defendants are engaging in nothing more than administrative searches (if they could be called searches at all).  In *New York v. Burger*, 482 U.S. 691, 716-717 (1987), the Supreme Court upheld the constitutionality of a warrantless administrative inspection on the grounds that the search did not appear to be "a 'pretext' for obtaining evidence of . . . violation of . . . penal laws."  Relying on *Burger* and *Colorado v. Bertine*, 479 U.S. 367, 371-372

---

[4] MCL 257.6a provides that a "civil infraction" is "an act or omission prohibited by law which is not a crime."

18

(1987), the Supreme Court has explained: "the exemption from the need for probable cause (and warrant), which is accorded to searches made for the purpose of inventory or administrative regulation, is not accorded to searches that are *not* made for those purposes." *Whren v. United States*, 517 U.S. 806, 811 (1996) (emphasis in original).

Thus, while the need for probable cause (and a warrant) generally exists in relation to non-administrative searches – in the absence of some other justifiable exception – this Court need not go further than the fact that alleged searches in this case were made to the enforce Michigan statute and local administrative regulations.

Under the administrative search exception to the Fourth Amendment, as well as the community caretaking exception, dismissal is required.

## III.   DEFENDANT HOSKINS IS CLEARLY ENTITLED TO QUALIFIED IMMUNITY.

Under qualified immunity, government officials are shielded from liability for civil damages if their conduct does not violate a clearly established constitutional right or statutory right that a reasonable official should have been aware of. *Elder v. Holloway*, 510 U.S. 510, 513 (1994). "A court evaluating a qualified immunity claim must first determine whether the plaintiff has alleged the deprivation of a constitutional right, and, if so, proceed to determine whether that right was clearly established at the time of the violation." *Wilson v. Layne*, 526 U.S. 603, 604 (1999). In this context, the term "clearly established" has been identified as requiring that

19

the contours of the right were sufficiently clear so that a reasonable government official would understand that what he or she is doing violates that right. *Id.* While the official's actions do not need to have been previously held to be unlawful, the unlawfulness of the action **must be apparent** in light of pre-existing law. *Id.*

In short, qualified immunity is the rule and not the exception; it "protects all but the plainly incompetent or those who knowingly violate the law." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

In this case, there can be no dispute that Defendant Hoskins, a parking enforcement officer employed by the City, did come anywhere close to violating a "clearly established" constitutional right by placing a chalk mark on one of Plaintiff's tires. To the contrary, she did not violate any constitutional right at all; and even assuming, *arguendo*, that some right was violated, there can be no dispute (as evidenced by the discussion, *supra*) that whether or not her conduct amounted to a search or was unreasonable was, and is, anything but well-settled.[5]

---

[5] Defendants would contend that it is well-settled that the conduct at issue here did not violate any constitutional right under the Fourth Amendment. However, for purposes of this section, even if that were a close question, the Court should grant qualified immunity to Defendant Hoskins for just that reason: that the conduct presents a close question. One thing that the conduct at issue in this case certainly does not present is a readily ascertainable conclusion that any unconstitutional search occurred.

20

For all of the aforementioned reasons, Defendant Hoskins is entitled to qualified immunity and Plaintiff's claims against her should be dismissed under Rule 12(b)(6).

## **CONCLUSION**

WHEREFORE, Defendants, CITY OF SAGINAW and TABITHA HOSKINS, respectfully request that this Honorable Court GRANT their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and enter an Order dismissing Plaintiff's First Amended Complaint with prejudice and in its entirety.

Respectfully Submitted,

s/BRETT MEYER (P75711)
Attorney for Defendants
300 St. Andrews Road, Suite 302
Date:  June 5, 2017            Saginaw, Michigan  48638
bmeyer@owdpc.com

21

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing paper with the Clerk

of the Court using the ECF system which will send confirmation of such filing to the

following:

| | |
|---|---|
| Philip L. Ellison | pellison@olcplc.com |
| Matthew E. Gronda | matthewgronda@gmail.com |
| Gregory W. Mair | gregmair@owdpc.com<br>dana@owdpc.com |
| Brett Meyer | bmeyer@owdpc.com<br>sheryl@owdpc.com |

Respectfully submitted,

Dated: June 5, 2017            s/ BRETT MEYER (P75711)
Attorney for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
989/790-0960
bmeyer@owdpc.com

22