# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: April 25, 2019

Mr. Philip Lee Ellison
P.O. Box 107
Hemlock, MI 48626

Mr. Gregory William Mair
Mr. Brett T. Meyer
O'Neill, Wallace & Doyle
300 St. Andrews Road
Suite 302
Saginaw, MI 48605

              Re:  Case No. 17-2126, *Alison Taylor v. City of Saginaw, et al*
                  Originating Case No. : 1:17-cv-11067

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                  Yours very truly,

                                  Deborah S. Hunt, Clerk

                                  Cathryn Lovely
                                  Deputy Clerk

cc:  Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0079p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

ALISON PATRICIA TAYLOR,

    *Plaintiff-Appellant*,

    *v.*

CITY OF SAGINAW; TABITHA HOSKINS,

    *Defendants-Appellees.*

No. 17-2126

---

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:17-cv-11067—Thomas L. Ludington, District Judge.

Argued: October 2, 2018

Decided and Filed: April 25, 2019

Before: KEITH, KETHLEDGE, and DONALD, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant.  Brett Meyer, O'NEILL, WALLACE & DOYLE, P.C., Saginaw, Michigan, for Appellees.  **ON BRIEF:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant.  Brett Meyer, O'NEILL, WALLACE & DOYLE, P.C., Saginaw, Michigan, for Appellees.

---

**AMENDED OPINION**

---

BERNICE BOUIE DONALD, Circuit Judge.  The City of Saginaw (the "City") uses a common parking enforcement practice known as "chalking," whereby City parking enforcement officers use chalk to mark the tires of parked vehicles to track how long they have been parked.

No. 17-2126 *Taylor v. City of Saginaw, et al.* Page 2

Parking enforcement officers return to the car after the posted time for parking has passed, and if the chalk marks are still there—a sign that the vehicle has not moved—the officer issues a citation. Alison Taylor, a frequent recipient of parking tickets, sued the City and its parking enforcement officer Tabitha Hoskins, alleging that chalking violated her Fourth Amendment right to be free from unreasonable search. The City moved to dismiss the action. The district court granted the City's motion, finding that, while chalking may have constituted a search under the Fourth Amendment, the search was reasonable. Because we chalk this practice up to a regulatory exercise, rather than a community-caretaking function, we **REVERSE**.

## I.

## BACKGROUND

Between 2014 and 2017, Tabitha Hoskins chalked Taylor's tires on fifteen separate occasions and issued her citations in kind. Each citation included the date and time the chalk was placed on her vehicle's tires. The cost of a citation starts at $15 and increases from there.

On April 5, 2017, Taylor filed this 42 U.S.C. § 1983 action against the City, alleging defendants violated her Fourth Amendment right against unreasonable searches by placing chalk marks on her tires without her consent or a valid search warrant. Taylor also sued Hoskins in her individual capacity. The defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), asserting that chalking was not a search within the meaning of the Fourth Amendment, or alternatively, if it was a search, it was reasonable under the community caretaker exception.[1] Hoskins also asserted a qualified immunity defense.

---

[1] The City also argued that the search fell within the administrative search exception. However, the City does not raise this on appeal. Therefore, we do not address it here.

The district court granted the defendants' motion to dismiss, finding that the City engaged in a search as defined by the Fourth Amendment by placing chalk marks on Taylor's tires to gather evidence of a parking violation. The district court, however, agreed with the defendants that the search was reasonable because: (1) there is a lesser expectation of privacy in automobiles; and (2) the search was subject to the community caretaker exception to the warrant requirement.[2]  Taylor timely appeals.

## II.

## ANALYSIS

### A. *Standard of Review*

"We review de novo a district court's decision to grant a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 926 (6th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). On a motion to dismiss, "[w]e must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "The defendant has the burden of showing that the plaintiff has failed to state a [plausible] claim for relief." *DirectTV, Inc., v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991)).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The basic purpose of this Amendment, as recognized in countless decisions of [the Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Court of City & Cty. of S.F.*, 387 U.S. 523, 528

---

[2]Because the district court found that the search did not amount to a Fourth Amendment violation, it did not address Hoskins' qualified immunity defense.

Case 1:17-cv-11067-TLL-PTM ECF No. 20 PageID.235 Filed 04/25/19 Page 5 of 12
Case: 17-2126   Document: 31-2   Filed: 04/25/2019   Page: 4   (5 of 12)

No. 17-2126                    Taylor v. City of Saginaw, et al.                    Page 4

(1967). The Fourth Amendment "gives concrete expression to a right of the people which 'is basic to a free society.'" *Id.* (quoting *Wolf v. People of State of Colorado*, 338 U.S. 25, 27 (1949)).

To determine whether a Fourth Amendment violation has occurred, we ask two primary questions: first, whether the alleged government conduct constitutes a search within the meaning of the Fourth Amendment; and second, whether the search was reasonable. We address each in turn.

**B. Search**

The answer to the first question is yes, chalking is a search for Fourth Amendment purposes. The Supreme Court has articulated two distinct approaches to determine when conduct by a governmental agent constitutes a search. Under the most prevalent and widely-used search analysis articulated in *Katz. v. United States*, 389 U.S. 347 (1967), a search occurs when a government official invades an area in which "a person has a constitutionally protected reasonable expectation of privacy." *Id.* at 360 (Harlan, J., concurring). Under *Katz*, a search is analyzed in two parts: "first that a person exhibit an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Id.* at 361. A "physical intrusion" is not necessary for a search to occur under *Katz*. *See id.* at 360.

In recent years, however, the Supreme Court revisited the seldom used "property-based" approach to the Fourth Amendment search inquiry in *United States v. Jones*, 565 U.S. 400 (2012). Under *Jones*, when governmental invasions *are* accompanied by physical intrusions, a search occurs when the government: (1) trespasses upon a constitutionally protected area, (2) to obtain information. *Id.* at 404–405.

In *Jones*, the government surreptitiously attached a GPS device to a car to track the car's movements. *Id.* at 403. The Supreme Court held that the government's trespass upon an effect—the vehicle—to obtain information related to the car's movement was a search. *Id.* at 404–405. *Jones* echoed the understanding that the "[t]he *Katz* reasonable-expectation-of-privacy test has been *added to*, not substituted for, the common-law trespassory test." *Id.* at 409.

Case 1:17-cv-11067-TLL-PTM ECF No. 29 PageID.236 Filed 04/25/19 Page 6 of 12 (6 of 12)
Case: 17-2126 Document: 91-2 Filed: 04/25/2019 Page: 6

No. 17-2126    *Taylor v. City of Saginaw, et al.*    Page 5

(emphasis in original). For our purposes, *Jones* provides the appropriate analytical framework for determining whether chalking constitutes a search within the meaning of the Fourth Amendment.

In accordance with *Jones*, the threshold question is whether chalking constitutes common-law trespass upon a constitutionally protected area. Though *Jones* does not provide clear boundaries for the meaning of common-law trespass, the Restatement offers some assistance. As defined by the Restatement, common-law trespass is "an act which brings [about] intended physical contact with a chattel in the possession of another." Restatement (Second) of Torts § 217 cmt. e (1965). Moreover, "[a]n actor may . . . commit a trespass by so acting upon a chattel as intentionally to cause it to come in contact with some other object." *Id.* Adopting this definition, there has been a trespass in this case because the City made intentional physical contact with Taylor's vehicle. As the district court properly found, this physical intrusion, regardless of how slight, constitutes common-law trespass. This is so, even though "no damage [is done] at all." *Jones*, 565 U.S. at 405 (quoting *Entick v. Carrington,* 95 Eng. Rep. 807, 817 (C.P. 1765)).

Our search analysis under *Jones* does not end there. Rather, once we determine the government has trespassed upon a constitutionally protected area, we must then determine whether the trespass was "conjoined with . . . an attempt to find something or to obtain information." *Id.* at 408 n.5. Here, it was. Neither party disputes that the City uses the chalk marks for the purpose of identifying vehicles that have been parked in the same location for a certain period of time. That information is then used by the City to issue citations. As the district court aptly noted, "[d]espite the low-tech nature of the investigative technique . . . , the chalk marks clearly provided information to Hoskins."[3] This practice amounts to an attempt to obtain information under *Jones*.[4]

---

[3] For the first time on appeal, the City latches on to the district court's passing implication that chalking is so widespread and long-standing, that society may have granted it an implied license. Therefore, the City contends, chalking is not a trespass, and thus not a search. As support, the City relies on *Florida v. Jardines*. 569 U.S. 1, 8 (2013), where the Supreme Court held that when the government engages in activity that is expected from ordinary citizens, an implied license might exist for the activity. But *Jardines* does little to further the City's argument. *Jardines* does not broadly proposition that every "widespread" trespass by the government constitutes an implied license. Rather, only when a government trespass is "no more than any private citizen might do" (i.e. to approach a

No. 17-2126               *Taylor v. City of Saginaw, et al.*               Page 6

Having answered the first question under our Fourth Amendment analysis, we now turn to whether the search was reasonable.

## C. Reasonableness

Taylor argues that the search was unreasonable because the City fails to establish an exception to the warrant requirement. Specifically, Taylor argues that the search at issue is not covered by the community caretaker exception and that the City fails to establish that any other exception applies to their warrantless search. The City responds that, even if chalking is a search under *Jones*, the search was reasonable because there is a reduced expectation of privacy in an automobile. The City further contends that the search was subject to the community caretaker exception. We disagree with the City.

The Fourth Amendment does not proscribe all searches, "but only those that are unreasonable." *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 619 (1989). "[W]e must begin with the basic rule that searches conducted outside the judicial process, without prior approval by [a] judge or magistrate, are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (quotation marks omitted). The government bears the burden of demonstrating an exception to the warrant requirement. *United States v. Jeffers*, 342 U.S. 48, 51 (1951).

The district court found that the City's warrantless search of Taylor's vehicle was reasonable because there is a lesser expectation of privacy with automobiles. We disagree. Though an automobile enjoys a "reduced expectation[] of privacy" due to its "ready mobility,"

---

person's home and knock on the front door), might a license be implied. *Id.* On this record, the City fails to establish a common practice among private citizens to place chalk marks on other individual's tires—much less to obtain evidence of wrongdoing—that would amount to the type of "customary invitation" described in *Jardines*. *Id.* at 9.

[4]Employing a similar *Jones* analysis, the district court in *Schmidt v. Stassi*, 250 F.Supp.3d 99, 101 (E.D. La. 2017), found that an officer's collection of DNA from the defendant's car door while it was parked at a shopping mall was a search under the Fourth Amendment. The court made clear that it was not the collection of Schmidt's DNA that made it a search, rather, it was that the DNA swab "involved the physical touching" of Schmidt's vehicle to obtain information. *Id.* at 103–04. The fact that it occurred in a public parking lot and "did not damage the [vehicle] in any way," was not significant to the search inquiry. *Id.* The same is true here.

Case 1:17-cv-11067-TLL-PTM ECF No. 20, PageID.238 Filed 04/25/19 Page 8 of 12 (8 of 12)
Case: 17-2126     Document: 91-2     Filed: 04/25/2019     Page: 7

No. 17-2126                          Taylor v. City of Saginaw, et al.                          Page 7

*California v. Carney*, 471 U.S. 386, 392 (1985), we explained that this diminished expectation of privacy is what justified the automobile exception to the warrant requirement. *Autoworld Specialty Cars, Inc. v. United States*, 815 F.2d 385, 389 (6th Cir. 1987). The automobile exception permits officers to search a vehicle without a warrant if they have "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citation omitted). No such probable cause existed here. Thus, the automobile exception is inapplicable.

Undeterred, the City relies on the Supreme Court's pre-*Jones* decision in *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974), to justify its warrantless search based solely on a vehicle's reduced expectation of privacy. In *Cardwell*, after the police secured a warrant for Lewis' arrest and arrested him, the police towed his car to a police impoundment lot, where a warrantless search of the outside of his car revealed paint scrapings tying Lewis' car to the fender of the victim's car. *Id.* at 587, 588. Lewis was later tried and convicted of murder. *Id.* at 585. As the City's argument goes, if scraping paint from a car without a warrant was held reasonable in *Cardwell*, then certainly placing washable chalk on a vehicle's tire is reasonable.

Crucial distinctions in *Cardwell* deflate the City's argument. First, the vehicle in *Cardwell* was towed by the police following Lewis' arrest. *Id.* at 587. Second, and most important, the warrantless search in *Cardwell* was upheld on the basis that it was conducted upon "probable cause," *id.* at 589—an, "established" exception to the warrant requirement, *Carney*, 471 U.S. at 392—not simply the vehicle's reduced expectation of privacy. Here, unlike *Cardwell*, the City commences its search on vehicles that are parked legally, without probable cause or even so much as "individualized suspicion of wrongdoing"—the touchstone of the reasonableness standard. *See Relford v. Lexington-Fayette Urban Cty. Gov't*, 390 F.3d 452, 458 (6th Cir. 2004) ("[A] search ordinarily must be based on individualized suspicion of wrongdoing."). Thus, we reject the City's contention that searching Taylor's vehicle was reasonable based solely on its reduced expectation of privacy.

Next, the City attempts to seek refuge in the community caretaker exception. This exception applies "whe[n] . . . government actors [are] performing 'community-caretaker' functions rather than traditional law-enforcement functions." *Ziegler v. Aukerman*, 512 F.3d

Case 1:17-cv-11067-TLL-PTM ECF No. 29-1 PageID.239 Filed 04/25/19 Page 9 of 12 (9 of 12)
Case: 17-2126 Document: 31-2 Filed: 04/25/2019 Page: 9

No. 17-2126                    Taylor v. City of Saginaw, et al.                    Page 8

777, 785 (6th Cir. 2008). Unlike other exceptions, it requires that we "look at the *function* performed by a [government agent]" when a search occurs. *Hunsberger v. Wood*, 570 F.3d 546, 554 (4th Cir. 2009) (emphasis in original). To apply, this function must be "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).

This exception has its genesis in the Supreme Court's decision in *Cady v. Dombrowski*. There, the defendant's vehicle was disabled as a result of an accident and left on the side of the road following his arrest for drunk-driving. *Id.* at 443. Pursuant to "standard procedure," police officers conducted a search of the defendant's vehicle to retrieve a revolver reasonably suspected of being in the trunk. *Id.* The Court found the search was reasonable, as it was "to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." *Id.*

We explained that "the community caretaker exception does not provide the government with refuge from the warrant requirement except when delay is reasonably likely to result in injury or ongoing harm to the community at large." *United States v. Washington*, 573 F.3d 279, 289 (6th Cir. 2009). Courts have applied the community caretaker exception in narrow instances when public safety is at risk. *See e.g.*, *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (applying the community caretaker exception to a warrantless inventory search of a vehicle after it was impounded for violating parking ordinances, which had jeopardized the public safety and the efficient movement of vehicular traffic); *see also United States v. Sanchez*, 612 F.3d 1, 7 (1st Cir. 2010) (upholding the community caretaker exception to a warrantless vehicle impoundment, when officers were acting "not as investigators but as community caretakers, responsible for protecting public safety and preventing hazards by removing vehicles that impede traffic, risk vandalism, or create inconvenience.") (Lynch, J., concurring).

The City fails to carry its burden of establishing that the community caretaker exception applies in this instance. First, on these facts, the City fails to demonstrate how this search bears a relation to public safety. The City does not show that the location or length of time that Taylor's vehicle was parked created the type of "hazard" or traffic impediment amounting to a public safety concern. Nor does the City demonstrate that delaying a search would result in "injury or

No. 17-2126 *Taylor v. City of Saginaw, et al.* Page 9

ongoing harm to the community." *Washington*, 573 F.3d at 289. To the contrary, at the time of the search, Taylor's vehicle was lawfully parked in a proper parking location, imposing no safety risk whatsoever. Because the purpose of chalking is to raise revenue, and not to mitigate public hazard, the City was not acting in its "role as [a] community caretake[.]" *Id.* at 287.

The cases the City cites in support of its position that it is engaging in a community caretaking are distinguishable. First, the City relies on *United States v. Rohrig*, 98 F.3d 1506, 1509 (6th Cir. 1996), where we applied the community caretaker exception to an officer's warrantless entry of a home after neighbors complained of excessively loud music and the defendant could not hear the officer's constant knocks at the door. There, we recognized that "strict adherence to the warrant requirement would subject the community to a continuing and noxious disturbance for an extended period of time." *Id.* at 1522. No similar ongoing public disturbance exists here to justify a warrantless search.

The City also relies on two First Circuit cases, *United States v. Coccia*, 446 F.3d 233, 239 (1st Cir. 2006) and *United States v. Rodriguez-Morales*, 929 F.2d 780, 785 (1st Cir. 1991), that are likewise distinguishable (and not controlling). In *Coccia*, the First Circuit upheld the warrantless search of a vehicle based in part on the officer's belief that the vehicle "might contain items constituting a threat to public safety, such as explosive material, chemicals or biological agents." *Coccia*, 446 F.3d at 240. Similarly, in *Rodriguez-Morales*, following the defendant's arrest, the officer impounded his vehicle. *Rodriguez-Morales*, 929 F.2d at 785. Applying the community caretaker exception, the court explained that leaving the vehicle on the shoulder of the highway "not only . . . posed a safety threat, but also would have been easy prey for vandals." *Id.* at 786. Again, the common ingredient in both *Coccia* and *Rodriguez-Morales*, but not present here, is the threat to "public safety."[5]

The City points to the importance of "maintaining efficient, orderly parking." While the City is entitled to maintain efficient, orderly parking, the manner in which it chooses to do so is

---

[5]Placing emphasis on the phrase "*criminal* statute" in *Cady*, the City advances the argument that, because the search here was conducted to obtain evidence relating to the violation of a "civil statute," it cannot be barred from invoking the community caretaker exception. However, because we hold that the community caretaker exception fails in other regards, we need not reach this issue.

No. 17-2126          *Taylor v. City of Saginaw, et al.*          Page 10

not without constitutional limitation. As the Supreme Court explains, "the [Fourth] Amendment does not place an unduly oppressive weight on [the government] but merely . . . an orderly procedure. . . ." *Jeffers*, 342 U.S. at 51 (citation omitted).

The City does not demonstrate, in law or logic, that the need to deter drivers from exceeding the time permitted for parking—before they have even done so—is sufficient to justify a warrantless search under the community caretaker rationale. This is not to say that this exception can never apply to the warrantless search of a lawfully parked vehicle. Nor does our holding suggest that no other exceptions to the warrant requirement might apply in this case. However, on these facts and on the arguments the City proffers, the City fails to meet its burden in establishing an exception to the warrant requirement.

### III.

### CONCLUSION

Taking the allegations in Taylor's complaint as true, we hold that chalking is a search under the Fourth Amendment, specifically under the Supreme Court's decision in *Jones*. This does not mean, however, that chalking violates the Fourth Amendment. Rather, we hold, based on the pleading stage of this litigation, that two exceptions to the warrant requirement—the "community caretaking" exception and the motor-vehicle exception—do not apply here. Our holding extends no further than this. When the record in this case moves beyond the pleadings stage, the City is, of course, free to argue anew that one or both of those exceptions do apply, or that some other exception to the warrant requirement might apply.

For the reasons above, we **REVERSE** the district court's order granting the City's motion to dismiss and **REMAND** for further proceedings consistent with this order.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 17-2126

ALISON PATRICIA TAYLOR,

    Plaintiff - Appellant,

v.

CITY OF SAGINAW; TABITHA HOSKINS,

    Defendants - Appellees.

> FILED
> Apr 25, 2019
> DEBORAH S. HUNT, Clerk

Before: KEITH, KETHLEDGE, and DONALD, Circuit Judges.

# AMENDED JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's order granting the City of Saginaw's motion to dismiss is REVERSED, and the case is REMANDED for further proceedings consistent with the order of this court.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk