UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

|  |  |
|---|---|
| ALISON PATRICIA TAYLOR, on behalf of herself and a class of all others similarly situated, | ) <br> ) Case No. 1:17-cv-11067 <br> ) <br> ) HON. THOMAS L. LUDINGTON <br> ) MAG. PATRICIA T. MORRIS |
| Plaintiffs, | ) ) |
| v | ) ) |
| CITY OF SAGINAW and TABITHA HOSKINS, sued in her official and individual capacities, | ) ) ) ) |
| Defendants. | ) ) ) |

| | |
|---|---|
| OUTSIDE LEGAL COUNSEL PLC <br> PHILIP L. ELLISON (P74117) <br> Co-Counsel for Plaintiffs <br> P.O. Box 107 <br> Hemlock, MI 48626 <br> (989) 642-0055 <br> pellison@olcplc.com | GREGORY W. MAIR (P67465) <br> KAILEN C. PIPER (P82865) <br> NICHOLAS P. GAMBER (P83738) <br> Attorneys for Defendants <br> 300 St. Andrews Rd., Suite 302 <br> Saginaw, MI  48638 <br> (989) 790-0960 <br> gregmair@owdpc.com |

MATTHEW E. GRONDA (P73693)
Co-Counsel for Plaintiffs
P.O. Box 70
St. Charles, MI  48655
(989) 249-0350
matthewgronda@gmail.com

_____

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 56**


**ORAL ARGUMENT REQUESTED**

NOW COME the Defendants, CITY OF SAGINAW and TABITHA HOSKINS, by and through their attorney GREGORY W. MAIR, and for their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 state as follows:

1.      This litigation arises out of Plaintiff's claim that she was issued multiple parking tickets in violation of the Fourth Amendment's prohibition on unreasonable searches.

2.      Specifically, Plaintiff claims that her Fourth Amendment rights were violated because Ms. Tabitha Hoskins, a parking enforcement official for the City of Saginaw, marked one of her tires with a small line of chalk on several occasions.

3.      No search occurred under the "trespass theory" of the Fourth Amendment, as articulated in *United States v. Jones*, 565 U.S. 400, 406 (2012) because the City did not use chalk to gather any information.

4.      No search occurred under the "trespass theory" of the Fourth Amendment because the City of Saginaw has a common custom where individuals place leaflets, flyers, and other small objects temporarily on parked vehicles located in public parking areas.  The common custom within the City of Saginaw created a "license" for the City to place a small, temporary chalk mark on a tire of a vehicle and therefore no trespass occurred.

5.     Because the City did not gather information from its use of chalk and because it did not trespass by using chalk, Plaintiff's action must be dismissed since no search occurred.

6.     Regardless of whether any search occurred, the chalking was reasonable under the administrative search rationale because the City of Saginaw had significant interests in promoting road safety, downtown businesses, and equal access to parking spots that outweighed the minor intrusion of chalking.

7.     Regardless of whether any search occurred, the chalking was reasonable under the *de minimis* rationale because tire chalking is extremely minor and temporary, and outweighed by the interests of the City.

8.     Regardless of whether any search occurred, the chalking was reasonable under the vehicle search rationale because parking officials had probable cause to believe some wrongdoing was occurring when they marked the tires.

9.     Regardless of whether any search occurred, the chalking was reasonable under the community caretaker rationale because the enforcement was devoid of criminal enforcement.

10.     Regardless of whether any search occurred, the chalking was reasonable under the consent rationale because individuals provided consent to the City of Saginaw to perform limited searches of the exterior of their vehicles.

11.     The City of Saginaw cannot be liable because the alleged injury was not a product of the City's own acts, and there is no identifiable policy that the City was the moving force behind Plaintiff's alleged constitutional deprivation.

12.     Ms. Hoskins cannot be individually liable because there was no clearly established precedent that established chalking as an unreasonable search during the time of the incidents.

13.     Ms. Hoskins cannot be individually liable because she acted reasonably at all relevant times when enforcing the City's parking ordinances.

14.     That pursuant to Local Rule 7.1(a)(2), Defendants hereby certify that counsel for these Defendants sought concurrence by way of a conference with the Plaintiff's Attorneys and that concurrence has been denied.

WHEREFORE, Defendants, CITY OF SAGINAW and TABITHA HOSKINS, respectfully request that this Honorable Court GRANT their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and enter an Order dismissing Plaintiff's Complaint with prejudice and in its entirety.

Respectfully Submitted,

Dated:       March 9, 2020           /s/GREGORY W. MAIR (P67465)
                                     Attorney for Defendants
                                     300 St. Andrews Road, Suite 302
                                     Saginaw, Michigan  48638

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

|  |  |
|---|---|
| ALISON PATRICIA TAYLOR, on behalf of herself and a class of all others similarly situated,<br><br>Plaintiffs,<br><br>v<br><br>CITY OF SAGINAW and TABITHA HOSKINS, sued in her official and individual capacities,<br><br>Defendants. | ) Case No. 1:17-cv-11067<br>)<br>) HON. THOMAS L. LUDINGTON<br>) MAG. PATRICIA T. MORRIS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Co-Counsel for Plaintiffs
P.O. Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

GREGORY W. MAIR (P67465)
KAILEN C. PIPER (P82865)
NICHOLAS P. GAMBER (P83738)
Attorneys for Defendants
300 St. Andrews Rd., Suite 302
Saginaw, MI  48638
(989) 790-0960
gregmair@owdpc.com

MATTHEW E. GRONDA (P73693)
Co-Counsel for Plaintiffs
P.O. Box 70
St. Charles, MI  48655
(989) 249-0350
matthewgronda@gmail.com

<u>**DEFENDANTS' BRIEF IN SUPPORT OF THEIR**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

PREPARED BY:
GREGORY W. MAIR
KAILEN C. PIPER
NICHOLAS P. GAMBER
Attorney for Defendants
300 St. Andrews Road, Suite 302
Saginaw, MI 48638
989/790-0960

# <u>TABLE OF CONTENTS</u>

<u>**PAGES**</u>

Table of Authorities ........................................................................ v

Questions Presented ...................................................................... viii

Statement of Controlling or Most Appropriate Authority...................................ix

Introduction ........................................................................ ..1

Statement of Facts ................................................................ ..3

Standard of Review............................................................... ..7

Law and Argument ............................................................... ..9

    I.    CHALKING BY THE CITY DID NOT CONSTITUTE A SEARCH UNDER THE FOURTH AMENDMENT ................. 10

    II.    EVEN IF A SEARCH OCCURRED, CHALKING TIRES WAS REASONABLE UNDER THE FOURTH AMENDMENT. ........................................................... 11

        A.    ADMINISTRATIVE SEARCH ............................................... 12

        B.    CHALKING TIRES IS *DE MINIMIS* ..................................... 15

        C.    THE AUTOMOBILE EXCEPTION ......................................... 17

        D.    COMMUNITY CARETAKER SEARCH ............................. 19

        E.    CHALKING TIRES OCCURRED WITH CONSENT.................................................................. 21

    III.    THE CITY OF SAGINAW IS NOT LIABLE UNDER § 1983 .............................................................. 23

IV.     MS. HOSKINS IS NOT PERSONALLY LIABLE.......................... 25

Conclusion ........................................................................................... 27

# TABLE OF AUTHORITIES

## CASES                                                                    PAGES

*Cady v. Dombrowski,*
    413 U.S. 433 (1973) .................................................................. ix, 2, 9, 19, 26

*Carroll v. United States,*
    267 U.S. 132 (1925) .................................................... ix, 2, 9, 17, 18, 19, 26

*City of Indianapolis v. Edmonds,*
    531 U.S. 32 (2000) ................................................................................ 12

*City of Oklahoma City v. Tuttle*
    471 U.S. 808 (1985)............................................................................. .24

*Copeland v. Machulis,*
    57 F.3d 476 (6th Cir. 1995) ...................................................... .. 8

*Florida v. Jardines,*
    569 U.S. 1 (2013) ............................................................... ix, 1, 10

*Florida v. Jimeno,*
    500 U.S. 248 (1991) ................................................................. 22

*Illinois v. Lidster,*
    540 U.S. 419 (2004) ...................................................... 12, 13, 14

*Illinois v. Rodriguez,*
    497 U.S. 177 (1990) ................................................................. 21

*Katz v. U.S.,*
    389 U.S. 347 (1967)............................................................... 17

*McLean v. 988011 Ontario Ltd.,*
    224 F.3d 797 (6th Cir. 2000) ................................................. .. 8

*Meyers v. City of Cincinnati,*
    14 F.3d 1115 (6th Cir. 1994) .............................................. x, 3, 9, 10, 23, 24

*Mich. Dep't of State Police v. Sitz*,
    496 U.S. 444 (1990) ........................................................ ix, 2, 9, 12, 13, 26

*Monell v. Department of Social Services of City Of New York*,
    436 U.S. 658 (1978) ............................................................................ 23, 24

*Olmstead v. United States,*
    277 U.S. 438 (1928) ................................................................................ 17

*Poe v. Hayden*,
    853 F.2d 418 (6th Cir. 1988) ................................................................. 25

*Schneckloth v. Bustamonte*,
    412 U.S. 218 (1973) ............................................................. ix, 2, 9, 21, 26

*Scott v. Harris*,
    550 U.S. 372 (2007)................................................................................ . 9

*Shively v. Green Local School Dist. Bd. Of Ed.*,
    579 Fed. Appx. 348 (6th Cir. 2014) ....................................... x, 3, 9, 25, 26

*United States v. Brown*,
    447 Fed. Appx. 706 (6th Cir. 2012) ..................................................19, 20

*United States v. Jacobsen*,
    466 U.S. 109 (1984) ...........................................................ix, 2, 9, 15, 16, 26

*United States v. Jones*,
    565 U.S. 400 (2012) ............................................. ix, 1, 7, 9,  10, 11, 14, 17

*United States v. Lewis*,
    869 F.3d 460 (6th Cir. 2017) .........................................................16, 19, 20

## **CONSTITUTIONAL AMENDMENTS**

U.S. Const. amend. IV ........................................................................ix, 2, 9

## **STATUTES**

42 U.S.C. § 1983...........................................................................ix, 3, 7, 23

## **COURT RULES**

Fed. R. Civ. P. 12(b)(6) .......................................................................7, 10

Fed. R. Civ. P. 56 ...........................................................................7, 8, 27

## **QUESTIONS PRESENTED**

I.     DOES A SEARCH OCCUR WHEN A CITY USES CHALK TO MARK
       TIRES OF PARKED VEHICLES IN ACCORDANCE WITH LOCAL
       CUSTOMS AND/OR THE CHALK IS NOT USED BY THE CITY TO
       OBTAIN ANY INFORMATION?

       Defendants would Answer, "No."
       Plaintiff would Answer, "Yes."

II.    IS CHALKING REASONABLE UNDER THE FOURTH AMENDMENT
       WHEN IT IS USED TO ENFORCE PARKING ORDINANCES THAT
       PROMOTE SIGNIFICANT GOVERNMENT INTERESTS?

       Defendants would Answer, "Yes."
       Plaintiff would Answer, "No."

III.   IS THE CITY FREE FROM LIABILITY WHEN CHALKING IS
       DISCRETIONARY, NOT AN OFFICIAL POLICY, NOT A PERVASIVE
       CUSTOM, NOT A PRACTICE THAT LAWMAKERS KNOW OF, AND
       NOT AN ACT BY A FINAL DECISION-MAKER?

       Defendants would Answer, "Yes."
       Plaintiff would Answer, "No."

IV.    IS TABITHA HOSKINS ENTITLED TO QUALIFIED IMMUNITY WHEN
       THERE WAS NO CLEARLY ESTABLISHED PRECEDENT AND SHE
       ACTED REASONABLY?

       Defendants would Answer, "Yes."
       Plaintiff would Answer, "No."

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF REQUESTED

The Fourth Amendment protects individuals from unreasonable searches and seizures.  U.S. Const. amend. IV.  Under the Fourth Amendment, a search occurs when there is (1) a trespass into a constitutionally protected area for (2) the purpose of gathering information.  *United States v. Jones*, 565 U.S. 400, 406 (2012).  A trespass does not occur, and therefore a search does not occur, if there is a common practice that creates a "license" to physically intrude onto some area.  *Florida v. Jardines*, 569 U.S. 1, 8 (2013).

Even where there is a search within the meaning of the Fourth Amendment, the Supreme Court has recognized several exceptions to the warrant requirement where a search is reasonable.   The well-delineated exceptions to the warrant requirement include administrative searches, *de minimis* searches, community caretaker searches, automobile searches, and searches subject to consent.  *See Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 449-450 (1990); *United States v. Jacobsen*, 466 U.S. 109, 125 (1984); *Cady v. Dombrowski,* 413 U.S. 433, 441 (1973); *Carroll v. United States*, 267 U.S. 132, 157-58 (1925); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

To hold a municipality liable under 42 U.S.C. § 1983 for an alleged Fourth Amendment violation, a plaintiff must show that the injury is "a product of the city's own acts; thus, an unconstitutional policy of the city must be identified as having been

the moving force of the plaintiff's constitutional deprivation." *Meyers v. City of Cincinnati*, 14 F.3D 1115, 1120 (6th Cir. 1994). Similarly, individual government officials are entitled to qualified immunity and are not personally liable when there is no clearly established constitutional prohibition or they act reasonably. *Shively v. Green Local School Dist. Bd. of Ed.*, 579 Fed. Appx. 348, 354 (6th Cir. 2014).

x

## **INTRODUCTION**

This case arises out of a government employee's use of chalk to mark tires to enforce a municipality's parking ordinances.  The City of Saginaw ("City"), like other municipalities across the United States, recognized a need to enforce parking within its jurisdiction to provide safe roadways and equal access to public parking. *Exhibit 1,* (¶¶ 4,5)—Affidavit of John Stemple.  To enforce parking ordinances, chalk was provided by the City to its parking enforcement officials.  *See Exhibit 2,* at pg. 16—Deposition of Tabitha Hoskins.  The enforcement officials utilized the chalk to notify vehicle owners and operators that the time limitations imposed by City ordinances were being enforced.  *See Exhibit 2,* at pg. 35-42*; Exhibit 3,* (¶¶ 8, 9)— Affidavit of Tabitha Hoskins.  Despite the clear need to enforce parking, Plaintiff filed a Complaint alleging a Fourth Amendment violation against the City and one of its parking officials, Tabitha Hoskins.  *Plf's Compl.* at pg. 1-5 (Dkt. 1).

Tire chalking by the City and its parking officials is not a search under the Fourth Amendment.  A search occurs under the "trespass theory" of the Fourth Amendment when the government performs (1) a trespass into a constitutionally protected area (2) *for the purpose of gathering information*.  *Jones*, 565 U.S. at 406 (emphasis added). A trespass does not occur if there is a common practice that creates a "license" to physically intrude onto the area.  *Jardines*, 569 U.S. at 8.  Here, no trespass occurred because there is a common practice within the City of placing

1

small temporary items onto parked vehicles.  Further, the City did not use chalking to gather information.  Rather, the City used chalk to alert the vehicle owner that parking enforcement officials were monitoring the vehicle.  *See Exhibit 2,* at pg. 35-42; *Exhibit 3,* (¶¶ 8, 9).  Because no trespass occurred and no information was gathered, chalking did not constitute a search.

Even if there was a search, the Fourth Amendment protects individuals from *unreasonable* searches and seizures.  U.S. Const. amend. IV. (emphasis added).  The Supreme Court has recognized that administrative searches, *de minimis* searches, community caretaker searches, vehicle searches, and consent searches are all reasonable under the Fourth Amendment.  *See Sitz*, 496 U.S. at 449-450; *Jacobsen*, 466 U.S. at 125; *Cady*, 413 U.S. at 441; *Carroll,* 267 U.S. at 158; *Schneckloth*, 412 U.S. at 219.

Chalking tires is reasonable under the administrative search rationale because the City's interests outweigh the small temporary physical intrusion that occurs.  Chalking tires is reasonable under the *de minimis* rationale because chalking involves an extremely minor physical intrusion onto a vehicle.  Chalking tires is reasonable under the community caretaker rationale because the practice is devoid of criminal enforcement.  Chalking tires is reasonable under the vehicle search rationale because parking officials have probable cause to believe that some type of wrongdoing is occurring.  Finally, chalking is reasonable under the consent rationale

because individuals agreed to allow the City to search the outside of their vehicles by parking in public locations. Thus, the practice of chalking tires for the purpose of parking enforcement is reasonable and not a violation of the Fourth Amendment.

Neither the City nor Ms. Hoskins are liable for any constitutional violations. The City is not liable for a Fourth Amendment violation under § 1983 because the alleged injury was not a product of the City's own acts, and there is no identifiable policy that the City was the moving force behind Plaintiff's alleged constitutional deprivation. *Meyers*, 14 F.3D at 1120. Individual government officials are entitled to qualified immunity and are not personally liable when there is no clearly established constitutional prohibition or they act reasonably in the situation. *See Shively*, 579 Fed. Appx. at 354. Here, neither the Supreme Court nor the Sixth Circuit had addressed whether tire chalking was an unreasonable search at the time of the alleged incidents. Moreover, Ms. Hoskins acted reasonably under the circumstances. Thus, Ms. Hoskins is entitled to qualified immunity.

## STATEMENT OF FACTS

## I.    BACKGROUND

The City's parking restrictions are set forth in the City of Saginaw Code of Ordinances. If a person violates a parking ordinance, he will be guilty of a civil infraction, not a criminal penalty, and required to pay a small fine. *Exhibit 4—Saginaw Ordinance, Sec. 70.99.* The parking ordinances are designed to promote

safe use on the roadways, downtown businesses, and equal access to parking. *Exhibit 1,* (¶¶ 4, 5); *Exhibit 3,* (¶¶ 5, 6).  The parking ordinances promote safe use on the roadways by ensuring vehicles are parked in an orderly and timely manner. *See Exhibit 1,* (¶ 4); *Exhibit 3,* (¶ 5).  The parking ordinances promote downtown businesses by ensuring parking spaces for customers when they frequent downtown shopping areas.  *See Exhibit 1,* (¶ 5); *Exhibit 3,* (¶ 6).  Finally, parking ordinances promote equal access by ensuring parking spots are available throughout the day and can be utilized by anyone, not just those individuals who get to the spots first. *Exhibit 1,* (¶¶ 4, 5); *Exhibit 3,* (¶¶ 5, 6).

To enforce parking, the City uses parking meters and parking enforcement officials.  Prior to 2019, these parking enforcement officials would mark the tires of certain vehicles with chalk.  *See Exhibit 2*, at pg. 29.  The purpose of the "chalking" was to help enforce the parking ordinances and promote the City's interests regarding safe use on the roadways, helping downtown businesses, and providing equal access to parking.  *See Exhibit 1,* (¶¶ 4, 5); *Exhibit 3,* (¶¶ 5, 6).  Importantly, chalking was not used by parking enforcement officials to identify any information from the vehicle.  *See Exhibit 2,* at pg. 35-42; *Exhibit 3,* (¶¶ 8, 9).  Rather, chalking was used to alert vehicle owners that parking ordinances may be enforced against them.  *See Exhibit 2,* at pg. 35-42; *Exhibit 3,* (¶¶ 8, 9).

The parking enforcement officials gathered their information about parked vehicles by taking pictures of the vehicles. *Exhibit 2,* at pg. 40. These pictures would tell the parking enforcement officials when the vehicle was first identified and what violations occurred. *Exhibit 2,* at pg. 40. The chalking was not a necessary tool for the City. *Exhibit 2,* at pg. 39. Specifically, Ms. Hoskins explained that chalking was discretionary:

> Q: All right. Why do you have a chalking wand then if you're putting things down on a piece of paper?
> A: It's your discretionary (sic) to use it if you want to.

*Exhibit 2,* at pg. 39. Therefore, parking enforcement officials, such as Ms. Hoskins, did not rely on the chalk to gather information about parking violations. *See Exhibit 2,* at pg. 39; *Exhibit 3,* (¶¶ 8, 9).

Within the City there is a custom of placing tickets, leaflets, flyers, and business cards on parked vehicles. *See Exhibit 2,* at pg. 52-53. Specifically, it was explained that tickets are placed in accordance with City customs:

> Q: Oh. What do you do -- what do you do otherwise then [when a ticket cannot be placed on the door handle]?
> A: The windshield.
> Q: Windshield. Okay; all right. It's just like we -- like we come to expect; right? Like we come to learn. All right. I'd like you to take a look at -- I'm going to give you Exhibit C, as well. That's a copy -- I'll make the representation to you, that's a copy of an ordinance that I believe involved the parking -- the way parking laws are handled for -- the City of Saginaw. Do you recognize those provisions in there at all?

5

*Exhibit 2,* at pg. 53.  This custom is widely observed and practiced throughout the City.  *Exhibit 2,* at pg. 52-53.  It is not unusual for a parked vehicle to obtain several leaflets and flyers when it occupies a public space. These small intrusions occur often and without objection by vehicle owners.

Plaintiff, Allison Taylor, frequently violated the City's parking ordinances. *Plf's Compl.* at pg. 3, ¶ 13 (Dkt. 1).  Since 2014, Plaintiff accumulated fourteen (14) parking tickets.  *Plf's Compl.* at pg. 3, ¶ 13 (Dkt. 1).  In connection with several of these parking tickets, the tire of Plaintiff's vehicle was marked with a small line of chalk.  *Plf's Compl.* at pg. 3, ¶ 15 (Dkt. 1).  Parking officials also took pictures of Plaintiff's vehicle to enforce the parking ordinances and issue the tickets against Plaintiff.  *Plf's Compl.* at pg. 3, ¶ 15 (Dkt. 1).

The small chalk marks that were placed on Plaintiff's vehicle were not unusual within the City and they were not used to gather information.  *See Exhibit 2,* at pg. 35-42; *Exhibit 3,* (¶¶ 8, 9)*.* Small intrusions onto parked vehicles occur frequently within the City by the public or otherwise. Moreover, the City did not use the chalk marks to gather information.  *See Exhibit 2,* at pg. 35-42; *Exhibit 3,* (¶¶ 8, 9)*.*  Rather, all of the City's information was gathered by the photographs taken by its enforcement officers.  *See Exhibit 2,* at pg. 40-42.  The chalk was simply to alert the vehicle's owner.

6

## II.   PROCEDURAL HISTORY

Plaintiff filed her Complaint on April 5, 2017 under §1983 alleging that the small chalk marks placed on her tire violated the Fourth Amendment. *Plf's Compl.* at pg. 1-5 (Dkt. 1).  Plaintiff alleged that a search occurred pursuant to the "trespass theory" under the Fourth Amendment, as articulated in *Jones.* 565 U.S. at 406; *Plf's Compl.* at pg. 4, ¶ 26 (Dkt. 1).  The City and Ms. Hoskins filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Def's Motion to Dismiss* at pg. 1-34 (Dkt. 10). This Court granted the Motion and dismissed Plaintiff's Complaint finding that the community caretaker rationale applied. *Order to Dismiss* at pg. 1-13 (Dkt. 14).

Plaintiff appealed the dismissal to the Sixth Circuit and the Sixth Circuit found *at the pleading stage* there was a question regarding whether an unreasonable search occurred.  *Opinion of Sixth Cir.* at pg. 1-10 (Doc. 30-2).  The Sixth Circuit specifically issued an "Amended Opinion" explaining its holding did not extend beyond the "pleading stage" and the City was free to renew its arguments. *Amended Opinion of Sixth Cir.* at pg. 1-10 (Doc. 31-2).  Now the City and Ms. Hoskins bring their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## <u>STANDARD OF REVIEW</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 further provides that "[a] party

7

asserting that a fact cannot be or is genuinely disputed must support the assertion

by:"

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials; or
> (B)  showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot produce
> admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the Court

discussed the parties' burden of proof in deciding a motion for summary judgment:

> [t]he moving party bears the initial burden of establishing an absence
> of evidence to support the nonmoving party's case.  Once the moving
> party has met its burden of production, the nonmoving party cannot rest
> on its pleadings, but must present significant probative evidence in
> support of the complaint to defeat the motion for summary judgment.
> *The mere existence of a scintilla of evidence to support plaintiff's
> position will be insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.*

(internal citations and quotations omitted) (emphasis added).  "In deciding a motion

for summary judgment, the court views the factual evidence and draws all reasonable

inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224

F.3d 797, 800 (6th Cir. 2000).  However, the Court need not blindly adopt a non-

moving party's version of the facts.  As the U.S. Supreme Court has stated:

> [w]hen opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of the facts for purposes
of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007).

## LAW AND ARGUMENT

The Fourth Amendment of the Constitution protects against *unreasonable*
searches and seizures.  U.S. Const. amend. IV.  Under the "trespass theory" of the
Fourth Amendment, a search occurs when there is (1) a trespass into a
constitutionally protected area for (2) the purpose of gathering information.  *Jones*,
565 U.S. at 406.  A search is only considered to be unconstitutional if it is
unreasonable.  *Id.* at 404.  Administrative searches, *de minimis* searches, community
caretaker searches, vehicle searches, or consent searches are considered reasonable.
*See Sitz*, 496 U.S. at 449-450; *Jacobsen*, 466 U.S. at 125; *Cady*, 413 U.S. at 441;
*Carroll,* 267 U.S. at 158; *Schneckloth*, 412 U.S. at 219.

Even where a constitutional violation occurred, a municipality is only liable
when the violation is "a product of the city's own acts" and is the "*moving force* to
a plaintiff's constitutional deprivation."  *Myers*, 14 F.3d at 1120. (emphasis added).
Further, qualified immunity protects individual government employees from
personal liability when there is no clearly established constitutional right or when
they act reasonably under the circumstances. *Shively*, 579 Fed. Appx. at 354.

I.   **CHALKING BY THE CITY DID NOT CONSTITUTE A SEARCH UNDER THE FOURTH AMENDMENT.**

The City did not conduct a search because it did not trespass onto a vehicle by chalking and/or it did not use chalk to obtain information. In *Jones*, the Supreme Court articulated that a search occurs when the government (1) physically trespasses into a constitutionally protected area (2) for the purpose of obtaining information. 565 U.S. at 406. In *Jardines*, the Court reasoned that a knocking on a door was not a trespass, and therefore not a search, because local customs permitted the physical intrusion. 569 U.S. at 8. Here, no trespass occurred since local customs allow small intrusions onto parked vehicles in the City. Additionally, the City used the chalk to inform vehicle owners about parking enforcement, the City did not use chalk to inform its officials about the vehicles. *See Exhibit 2,* at pg. 35-42; *Exhibit 3,* (¶¶ 8, 9)*.* Thus, Plaintiff's action must be dismissed. [1]

The City did not trespass onto a constitutionally protected area because normal customs allow for temporary physical intrusions onto parked vehicles. Just as knocking on a door is a traditional custom, placing items temporarily on vehicles is also a traditional custom in the City. Tickets, leaflets, flyers, advertisements, and other materials are frequently placed on vehicles that are parked in the City. *See*

_____

[1] On Appeal at the Sixth Circuit held that a search did occur when reviewing the facts under a 12(b)(6) Motion to Dismiss, *i.e.* at the pleading stage. Since then, the parties have participated in discovery and new facts have emerged to support the defense that a search did not occur.

*Exhibit 2,* at pg. 52-53. These temporary intrusions are customary and commonplace. *See Exhibit 2,* at pg. 52-53. Therefore, when the City placed chalk marks on tires, it was acting in accordance with the customs of the City and no trespass occurred.

The City did not use chalking to gather information for itself or its agents. Under *Jones* a trespass is only a search if it is for the purpose of obtaining information. 565 U.S. at 406. The City did not use chalking to gather information. *Exhibit 3.* Ms. Hoskins explained that chalking was not necessary because she would take pictures of the vehicles that were parked. *Exhibit 2,* at pg. 40-42. Moreover, the Ms. Hoskins explained the purpose of chalking was not to gather information, but instead to alert vehicle owners that they are being monitored by parking officials. *Exhibit 3,* (¶¶ 8, 9). The City was not chalking tires to gain information, but instead it was chalking tires to alert vehicle owners. Therefore, no information gathering occurred, and no search occurred. Thus, Plaintiff's action must be dismissed.

## II. EVEN IF A SEARCH OCCURRED, CHALKING TIRES WAS REASONABLE UNDER THE FOURTH AMENDMENT.

Chalking tires by the City is reasonable and therefore not a violation of the Fourth Amendment. There are several exceptions to the warrant requirement that constitute a reasonable search under the circumstances: administrative searches, *de minimis* searches, community caretaker searches, automobile searches, and searches subject to consent. Because tire chalking fits into one or several of these warrant

11

exceptions, as explained below, tire chalking is reasonable under the Fourth Amendment. Therefore, Plaintiff's action must be dismissed.

## A.   ADMINISTRATIVE SEARCH.

The alleged "searches" at issue constitute administrative searches under Fourth Amendment jurisprudence. The administrative search exception applies to a temporary inspection of a vehicle when the government has noncriminal interests rationalizing the inspection. *See City of Indianapolis v. Edmonds*, 531 U.S. 32, 40-41 (2000); *Sitz*, 496 U.S. at 449-450. Under the administrative search exception, the interests of the government are weighed against the intrusion onto a vehicle. *Id.* at 451. If the interests outweigh the intrusion, then the search is considered reasonable. *See id.* In this matter, the City's interests greatly outweigh the minor intrusion of chalking a vehicle's tire, and therefore tire chalking by the City is reasonable under the Fourth Amendment.[2]

Inspections of vehicles have been found reasonable under the Fourth Amendment when the government is promoting various interests. In *Sitz*, the Court concluded that temporary, suspicionless inspections were reasonable under the Fourth Amendment because the government's interest in promoting road safety outweighed the temporary inspection of a vehicle. *Id.* at 452. In *Illinois v. Lidster*,

---

[2] The City is not enforcing criminal laws by its parking ordinances and the interests underlying the parking ordinances are not criminal in nature. *Exhibit 4.* Thus, the distinction found in *Edmonds*, does not apply. 531 U.S. at 40-41.

540 U.S. 419, 426-27 (2004), the Court concluded that temporary, suspicionless investigations were reasonable when they were used to elicit information from motorists, but not to identify if the motorists themselves had committed a crime.

Like the temporary road stops in *Sitz,* the City had significant interests that were furthered by enforcing its parking ordinances through the use of chalk.  Parking limitations, and the enforcement parking limitations, promote safe use on the roadways by ensuring vehicles are parked in an orderly and timely manner. *See Exhibit 1, (¶ 4); Exhibit 3, (¶ 5).*  When parking spots are congested, and there is no enforcement, the downtown roadways become flooded with vehicles and people moving in every direction.  *See Exhibit 1, (¶ 4); Exhibit 3, (¶ 5).*  This creates an increased likelihood of vehicle collisions.  *See Exhibit 1, (¶ 4); Exhibit 3, (¶ 5).*  Tire chalking is one manner in which the City enforced its parking ordinances and reduced the congestion, while promoting equal access and opportunity for public parking spaces.  *See Exhibit 1, (¶ 4); Exhibit 3, (¶ 5).*  Like the rationale underlying the temporary road stop in *Sitz*, the rationale underlying parking enforcement by the use of chalk was road safety. Therefore, this Court should follow *Sitz* and find that chalking is reasonable.

Parking enforcement also promotes downtown businesses by ensuring parking spaces are available for customers.  *See Exhibit 1, (¶ 5); Exhibit 3, (¶ 6).* Downtown businesses in the City often do not have their own parking areas and rely

13

on public parking for customers.  *See Exhibit 1,* (¶ 5); *Exhibit 3,* (¶ 6).  By enforcing

parking ordinances with chalk, the City was ensuring that citizens found parking so

that they could frequent downtown businesses.  *See Exhibit 1,* (¶ 5); *Exhibit 3,* (¶ 6).

Without sufficient parking enforcement, many businesses in the City will suffer.  *See*

*Exhibit 1,* (¶ 5); *Exhibit 3,* (¶ 6).  The interest the City has in promoting the livelihood

of downtown businesses through its parking ordinances is substantial and it greatly

outweighs the minor intrusion of a temporary chalk mark.

Assuming, without conceding, the City used the chalk marks to gather

information, then this matter falls in line with *Lidster*. In *Lidster*, the Court found

that the government had significant interests in obtaining information related to

wrongdoing, and temporary suspicionless inspections of vehicles were permitted to

identify the wrongdoing. 540 U.S. at 426-27.  Here, assuming the chalk was used for

obtaining information, then the City was using that information to identify

wrongdoing just like the police officers were in *Lidster*.  Like *Lidster*, City parking

officials were not looking for criminal wrongdoing related to the individual vehicle

owner.   City parking officials were looking to identify violations of parking

ordinances, which are not criminal in nature.  *Exhibit 4.*  Therefore, if this Court

finds that a search did occur pursuant to *Jones*, then it must also find that it was

reasonable pursuant to *Lidster* because the information being gathered was from a

temporary intrusion that was designed to identify noncriminal wrongdoing.

14

Chalking is reasonable because the City's interests outweigh the minimal intrusion onto a vehicle.  Under the administrative search exception, the interests of the City must be weighed against the intrusion that occurs.  As mentioned above, the City's parking ordinances keep the roads from becoming congested and therefore keep the roadways safe. Moreover, the City's parking ordinances keep parking spaces available for people to utilize when they want to patron downtown businesses.  When these interests are weighed against the temporary intrusion, *i.e.* a small temporary chalk mark that quickly washes away, then it becomes clear that chalking is reasonable under the administrative search exception.   Therefore, this Court must dismiss Plaintiff's action.

### B.      CHALKING TIRES IS *DE MINIMIS*.

Chalking tires is reasonable under the Fourth Amendment because it is *de minimis*.  The Supreme Court held that minor intrusions into private property by government officials are considered reasonable under the *de minimis* rationale when the government's interests outweigh the minor intrusion.  *See Jacobsen*, 466 U.S. at 125.  As mentioned above, the City has significant interests that are furthered by enforcing its parking ordinances through the use of chalk, and these interests greatly outweigh the minimal intrusion that a chalk mark creates.

When a minor intrusion occurs, a balancing test is employed.  In *Jacobsen*, the Court found that the warrantless destruction of a small amount of cocaine during

a field drug test was *de minimis* because only a trace amount of material was involved.  *Id.*  The Court explained the destruction was reasonable because the government interests justifying the search and seizure were "substantial" and outweighed the minimal intrusion into private property.  *Id.*  Similarly, in *Cardwell v. Lewis,* 417 U.S. 583, 591-92 (1974), the Court found that examining the outside of a tire and taking small paint scrapings from a vehicle were *de minimis* searches of an individual's constitutional interest.[3]

Chalking is a minimal intrusion. Like the small amount of cocaine involved in *Jacobson*, chalking involves a small amount of material.  A parking official will only mark a single tire, with a small line of chalk. The chalk will wash off shortly after it is applied.  Additionally, chalking is less intrusive than the small amount of scrapings that were taken in *Cardwell*.  Chalking is not permanent like the taking of scrapings in *Cardwell,* and both involve only the exterior of the vehicle.  Taken together, chalking fits neatly within the *de minimis* rationale.

The City's interests greatly outweigh any intrusion by tire chalking.  As mentioned above, the City has significant interests in promoting road safety and downtown economic vitality.  By providing equal access to parking, the City was

---

[3] While the Court in *Cardwell* did not explicitly state that it was applying the *de minimis* rationale, the Court later explained in *Jacobsen* that *Cardwell* was based on the *de minimis* rationale. 466 U.S. at 125. Specifically, the Court explained, "examination of automobile's tires and taking of paint scrapings was a de minimis invasion of constitutional interests" *Id.*

16

ensuring that vehicles were parked in an orderly fashion and road safety was preserved.   *See Exhibit 1,* (¶ 4); *Exhibit 3,* (¶ 5).   Moreover, by providing equal access to downtown parking, the City was helping to provide consistent parking spots for local businesses that their customers rely upon.   *See Exhibit 1,* (¶ 5); *Exhibit 3,* (¶ 6).   The City's interests greatly outweigh the temporary intrusion of chalking. Thus, chalking is reasonable under the *de minimis* rationale.

### C.    THE AUTOMOBILE EXCEPTION.

Chalking is reasonable because vehicles can be searched under the "trespass theory" when a government official has probable cause.[4]   The Court in *Jones* did not address whether a search of a vehicle under the "trespass theory" was reasonable. 565 U.S. at 413.   The Court considered that argument to be forfeited.   *Id.*   However, the Court has previously addressed whether a warrantless search is reasonable for a vehicle under the "trespass theory" in *Carroll*. 267 U.S. at 158-59.

At the time *Carroll* was decided, the "trespass theory" was the controlling theory for Fourth Amendment jurisprudence. *See Olmstead v. United States,* 277 U.S. 438, 457 (1928)*; Katz v. U.S.*, 389 U.S. 347, 352-53 (1967).   The Court in *Carroll* reasoned that the officers could search a vehicle without a warrant because they had probable cause that some type of violation occurred.  267 U.S. at 159.   The

---

[4] The Sixth Circuit Opinion and Order on Appeal specifically provides that the Defendants may re-argue the vehicle exception and/or the community caretaker exception to the warrant requirement beyond the pleading stage.

Court explained that the type of violation did not matter, but instead it was whether the searching officer had a probable cause to believe some violation occurred. *Id.* at 158.

Like the officers in *Carroll*, the City parking officials had probable cause to believe some type of violation occurred, or would occur, when they marked vehicles with chalk. Each vehicle that was marked was parked in a location subject to the City's parking ordinances. *See Exhibit 2,* at pg. 42-45. Parking violations occurred in these locations frequently. The violations all related to a vehicle's occupation of the space. *Exhibit 4.* Thus, each vehicle that was occupying a space, was potentially in violation of a parking ordinances, thereby creating probable cause. Because parking officials had probable cause to believe a violation occurred, or would occur, the temporary chalk mark was reasonable.

In *Carroll*, the Court explained that it did not matter what type of violation occurred; rather, what was key was whether the investigating officer had probable cause to believe that some violation occurred. 267 U.S. at 158. Here, just like in *Carroll*, it does not matter what type of violation occurred, just that the investigating parking officials had probable cause to believe that a violation did occur or would occur. Although these violations were ordinances and not criminal statutes, *Carroll* explains that the distinction does not matter. *Id.* Therefore, this Court should follow *Carroll* and find chalking tires is reasonable because the City had a probable cause

18

to believe a violation of a parking ordinance occurred. Thus, Plaintiff's action should be dismissed because the vehicle rationale applies as articulated in *Carroll*.

### D.   COMMUNITY CARETAKER SEARCH.

Chalking tires is reasonable under the Fourth Amendment because parking officials are undertaking a reasonable and long-accepted community caretaking activity. "The community-caretaking exception applies most clearly when the action of the police is 'totally divorced from the detection, investigation, or acquisition of evidence relating **to the violation of a criminal statute**[.]'" *United States v. Brown*, 447 Fed. Appx. 706, 709 (6th Cir. 2012) (quoting *Cady*, 413 U.S. at 441) (emphasis added). When the community caretaker exception is applied, the actions of the government official must be reasonable. *United States v. Lewis*, 869 F.3d 460, 462 (6th Cir. 2017). Chalking tires was not designed to enforce criminal statutes and the practice was objectively reasonable and long accepted by society; therefore, chalking tires was reasonable under the Fourth Amendment.

In *Lewis*, the Court of Appeals found that the community caretaker exception was applicable because a police officer opened a car door for the sole reason of finding the passenger a safe ride home. *Id.* In *Brown,* the Court reasoned that the community caretaker exception applied to a police officer's stopping of a vehicle because the officer was not seeking to investigate a crime, but only to question the driver as to the whereabouts of a missing minor. 447 Fed. Appx. at 710. Thus, when

19

the purpose of the search is not primarily to enforce a criminal statute, but it is for another purpose, then the community caretaker exception is applicable.

Chalking by the City was designed to enforce its own City ordinances, and not criminal statutes; therefore, the community caretaker exception applies. *Exhibit 4.* Like the officer in *Brown,* the parking officials for the City are not enforcing any criminal statutes and are thus divorced from criminal enforcement. This Court should therefore follow *Brown* and find the community caretaker exception to be applicable.

Chalking is less invasive and more reasonable than opening the doors of a vehicle. In *Lewis*, the Sixth Circuit found that opening a door of a car to determine if a passenger needed a safe ride home was reasonable under the community caretaker rationale. 869 F.3d at 462. Opening the door was intrusive and provided the officer with much more information than a simple chalk mark. However, the Court in *Lewis* found that opening the door was reasonable because the officer was promoting the goal of safe road travel. *Id.* Similarly, the City's use of chalk was promoting its parking ordinances, which were designed to help road safety. *Exhibit 1, (¶ 4); Exhibit 3, (¶ 5).* If opening a car door is reasonable under the community caretaking exception to promote road safety, then chalking a tire is reasonable under the community caretaking exception to promote road safety. Therefore, chalking does not violate the Fourth Amendment.

## E.   CHALKING TIRES OCCURRED WITH CONSENT.

Chalking is reasonable because individuals who park in the City's parking spaces consent to a minimal search of the outside of their vehicles.  A search of private property that occurs after the owner of the property provides consent to search is reasonable under the Fourth Amendment.  *See Schneckloth*, 412 U.S. at 219.  There are three elements that must be met for consent to be valid: (1) the consent must be granted voluntarily, (2) the consent must be obtained from someone with real or apparent authority to give consent, and (3) the scope of the search must not exceed the consent granted.  *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

Individuals who park in a city parking area are voluntarily giving their consent for officials to search the outside of their vehicles.  Throughout the City there are signs notifying individuals that they are subject to parking enforcement.  An individual who parks in a public parking area is, or should be, aware that parking enforcement may occur.  This includes minor examinations of the exterior of a vehicle.  Thus, individuals who park in public areas consent to having the exterior of their vehicles searched.

Individuals who park in public spaces have actual or apparent authority to grant permission to government officials to conduct a search. In *Rodriguez*, the Supreme Court explained that consent can be given by an individual with actual authority or apparent authority. 497 U.S. 185.  Here, anyone driving and parking a

21

vehicle in a public parking area would have apparent authority to consent to a search. A reasonable government official would believe that an individual who drives a vehicle has the ability to consent to having that vehicle searched. Thus, a person who parks in a public parking spot has apparent authority to consent to a search.

Chalking did not exceed the scope of the consent that was granted. In *Florida v. Jimeno*, 500 U.S. 248, 250-251 (1991) the Supreme Court reasoned that the scope of the consent dictates the scope of the permissible search. By parking in a public space, the driver of the vehicle is only consenting to have the outside of his vehicle searched. Leaflets can be placed on the vehicle; tickets can be placed on the vehicle; and identifying information, such as the license plate, can be observed. These are all permissible searches that individuals consent to when they park in a public parking spot.

Chalking tires does not exceed that scope because it only involves searching the outside of the vehicle. Individuals only consent to small intrusions on the outside of their vehicles by parking them in the public space. Chalking the tires of these vehicles stays safely within those parameters. Thus, chalking does not exceed the scope of the consent. Because individuals consented to having the outside of their vehicles searched, and the parking officials stayed within the parameters of that consent, the alleged searches were reasonable. Ultimately, Plaintiff's action must be dismissed because if any search did occur it was reasonable.

22

## III.   THE CITY OF SAGINAW IS NOT LIABLE UNDER § 1983.

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), the Supreme Court held that a local governing body can be sued under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision *officially* adopted and promulgated by that body's officers."   Thereafter, in *Meyers*, the Sixth Circuit set forth the principles to be used to determine under *Monell* whether a municipality is liable pursuant to § 1983.   14 F.3d at 1120.   To be liable, the injury "must always and only be a product of the city's own acts; thus, an unconstitutional policy of the city must be identified as having been the moving force of the plaintiff's constitutional deprivation."   *Id.*   The Court explained a plaintiff can prove such a policy exists under three means:

> (1) an officially promulgated *policy* as that term is commonly understood, *i.e.* a general statement adopted by the city's lawmakers with an intention of governing future conduct; (2) a pervasive *custom or practice*, of which the city lawmakers know or should know; and (3) a *single act* taken by a city employee who, as a matter of state law, has final policymaking authority with respect to the area in which the action was taken.

*Id.* (internal citations omitted).

First, there does not exist an "official policy" adopted by City lawmakers regarding chalking tires.   Further, this was not a single act by a City employee with

23

final policymaking authority in parking enforcement.  Thus, Plaintiff must prove that it was a pervasive custom or practice.

In *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985), the Supreme Court considered the meaning of a pervasive *custom or practice* within the meaning of *Monell*.  The Court held that, "proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, **which policy can be attributed to a municipal policymaker.**"  *Id.* at 821. (emphasis added).  The Court explained, "some limitation must be placed on establishing municipal liability through policies that are not themselves, unconstitutional, or the test set out in *Monell* will become a dead letter."  *Id.* at 823. It is necessary that the policy is attributed to a municipal policymaker.  *Id*. at 821. Thus, to establish proof of such a policy under *Monell*, there must be a statement of the policy by the municipal corporation and its exercise thereof.  *Id.* at 822.

In this case, Plaintiff attempts to hold the City liable for "an official custom and practice," *i.e.* chalking tires.  Specifically, the alleged "policy" at issue is not the result of an "official" act and the exercise of chalking tires cannot be traced back to any municipal policymaker.  In addition, there is no statement of said policy.  Rather, the City provided Ms. Hoskins and its parking officials with chalk as a tool that could be used to perform their job.  Ms. Hoskins even testified that she did not have to chalk tires to enforce tickets. *Exhibit 2,* at pg. 39.  There are identifiable time-limited

24

parking tickets issued without chalk.  *Exhibit 5*—City Photographs.  Moreover, Ms. Hoskins's job was not impacted in any respect if she did not chalk tires.  *Exhibit 2,* at pg. 56.  She was not disciplined for not chalking tires and she was never told that she was *required* to chalk tires.  *Exhibit 2,* at pg. 56.  Rather, her job is to enforce the parking ordinances.  How she chooses to do so is at her own discretion.  It was not the result of any official custom, official practice, or traced back to any particular municipal policymaker.

## IV.    MS. HOSKINS IS NOT PERSONALLY LIABLE.

Regardless of whether a constitutional violation occurred, Ms. Hoskins cannot be liable because she is protected by qualified immunity.  Qualified immunity protects "[g]overnment officials performing discretionary functions" from liability for civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Poe v. Hayden*, 853 F.2d 418, 423 (6th Cir. 1988) (citations omitted). The Sixth Circuit applies a three-pronged analysis in determining a defendant's entitlement to qualified immunity. *Shively*, 579 Fed. Appx. at 354.  First, a court must evaluate whether the facts demonstrate that a constitutional violation occurred.  *Id.*  Second, a court must determine whether the violation involved a clearly established constitutional right of which a reasonable person would have known.  *Id.*  Third, a court must consider whether the plaintiff has offered sufficient evidence to indicate

that what the official allegedly did was objectively unreasonable in light of clearly established constitutional rights. *Id.*

As detailed above, no constitutional violation occurred because no search occurred, and if a search did occur it was reasonable. However, even if this Court finds that a constitutional violation did occur, Ms. Hoskins is entitled to qualified immunity because there was no clearly established constitutional right indicating that chalking tires was an unreasonable search under the Fourth Amendment. Further, Ms. Hoskins acted reasonably at all relevant times.

Ms. Hoskins did not violate a clearly established constitutional right under the Fourth Amendment because the issue has never been squarely decided. Prior to this case, no other Circuit had addressed the issues of the Fourth Amendment and chalking. No case had established if chalking was a search under the "trespass theory," and the Supreme Court indicated that chalking would be reasonable under the above circumstances. *See Sitz*, 496 U.S. at 449-450; *Jacobsen*, 466 U.S. at 125; *Cady*, 413 U.S. at 441; *Carroll,* 267 U.S. at 158; *Schneckloth*, 412 U.S. at 219. Therefore, no clear precedent was established and Ms. Hoskins cannot be liable.

Ms. Hoskins acted reasonably in her role as a parking official. A plaintiff must offer sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of clearly established constitutional rights to avoid qualified immunity. *Shively*, 579 Fed. Appx. at 354. Plaintiff simply has not shown

26

that Ms. Hoskins acted unreasonably. Ms. Hoskins marked tires so that she could alert individual vehicle owners about the parking ordinances. She did not target specific individuals and she did not act with any malice. She was simply doing her job the best way she knew how. Therefore, Ms. Hoskins cannot be liable.

## <u>CONCLUSION</u>

WHEREFORE, Defendants, CITY OF SAGINAW and TABITHA HOSKINS, respectfully request that this Honorable Court GRANT their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and enter an Order dismissing Plaintiff's Complaint with prejudice and in its entirety.

Respectfully Submitted,

Dated: March 9, 2020             /s/GREGORY W. MAIR (P67465)
                                 Attorney for Defendants
                                 300 St. Andrews Road, Suite 302
                                 Saginaw, Michigan 48638