**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

ALISON PATRICIA TAYLOR,

                                          Case Number 17-cv-11067

        Plaintiff,

                                          Honorable Thomas L. Ludington

vs.

CITY OF SAGINAW and TABITHA HOSKINS,

        Defendants.
_____/

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING AMENDED COMPLAINT**

On April 5, 2017, Plaintiff Alison Taylor filed a complaint against the City of Saginaw (the "City") and Tabitha Hoskins, a City parking enforcement official. ECF No. 1. Plaintiff alleged that the City's practice of placing a chalk mark on the tires of parked cars while enforcing parking regulations violated the Fourth Amendment because the Defendants failed to secure a search warrant before their use of the chalk. Taylor alleged that within a three-year time period, she had paid fifteen parking tickets. Defendants subsequently filed a motion to dismiss. ECF No. 10. The Court granted the motion, determining that even if a search had occurred, the search was reasonable under the community caretaking exception to the Fourth Amendment's warrant requirement. ECF No. 14.

Plaintiff appealed and on April 22, 2019, the Sixth Circuit issued an opinion. ECF No. 19. The Sixth Circuit concluded that chalking a tire is a search, but that neither the community caretaking nor the motor vehicle exceptions to the warrant requirement were applicable. Notwithstanding its conclusion that the practice amounted to a regulatory exercise, it remanded the case for further factual development before addressing any other exceptions to the warrant

requirement. Three days later, it docketed an "Amended Opinion" emphasizing that its finding was based only upon the pleadings of the case and that once the case had developed beyond the pleadings, Defendants could advance the same arguments again, which they have now done.

The case was reopened and Plaintiff sought class certification on behalf of a class of people who had paid 4,820 tickets and suffered losses equal to the amount of the tickets. ECF 47. Defendants later filed a motion for summary judgment. ECF No. 64. For the following reasons, the Defendants' motion for summary judgment will be granted and Plaintiff's motion for class certification will be denied as moot.

**I.**

The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures. It provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

The Fourth Amendment analysis thus proceeds in two steps: 1) did a search or seizure occur, and if so, 2) was that search or seizure unreasonable? *See Terry v. Ohio*, 392 U.S. 1, 19 (1968) (explaining that a Fourth Amendment "search" occurs when a person is stopped and patted down, but that a pat-down search does not violate the Fourth Amendment if the officer has a reasonable, articulable suspicion that criminal activity is occurring). Warrantless searches and seizures are presumptively unreasonable. *See Kentucky v. King*, 563 U.S. 452, 459 (2011).

Both this Court and the Sixth Circuit in their previous orders analyzed Plaintiff's claim using this two-step framework. Each order will be summarized below.

**A.**

In addressing Defendants' initial motion to dismiss, this Court first found that "[r]easonable minds might disagree regarding whether a search occurred here." ECF No. 14 at PageID.17-11067. However, it ultimately determined that, "[a]ccepting all well-pleaded factual allegations as true, Taylor has likely alleged that Defendants 'searched' her vehicle within the meaning of the Fourth Amendment." *Id.* at PageID.209.

The Court continued to the second step by analyzing whether the search had been reasonable. It explained that "[t]he search of an automobile is far less intrusive on the rights protected by the Fourth Amendment than the search of one's person or of a building." ECF No. 14 at PageID.209 (quoting *Almeida-Sanchez v. United States*, 413 U.S. 266, 279 (1973)). It analyzed the Supreme Court decision of *Cardwell v. Lewis* in which the Supreme Court determined that inspecting vehicle tires and collecting paint scraps did not constitute an unreasonable search. The Court determined that *Cardwell* could reasonably be interpreted to stand for the proposition that:

> [T]aking paint scrapings from a car without a warrant is not unreasonable and thus not an unconstitutional search. Here, where the "search" in question involved taking nothing from the vehicle and, in fact, doing no permanent damage at all, the reasonableness of the "search" seems even clearer.

ECF No. 14 at PageID.210.

This Court further found that the search was reasonable because the community caretaking exception applied. It relied upon the Supreme Court decision *Cady v. Dombrowski* which provides:

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from

> the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

413 U.S. 433, 441 (1973) (concluding that towing an automobile to a private garage without probable cause because it was believed to contain evidence of a crime did not violate the Fourth Amendment).

This Court also relied upon *South Dakota v. Opperman* in which the Supreme Court expressly confirmed that the community caretaking exception applies in the parking enforcement context. *Opperman* provides:

> Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

428 U.S. 364, 369 (1976) (holding that an inventory search of a vehicle that was impounded after multiple parking violations was reasonable under the Fourth Amendment).

This Court concluded that the community caretaking exception applied, finding that, "Active enforcement of parking regulations benefits the public by ensuring convenient access to public parking. If the police have the authority to impound a vehicle while enforcing parking regulations, surely they have the authority to chalk a vehicle's tire while enforcing parking regulations. ECF No. 14 at PageID.211-12.

Defendants' motion to dismiss was granted and Plaintiff's amended complaint was dismissed.

**B.**

**1.**

As earlier noted, Plaintiff appealed the decision to the Sixth Circuit. In the first step of the framework, the Sixth Circuit definitively determined that chalking a tire constituted a search. ECF No. 19 at 4 ("[Y]es, chalking is a search for Fourth Amendment purposes.").

In the second step however, the Sixth Circuit disagreed with this Court. It explained that though the Court had relied in part on the diminished expectation of privacy of a vehicle, the "diminished expectation of privacy is what justified the *automobile exception* to the warrant requirement." *Id.* at 7 (citing *Autoworld Specialty Cars, Inc. v. United States*, 815 F.2d 385, 389 (6thCir. 1987)) (emphasis added). The Sixth Circuit found that the automobile exception did not apply because Defendants had no probable cause to chalk Plaintiff's tire. Accordingly, the diminished expectation of privacy of an automobile was not relevant.

The Sixth Circuit further held that the facts of *Cardwell* were distinguishable from the facts of this case. Specifically, in *Cardwell*, the police had probable cause when they collected the paint scraps and did not tow the car until after the plaintiff had been arrested. *Id.* The Sixth Circuit determined that the facts in this case were distinguishable from *Cardwell* because the City lacked probable cause prior to chalking Plaintiff's tire.

The Sixth Circuit further found that the community caretaking exception did not apply. It explained that, "Courts have applied the community caretaker exception in narrow instances when public safety is at risk." *Id.* at 8. In the case at hand, the Sixth Circuit determined:

> First, on these facts, the City fails to demonstrate how this search bears a relation to public safety. The City does not show that the location or length of time that Taylor's vehicle was parked created the type of "hazard" or traffic impediment amounting to a public safety concern. Nor does the City demonstrate that delaying a search would result in "injury or ongoing harm to the community." *Washington*, 573 F.3d at 289. To the contrary, at the time of the search, Taylor's vehicle was lawfully parked in a proper parking location, imposing no safety risk whatsoever. Because the purpose of chalking is to raise revenue, and not to mitigate public hazard, the City was not acting in its "role as [a] community caretake[.]" *Id.*at 287.

*Id.* at 8-9. The opinion concludes "we chalk this practice up to a regulatory exercise, rather than a community-caretaking function." *Id.* at 2.

The Sixth Circuit concluded its order by stating, "For the reasons above, we **REVERSE** the district court's order granting the City's motion to dismiss and **REMAND** for further proceedings consistent with this order." *Id.* at 10 (formatting in original).

**2.**

The Sixth Circuit opinion received extensive media coverage throughout the nation in the days following its filing. *See generally* Campbell Robertson, *Lose the Chalk, Officer: Court Finds Marking Tires of Parked Cars Unconstitutional*, NY TIMES, April 25, 2019; Matthew S. Schwartz, *Court Says Using Chalk On Tires For Parking Enforcement Violates Constitution*, NPR, April 23, 2019; Michelle Lou & Brandon Griggs, *Marking Tires with Chalk to Track How Long a Car Has Been Parked Violates the Constitution, an Appeals Court Found*, CNN, April 23, 2019; Fred Barbash, *Federal Appeals Court Says Tire-Chalking by Parking Enforcement Officers is Unconstitutional*, WASHINGTON POST, April 22, 2019.

Three days later, the Sixth Circuit docketed an "Amended Opinion." ECF No. 20. The amended opinion did not provide an explanation for the amendment nor why the original opinion required amending. The only difference between the two opinions was an additional paragraph at the end of the Amended Opinion which provided:

> Taking the allegations in Taylor's complaint as true, we hold that chalking is a search under the Fourth Amendment, specifically under the Supreme Court's decision in *Jones*. This does not mean, however, that chalking violates the Fourth Amendment. Rather, we hold, based on the *pleading stage of this litigation*, that two exceptions to the warrant requirement—the "community caretaking" exception and the motor-vehicle exception—do not apply here. Our holding extends no further than this. *When the record in this case moves beyond the pleadings stage, the City is, of course, free to argue anew that one or both of those exceptions do apply, or that some other exception to the warrant requirement might apply.*

*Id.* at PageID.241 (emphasis added).

## II.

The case has now moved "beyond the pleading stage" and the parties have once again lined up their arguments. The parties engaged in discovery and Defendants filed their motion for summary judgment. They include as an exhibit Hoskins' deposition in which she described the process by which she enforced the City's parking ordinances. She explained that when she saw a vehicle in a timed parking spot, she would note the time on a paper form. ECF No. 64-3 at PageID.1084-85. Sometimes she would place a small chalk mark on the tire of the vehicle, but sometimes she would not. *Id.* at PageID.1085-86; *Id.* at PageID.1073 ("So I really don't have to use [the chalk stick]…I can tell that if you was there in a two-hour zone without the chalk stick."); *Id.* at PageID.1081 ("[T]here's other methods of writing a ticket for one hour without chalking the tire."); *Id.* at PageID.1081 ("Sometimes I do [chalk], sometimes I don't."). She further testified in an affidavit,

> That the use of chalk to enforce parking was not required and was not done on every vehicle that parked in a time-limited space within the City of Saginaw from the time I have been employed with the City as a parking enforcer until present.

ECF No. 64-4.

If the vehicle was still parked in the spot after the allotted time had expired, Hoskins would issue a ticket using a handheld electronic device. ECF No. 64-3 at PageID.1066. She would input the vehicle's license plate number, its make and model, its location, and the reason for the ticket. *Id.* at PageID.1067-68 Then she would print off the ticket from the device and place it on the vehicle's windshield or in its door handle. *Id.* at PageID.1098-99. In addition, she would take a photograph of the vehicle. *Id.* at PageID.1068.

Defendants also provided an affidavit from John Stemple, the City Director of Neighborhood Services and Inspections. It provides:

> That parking enforcement within the City of Saginaw is necessary to promote safe use of the roadways and downtown businesses.
>
> That parking enforcement within the City of Saginaw is necessary to promote equal access to limited parking spaces and the downtown businesses.
>
> That chalk was provided to the City enforcement officials as a means of enforcing parking ordinances by informing vehicle owners and/or operators that the officials were enforcing City Ordinances, including the time restrictions set forth therein.
>
> That using chalk was not a required policy or practice by the City.

ECF No. 64-2.

### III.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### IV.

#### A.

Regulation of parking falls within the purview of a municipality's police powers. "The term 'police power' connotes the time-tested conceptional limit of public encroachment upon private interests." *Goldblatt v. Town of Hempstead, N. Y.*, 369 U.S. 590, 594 (1962). The Supreme Court has explained that

> To justify the state in…interposing its authority in behalf of the public, it must appear—First, that the interests of the public…require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.

*Id.* at 594-95 (quoting *Lawton v. Steele*, 152 U.S. 133, 137 (1894)). The Sixth Circuit has explained that "an ordinance which represents an exercise of the municipality's police powers is presumed to be constitutionally valid, with the burden of showing unreasonableness being cast upon those who challenge the ordinance." *Curto v. City of Harper Woods*, 954 F.2d 1237, 1242 (6th Cir. 1992).

The Michigan Court of Appeals has held that street parking regulations are a proper exercise of a municipality's police powers. *See Recreational Vehicle United Citizens Ass'n v. City of Sterling Heights*, 165 Mich. App. 130, 135 (1987) ("The regulation of all *street* parking is within the scope of defendants' regulatory police power. It bears a substantial relation to the public health, welfare, safety and morals and, therefore, constitutes a legitimate government purpose.") (emphasis in original) (quoting *Belanger v. Chesterfield Tp.*, 96 Mich. App. 539 (1980)).

Defendants contend that they are regulating parking pursuant to the Saginaw Code of Ordinances, specifically Section 70.99. This section appears under "Title VII: Traffic Regulations" and "Chapter 70: General Provisions" under the title "Impoundment of Vehicles." Section 70.99 provides:

(A) Any provision of this title which describes an act or omission constituting a civil infraction under the terms of the Michigan Vehicle Code, Public Act 300 of 1949, being M.C.L. §§ 257.1 et seq., as amended, shall be processed as a civil infraction and any person found to have committed a civil infraction may be ordered to pay a civil fine in accordance with the Michigan Vehicle Code, Public Act 300 of 1949, being M.C.L. § 257.907. Any civil fine ordered to be paid shall be collected in any manner authorized by law.

(B) A violation of any other section of this title constituting a criminal misdemeanor shall be punishable by a fine of not more than $100, imprisonment for not more than 90 days, or by both such fine and

>imprisonment, unless such section contains a specific penalty therein, in which case said penalty shall apply.

City of Saginaw Ordinance §70.99.

The final heading of the chapter is entitled "Administration and Enforcement." Section 72.50 is entitled "Parking Violations Bureau" and provides:

>(A)  The city hereby establishes a Parking Violations Bureau (Bureau) pursuant to the Revised Judicature Act, Public Act 236 of 1961, being M.C.L. § 600.8395.
>
>(B)  The purpose of the Bureau shall be to accept admissions in parking violation cases and to collect and retain civil fines and costs as prescribed by city ordinance.
>
>(C)  A **PARKING VIOLATION NOTICE** or **CITATION** means a notice directing a person to pay the fines and costs herein prescribed for the parking or standing of a motor vehicle in violation of city ordinance. The parking violation notice shall indicate the nature of the violation, the section of the ordinance violated, the contact information for the Bureau (or its authorized agent), and the amount of fine and/or penalty levied for the offense.
>
>(D)  A parking violation notice or citation may be issued by a police officer, including a limited duty officer, or other personnel duly authorized by the City Manager.

City of Saginaw Ordinance §72.50 (formatting in original). M.C.L. § 600.8395 authorizes a city to establish a parking violations bureau such as the one established in §72.50. It provides, "A city, village, or township may establish a parking violations bureau to accept civil infraction admissions in parking violation cases and to collect and retain civil fines and costs as prescribed by ordinance."

After receiving a parking ticket, a vehicle owner may pay the ticket or appeal it. City of Saginaw Ordinance 72.50(F)-(G) provides:

>(F)    After receiving a parking violation notice or citation, a defendant may:
>
>>(1) Pay the applicable fine and/or penalty pursuant to the instructions on the parking violation notice or citation; or
>>
>>(2) File a written appeal with the Bureau or its authorized agent.
>
>(G)    If a defendant has not filed a written appeal with the Bureau or its authorized agent and has not otherwise disposed of the parking violation notice within ten days after its issuance, a penalty in the amount proscribed by § 72.99 shall be levied.

- 10 -

The City of Saginaw Ordinances describes the ticket appeal process as follows:

(1) Within three days of the date of receipt of a parking violation notice or citation, a defendant wishing to appeal the notice and the associated fee may do so by filing a written appeal with the Bureau or its authorized agent.

(2) Within ten days from its receipt of the appeal, the Bureau or its authorized agent shall make a determination on the appeal request and shall notify the defendant of its decision in writing.

(3) In the event the defendant is not satisfied with the decision rendered by the Bureau or its authorized agent, within ten days of the determination the defendant may appeal the determination in a court of competent jurisdiction.

(4) In such cases, the court may order the payment of costs in addition to any authorized penalties in accordance with the Michigan Vehicle Code, Public Act 300 of 1949, being M.C.L. § 257.907.

City of Saginaw Ordinance 72.50(L).

Additionally, all fifteen parking tickets that Defendants issued to Plaintiff provide the following notice on their face:

<u>APPEAL PROCEDURES</u>

It is also your right to appeal this ticket. All appeals must be made within 3 days of the ticket's issue date by:

- Submitting an online appeal at: www.saginaw-mi.com
- Submitting a written appeal along with a copy of the ticket by mail to the address listed above.

Please be advised that if you do not prevail in your appeal, additional court costs will be incurred.

ECF No. 9-1. Plaintiff does not provide whether she availed herself of this appellate process when she received each of her fifteen parking tickets.

Defendants explain that, "The City's parking restrictions are set forth in the City of Saginaw Code of Ordinances. If a person violates a parking ordinance, he will be guilty of a civil infraction, not a criminal penalty, and required to pay a small fine." ECF No. 64 at PageID.1017. However, Plaintiff represents that she is not challenging the City's authority to regulate parking.

> Plaintiff Taylor is not alleging that "parking enforcement" cannot occur. Rather, Plaintiff Taylor challenges *the tire-chalking method* of enforcement under the Fourth Amendment. Yes, municipalities can regulate parking generally but they cannot use a method which the Fourth Amendment prohibits.

ECF No. 68 at PageID.1137-38 (emphasis in original).

**B.**

Defendants' method of regulating parking does not violate the Fourth Amendment. As explained above, a court must first determine whether a search occurred. If a search did occur, then the court must determine whether the search was reasonable.

**1.**

Defendants argue that "The City did not conduct a search because it did not trespass onto a vehicle by chalking and/or it did not use chalk to obtain information." ECF No. 64 at PageID.1024. This argument will be rejected. As noted by the Court in a prior order, the Sixth Circuit has already determined that the chalking was a search. *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) ("[Y]es, chalking is a search for Fourth Amendment purposes."); *see also* ECF No. 51 at PageID.605.

**2.**

Defendants next argue that "[c]halking tires by the City is reasonable and therefore not a violation of the Fourth Amendment." ECF No. 64 at PageID.1025. Defendants' chalking of tires falls within the administrative search exception.[1] The Supreme Court and the Sixth Circuit have permitted searches for administrative purposes when the searches are appropriately limited.

---

[1] The Sixth Circuit has not yet addressed whether chalking falls under the administrative search exception, notwithstanding its observation that it chalk[ed] [the] practice up to a regulatory exercise." ECF No. 19 at 2. In its order dismissing Plaintiff's complaint, this Court determined that it was unnecessary to determine whether the administrative search exception applied because the community caretaking exception was more applicable. ECF No. 14 at n. 2.

Determining whether the exception applies requires the "weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown v. Texas*, 443 U.S. 47, 51 (1979). For example, in *U.S. v. Rohrig*, police officers sought to restore the peaceful enjoyment of homes in a neighborhood by entering the defendant's home for the purpose of locating and abating a nuisance. *United States v. Rohrig*, 98 F.3d 1506, 1521 (6th Cir. 1996). The Sixth Circuit concluded that "the importance of preserving our communities" was not so insignificant that it could never serve as justification for a warrantless entry into a home, even if the absence of life-or death circumstances. *Id.* at 1521-22. In *New York v. Burger*, the Supreme Court found that the warrantless search of a commercial business was reasonable because "the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened." 482 U.S. 691, 702 (1987).

The Supreme Court has also upheld warrantless administrative searches of vehicles. In *U.S. v. Martinez-Fuerte*, the Court found that warrantless searches at a highway checkpoint was valid because the Government had a strong interest in apprehending illegal aliens and the checkpoints only minimally inconvenienced drivers and the flow of traffic. 428 U.S. 543 (1976). In *Michigan Dep't of State Police v. Sitz*, the Court found a highway sobriety checkpoint to be valid because the Government's interest in preventing drunk driving outweighed the minimal inconvenience to drivers and the slight slowing of traffic. 496 U.S. 444 (1990).

The City argues that regulating parking is an important Government interest because it promotes safety and order on its roadways and ensures that multiple people can access downtown businesses. Regulating parking involves more than simply issuing a ticket and placing it on the vehicle. It may also involve other methods, such as chalking a vehicle's tire to notify the driver

that their parking time is being monitored. Chalking may lead to more effective parking regulation because it reminds drivers to move their vehicles before their allotted time has expired. Without the chalk mark reminder, some drivers may forget that their time is being monitored. Their vehicles would remain in parking spots beyond their allotted time and prevent others from using the parking location. This prevents circulation of people who can frequent downtown businesses and requires increased effort and resources by the City to issue parking tickets.

As explained above, regulating parking falls within the purview of a municipality's police powers. There is a "traditional deference given to exercises of a locality's police power. This presumption of validity stems from a recognition that federal courts should be wary to tread on the spheres of authority that were never given up by state and local governments." *Fair Hous. Advocates Ass'n, Inc. v. City of Richmond Heights, Ohio*, 209 F.3d 626, 638 (6th Cir. 2000) (Batchelder, A., concurring).

These police powers do not give a municipality unfettered discretion to enforce parking ordinances in whatever manner they choose. *See Delaware v. Prouse*, 440 U.S. 648, 662–63, (1979) ("An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation…Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed.") The use of these powers must be reasonable. The City's use of chalk is reasonable because it is in the public interest and the "severity of the interference with individual liberty" is minimal. *Brown*, 443 U.S. at 51. A discrete chalk mark on a tire does not substantially interfere with a party's individual liberty. As explained in this Court's previous order:

> [T]he "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). The idea that placing a

> harmless, temporary, and unobtrusive mark on a vehicle tire bears constitutional significance has no merit. Considering the almost nonexistent interference with Taylor's property and privacy rights, the government interest necessary to establish "reasonableness" is minimal.

ECF No. 14 at n. 2.

**3.**

Defendants further contend that chalking falls within four other exceptions to the warrant requirement, specifically *de minimis* searches, community caretaker searches, automobile searches, and searches subject to consent. ECF No. 64 at PageID.1025-26. Because it has already been determined that chalking falls within the administrative search exception, these four other exceptions will not be addressed.

**V.**

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 64, is **GRANTED**.

It is further **ORDERED** that Plaintiff's Amended Complaint, ECF No. 9, is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff's Motion for Class Certification, ECF No. 47, is **DENIED AS MOOT**.

Dated: June 9, 2020                      s/Thomas L. Ludington
                                         THOMAS L. LUDINGTON
                                         United States District Judge