**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: August 25, 2021

Mr. Philip Lee Ellison
P.O. Box 107
Hemlock, MI 48626

Mr. Matthew Edwin Gronda
Law Office
P.O. Box 70
St. Charles, MI 48655

Mr. Gregory William Mair
Kailen Piper
O'Neill, Wallace & Doyle
300 St. Andrews Road, Suite 302
Saginaw, MI 48638

Mr. Daniel T. Woislaw
Pacific Legal Foundation
930 G. Street
Sacramento, CA 95814

Re: Case No. 20-1538/20-1588, *Alison Taylor v. City of Saginaw, et al*
Originating Case No. : 1:17-cv-11067

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                        Yours very truly,

                                        Deborah S. Hunt, Clerk

                                        Cathryn Lovely
                                        Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0194p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

ALISON PATRICIA TAYLOR,
      *Plaintiff-Appellant/Cross-Appellee*,

    *v*.

CITY OF SAGINAW, MICHIGAN; TABITHA HOSKINS,
      *Defendants-Appellees/Cross-Appellants*.

Nos. 20-1538/1588

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:17-cv-11067—Thomas L. Ludington, District Judge.

Argued: July 29, 2021

Decided and Filed: August 25, 2021

Before: GRIFFIN, LARSEN, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant/Cross-Appellee. Kailen C. Piper, O'NEILL, WALLACE & DOYLE P.C., Saginaw, Michigan, for Appellee/Cross-Appellant. **ON BRIEF:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, Matthew E. Gronda, St. Charles, Michigan, for Appellant/Cross-Appellee. Kailen C. Piper, O'NEILL, WALLACE & DOYLE P.C., Saginaw, Michigan, for Appellee/Cross-Appellant. Daniel T. Woislaw, PACIFIC LEGAL FOUNDATION, Sacramento, California, for Amicus Curiae.

---

**OPINION**

---

GRIFFIN, Circuit Judge.

The City of Saginaw routinely chalked car tires to enforce its parking regulations. In our prior opinion, we held that doing so is a search for Fourth Amendment purposes, and that "based on the pleadings stage of this litigation, . . . two exceptions to the warrant requirement—the 'community caretaking' exception, and the motor-vehicle exception—do not apply here." *Taylor v. City of Saginaw*, 922 F.3d 328, 336 (6th Cir. 2019) (*Taylor I*). However, we left for another day whether the search could be justified by "some other exception" to the warrant requirement. *Id.*

We consider one of those other exceptions today—specifically, whether suspicionless tire chalking constitutes a valid administrative search. Because we conclude that it does not, we reverse the district court's grant of summary judgment in favor of the City. But because we conclude that the alleged unconstitutionality of suspicionless tire chalking was not clearly established, the City's parking officer, defendant Tabitha Hoskins, is entitled to qualified immunity. We therefore reverse and remand for further proceedings consistent with this opinion.

I.

Plaintiff Alison Taylor received several parking tickets from defendant City of Saginaw for leaving her car in its downtown area beyond the time allowed by city ordinance. Each time, defendant Tabitha Hoskins chalked the tire of Taylor's vehicle several hours before issuing the ticket. Every ticket noted the time Taylor's vehicle was first "marked" with chalk in the regulated area. Hoskins also documented the ticket with one or more photographs of the offending vehicle.

Taylor filed this 42 U.S.C. § 1983 complaint against the City and Hoskins as a putative class action, alleging that the tire chalking violated her Fourth Amendment rights as construed by *United States v. Jones*, 565 U.S. 400 (2012). At the motion-to-dismiss phase, the district court

held that tire chalking fell within the automobile and/or community caretaking exceptions and therefore did not violate the Fourth Amendment. We reversed. *See Taylor I*, 922 F.3d at 336–37. On remand, Taylor moved for class certification, and defendants moved for summary judgment. The district court granted defendants' motion, denied plaintiff's class-certification motion as moot, and entered judgment in defendants' favor. Plaintiff timely appealed, and defendants cross-appealed.

II.

We review the district court's grant of summary judgment de novo. *Jordan v. Howard*, 987 F.3d 537, 542 (6th Cir. 2021). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We consider all facts and inferences drawn therefrom in the light most favorable to the nonmovant." *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001).

III.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The basic purpose of this Amendment, as recognized in countless decisions of [the Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Court of City & Cnty. of S.F.*, 387 U.S. 523, 528 (1967). "To determine whether a Fourth Amendment violation has occurred, we ask two primary questions: first, whether the alleged government conduct constitutes a search within the meaning of the Fourth Amendment; and second, whether the search was reasonable." *Taylor I*, 922 F.3d at 332.

A.

As we held in *Taylor I*, "chalking is a search for Fourth Amendment purposes" under the property-based *Jones* test. *Id.* And we see no reason to depart from that conclusion, which was a logical extension of the Court's holding in *Jones* that a physical trespass to a constitutionally

protected area with the intent to obtain information is a search under the Fourth Amendment. *See Jones*, 565 U.S. at 406 n.3; *id.* at 408 n.5.[1]

B.

Because tire chalking is a search that defendants conducted without an authorizing warrant, it is presumptively unreasonable. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). However, the warrant requirement is "subject only to a few specifically established and well-delineated exceptions." *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015) (citation omitted). It is the government's burden to establish the applicability of an exception to the warrant requirement. *See Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 281 (6th Cir. 2018). Like the district court, we focus solely on the applicability of the administrative-search exception.[2]

Generally, when a search is conducted for an administrative purpose and pursuant to a regulatory scheme—such as inspecting a home for compliance with a municipal housing code—the government may justify a warrantless search by showing that it met "reasonable legislative or administrative standards." *Camara*, 387 U.S. at 538. This is assessed by "balancing the need to search against the invasion which the search entails." *Id.* at 536–37. But it is not a free-for-all for civil officers; among other requirements, "the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 576 U.S. at

---

[1]There is some question here about whether the prior panel's ruling on the search question (not the exceptions) is law of the case now. Typically, a ruling that denies a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is not law of the case where discovery and further proceedings occur. *See McKenzie v. BellSouth Telecomm., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000) (noting that "our holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery."). Here, however, there does not appear to be any record development that sheds any further light on the "search" question as opposed to whether any exceptions apply. Moreover, although defendants contested whether law of the case applied below, in our court, they referred only cursorily to that holding (though they continue to contest the search issue otherwise). Regardless, we do not need to resolve this issue definitively here. The prior panel opinion is a published decision that we see no reason to revisit in light of any intervening authority or record development.

[2]The Pacific Legal Foundation, as amicus curiae, contends that the administrative-search exception does not apply because "privacy-based exceptions" to the warrant requirement "are inapplicable to property-based" Fourth Amendment searches after *Jones*. (Amicus Brief at 7; *see id.* at 7–12.) We decline to resolve this argument because even assuming the administrative-search exception remains viable in the *Jones* context, it does not apply to the City's chalking of car tires.

420. This prerequisite removes the City's practice from the usual administrative-search case, *see id.*; *Liberty Coins LLC*, 880 F.3d at 281–82, as there is no such opportunity (which the City does not contest).

With the lack of a precompliance-review option, the City instead contends its practice falls within the limited sub-classes of administrative searches that do not mandate that precondition. Consider first the "closely regulated industries" category. *See Patel*, 576 U.S. at 424. Businesses in these industries "have such a history of government oversight that no reasonable expectation of privacy could exist," and therefore, precompliance review is not necessary. *Id.* (internal quotation marks and citation omitted). So instead of the balancing test prescribed by *Camara* and reinforced by *Patel*, we apply three criteria to warrantless inspections of closely regulated industries: (1) "[T]here must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made"; (2) "the warrantless inspections must be 'necessary' to further the regulatory scheme"; and (3) "the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant." *New York v. Burger*, 482 U.S. 691, 702–03 (1987) (brackets omitted). But unlike the closely regulated industries of liquor sales, firearm dealing, mining, or automobile junkyards identified by the Supreme Court, municipal parking plainly does not "pose[] a clear and significant risk to the public welfare." *Patel*, 576 U.S. at 424. That automobiles are regulated and *involved* in parking is inconsequential because the exception applies to industries, not objects. So, for example, a state's statutory scheme authorizing a warrantless inspection of an automobile junkyard resulting in the search of a Ford Mustang may be permissible, *see Burger*, 482 U.S. at 702–03, but it does not apply to the search of the same convertible parked on a city street.

Finally, the administrative-search exception also authorizes "regimes of suspicionless searches where the program was designed to serve special needs, beyond the normal need for law enforcement." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000) (internal quotation marks and citation omitted); *see also Patel*, 576 U.S. at 420. For example, the Supreme Court has endorsed highway checkpoints near borders to curb illegal immigration, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556–58 (1976), and sobriety checkpoints aimed at removing

drunk drivers from the road, *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 451–53 (1990). The Court has also condoned suspicionless drug- and alcohol-testing in various contexts, including for student-athletes, federal employees seeking promotions, and railway employees involved in accidents. *See Edmond*, 531 U.S. at 37 (collecting cases). We see no special need here, which defendants concede by admitting that "Ms. Hoskins's job was not impacted in any respect if she did not chalk tires." And common-sense commands this conclusion; for nearly as long as automobiles have parked along city streets, municipalities have found ways to enforce parking regulations without implicating the Fourth Amendment. *See, e.g.*, Amanda Erickson, *A Brief History of the Parking Meter*, Bloomberg CityLab (April 3, 2012), *available at* https://www.bloomberg.com/news/articles/2012-04-03/a-brief-history-of-the-parking-meter (last visited Aug. 9, 2021). Thus, tire chalking is not necessary to meet the ordinary needs of law enforcement, let alone the extraordinary. *See Edmond*, 531 U.S. at 37.

In concluding otherwise, the district court went astray in three significant respects. First, it treated plaintiff's Fourth Amendment claim as a broad challenge to the City's ability to regulate parking through its police powers. The issue here, rather, is whether the City's chosen means for exerting that civil authority violates the Fourth Amendment. *See New Jersey v. T.L.O.*, 469 U.S. 325, 335 (1985) ("[T]he Fourth Amendment [is] applicable to the activities of civil as well as criminal authorities."). Second, it also seemingly placed the burden on Taylor to demonstrate that the City's parking ordinances were "unreasonable[]." But once Taylor established that tire chalking is a search, the burden shifted to defendants to establish the reasonableness of the search by demonstrating the applicability of an exception to the warrant requirement. *See Liberty Coins, LLC*, 880 F.3d at 281. Third, the district court applied the wrong law when it relied on *Brown v. Texas*, 443 U.S. 47, 51 (1979), to condone defendants' tire-chalking practice, stating "[t]he City's use of chalk [was] reasonable because it is in the public interest [to enforce parking regulations] and the 'severity of the interference with individual liberty' is minimal." *Brown* is not an administrative-search case (or even a search case at all), and the balancing test it prescribes has no application to these facts.

For these reasons, we hold that the administrative-search exception does not justify the City's suspicionless chalking of car tires to enforce its parking regulations. We express no

opinion on the remaining exceptions to the warrant requirement because we are "a court of review, not first view." *United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015).**3**

IV.

We conclude by addressing whether Hoskins is entitled to qualified immunity. "Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (alteration in original) (citation omitted). Accordingly, qualified immunity should be resolved at the "earliest possible stage in litigation." *See id.* (citation omitted). For that reason, we exercise our discretion to resolve Hoskins' invocation of qualified immunity, which was raised below but not resolved by the district court.**4**

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (citation omitted). Therefore, the clearly established right must be defined with "specificity," and not "at a high level of generality." *Id.* "Notice to officials is paramount; the salient question in evaluating the clearly established prong is whether officials had fair warning that their conduct was unconstitutional." *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (internal quotation marks omitted). The focus must be "whether the violative nature of *particular* conduct is clearly established in light of the specific context of the case." *Id.* (citation and ellipsis omitted).

Once raised by a defendant, the plaintiff bears the burden to overcome qualified immunity. *See Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Taylor attempts to do so by arguing that "[i]t was clearly apparent after *Jones* that any physical intrusion

---

**3**We also find no abuse of discretion in the district court's docket-management decision to resolve defendants' motion for summary judgment before plaintiff's motion for class certification. The Federal Rules of Civil Procedure direct district courts to resolve motions for class certification "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Although we disagree with the district court's analysis in granting defendants' motion for summary judgment, it was within the district court's discretion to resolve defendants' dispositive motion prior to class certification. *See, e.g.*, *Thompson v. County of Medina*, 29 F.3d 238, 241 (6th Cir. 1994); *Marx v. Centran Corp.*, 747 F.2d 1536, 1552 (6th Cir. 1984).

**4**We decline to do so, however, regarding the City's alleged liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

upon a vehicle for the purpose of obtaining information of its activities without a warrant constitutes a Fourth Amendment violation." We disagree. Although there need not always be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Hughes*, 138 S. Ct at 1152 (quoting *White v. Pauly,* 137 S. Ct. 548, 551 (2017)). *Jones* did not do that. *Jones* relied on a common-law trespass theory to hold that attaching a GPS tracker to a car to monitor its movement is a search. 565 U.S. at 404–05. But a question remained whether, at common law, a de minimis or harmless trespass to chattels, like putting some chalk on a tire, gave rise to a cause of action for trespass. *See Taylor I*, 922 F.3d at 332–33 (noting that "*Jones* does not provide boundaries for the meaning of common-law trespass" and resorting to the Restatement (Second) of Torts to conclude that tire chalking, "regardless of how slight, constitute[d] common-law trespass"); *see also* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts 87 (5th ed. 1984) (noting that "[w]here the defendant merely interferes without doing any harm . . . there has been a division of opinion among the writers, and a surprising dearth of authority" regarding whether the owner can maintain an action for trespass to chattels); 2 William Blackstone, Commentaries *153 (noting that "the plaintiff shall recover damages, *in proportion to the injury which he proves that his property has sustained*" (emphasis added)). Thus, every reasonable parking officer would not understand from *Jones* that suspicionless chalking of car tires violates the Fourth Amendment. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Accordingly, Hoskins is entitled to qualified immunity.

V.

For these reasons, we reverse the court's grant of summary judgment regarding the City and Hoskins, grant qualified immunity in favor of Hoskins, and remand for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 20-1538/1588

ALISON PATRICIA TAYLOR,

    Plaintiff - Appellant/Cross - Appellee,

v.

CITY OF SAGINAW, MICHIGAN; TABITHA HOSKINS,

    Defendants - Appellees/Cross - Appellants.

> **FILED**
> August 25, 2021
> DEBORAH S. HUNT, Clerk

Before: GRIFFIN, LARSEN, and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED and REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk