UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALISON PATRICIA TAYLOR,

              Plaintiff,              Case No. 1:17-cv-11067

v.                                            Honorable Thomas L. Ludington
                                              United States District Judge
CITY OF SAGINAW and TABITHA HOSKINS,

              Defendants.
_____/

**OPINION AND ORDER (1) GRANTING PLAINTIFF'S MOTION TO CERTIFY, (2) GRANTING AND DENYING IN PART DEFENDANTS' MOTION TO FILE SECOND MOTION FOR SUMMARY JUDGMENT AND (3) DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

This matter is before this Court upon Plaintiff's Renewed Motion for Class Certification, ECF No. 91, Plaintiff's Conditional Motion for Leave to File Second Amended Complaint, ECF No. 99, and Defendants' Motion for Leave to File Second Motion for Summary Judgment, ECF No. 94. For the reasons stated below, Plaintiff's Motion to Certify will be granted, Defendants' Motion for Leave will be granted and denied in part, and Plaintiff's Motion for Leave will be denied as moot.

**I.**

This is a putative class action challenging an age-old practice in parking enforcement: tire-chalking. On behalf of herself and a putative class of similarly situated motorists, Plaintiff Allison Patricia Taylor alleges that the City of Saginaw (the "City") violated the Fourth Amendment by chalking the tires of vehicles to record how long they had been parked. *See* ECF No. 9 at PageID.74. In addition to naming the City as a Defendant, Plaintiff also names the City's "most

prolific [parking-ticket] issuer," Tabitha Hoskins, who allegedly ticketed Plaintiff on 14 separate occasions. *Id.* at PageID.72.

Since being filed in April 2017, this case has been dismissed twice, appealed twice, and remanded twice: first at the pleading stage and then at the summary-judgment stage. *See Taylor v. City of Saginaw*, No. 17-CV-11067, 2017 WL 4098862, at *7 (E.D. Mich. Sept. 15, 2017), *rev'd and remanded*, 922 F.3d 328 (6th Cir. 2019) [hereinafter *Taylor I*]; *Taylor v. City of Saginaw*, No. 17-CV-11067, 2020 WL 3064448, at *9 (E.D. Mich. June 9, 2020), *aff'd in part, rev'd in part and remanded*, 11 F.4th 483 (6th Cir. 2021) [hereinafter *Taylor II*], *reh'g denied* (Sept. 14, 2021). In the course of deciding those two appeals, the Sixth Circuit has held that (1) tire-chalking constitutes a search under the trespass approach adopted in *United States v. Jones*, 565 U.S. 400 (2012), and (2) neither the community-caretaker, automobile, nor administrative exceptions apply.[1] *See Taylor I*, 922 F.3d at 333–35 (holding that tire-chalking is a search that is not excused by community-caretaker doctrine or automobile exception); *Taylor II*, 11 F.4d at 489 (holding that administrative-search exception does not apply).

Shortly after the second remand, Plaintiff filed a renewed motion for class certification.[2] ECF No. 91. Plaintiff seeks to certify (1) a primary, non-damages class and (2) and a damages subclass. Plaintiff defines the primary class as:

> All persons (excluding the presiding judicial officer, his staff, the case counsel and their staff) who had and/or will have a vehicle tire chalked by a City of Saginaw parking enforcement officer, without a warrant, from April 5, 2014 to present.

---

[1] The Sixth Circuit nonetheless concluded that Hoskins enjoys qualified immunity from Plaintiff's claims given the novelty of Plaintiff's claims. *See Taylor II*, 11 F.4th at 490 ("[E]very reasonable parking officer would not understand from *Jones* that suspicionless chalking of car tires violates the Fourth Amendment.").

[2] Plaintiff's original motion to certify, ECF No. 47, was denied as moot after summary judgment was entered for Defendants, *see* ECF No. 77 at PageID.1408.

*Id.* at PageID.1463. Plaintiff defines the subclass as:

> All persons within the above-named class who paid a parking ticket from April 5, 2014 to present as a result of the warrantless chalking of vehicle tire(s).

*Id.* For the primary class, Plaintiff seeks declaratory and injunctive relief. *Id.* at PageID.1469; *see also* Am. Compl., ECF No. 9 at PageID.75 (requesting entry of an order declaring Defendants' conduct unconstitutional and enjoining further tire-chalking). For the subclass, Plaintiff seeks to recover the amount that the subclass paid in parking tickets. *See* ECF No. 91 at PageID.1474–75.

Defendants responded to Plaintiff's Motion to Certify with a brief in opposition, ECF No. 92, and a motion for leave to file a second motion for summary judgment, ECF No. 94. In sum, Defendants argue that before considering Plaintiff's Motion to Certify, this Court should consider additional summary-judgment briefing on the "other exceptions" to the warrant requirement. ECF No. 92 at PageID.1553; ECF No. 94 at PageID.1670.

Plaintiff has also filed a "conditional" motion for leave to file a second amended complaint, which would add a formal request for nominal damages on behalf of the subclass. *See* ECF No. 99 at PageID.2034. The motion is conditional because Plaintiff wants to amend her complaint only if this Court declines to certify the subclass due to its damages theory. *See id.* (reasoning that the subclass "would at least be entitled to nominal damages" even if not entitled to damages for paid parking tickets).

## II.

The first issue is whether this Court should permit Defendants to file a second motion for summary judgment before it decides Plaintiff's Motion to Certify. Defendants intend to seek summary judgment on two separate grounds: (1) the "other exceptions" to the warrant requirement, not yet discussed in this case; and (2) the lack of a policy or custom of tire-chalking attributable to the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

ECF No. 94 at PageID.1669. By "other exceptions" to the warrant requirement, Defendants presumably mean the issue of consent and the so-called "de minimis exception," which Defendants raised in their motion for summary judgment, but which this Court declined to consider. *See* Defs.' Mot. Summ. J., ECF No. 64 at PageID.1029–35. Defendants claim that allowing them to raise these issues before certification would avoid needless litigation. ECF No. 92 at PageID.1553. This Court disagrees.

Under Rule 23, a district court must decide whether to certify a putative class action "[a]t an early practicable time" after the action is filed. FED. R. CIV. P. 23(c). A district court may, however, "consider a Rule 56 motion first . . . when early resolution of [such a] motion seems likely to protect both the parties and the court from needless and costly further litigation." *Thompson v. Cnty. of Medina, Oh.*, 29 F.3d 238, 241 (6th Cir. 1994). Similarly, "district courts may in their discretion permit renewed or successive motions for summary judgment." *Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006).

Defendants have not shown that another precertification motion would avoid needless litigation. Indeed, it seems just as likely to cause *more* needless litigation. Over the last five years, Defendants have enjoyed two opportunities to obtain dismissal. In both instances, they advanced a handful of theories for why tire-chalking was constitutionally permissible. Despite early success at both the pleading and summary-judgment stage, Defendants twice failed to persuade the Sixth Circuit that their conduct was lawful. Indeed, the Sixth Circuit has so far rejected three alternative theories for why tire-chalking is reasonable under the Fourth Amendment. *See Taylor I*, 922 F.3d at 333–35 (community-caretaker doctrine and automobile exception); *Taylor II*, 11 F.4d at 489 (administrative-search exception). Despite the Defendants' track record (and that of this Court), Defendants have not used their motion for leave to elaborate on their prior arguments or explain

why those arguments warrant immediate attention; they simply assert that deferring the certification issue would conserve judicial resources.

Ultimately, the Sixth Circuit, an appellate court with the unique authority to address "novel" constitutional issues, has had two opportunities to address the applicability of the exceptions to the Fourth Amendment's warrant requirement and has declined to do so. Defendants have not offered any reason to think that the Sixth Circuit would appreciate a third opportunity. In the end, Defendants' claim of judicial efficiency is dubious.

Even so, Defendants will be granted leave to file another motion for summary judgment after certification. First, Defendants' unaddressed arguments, though not immediately compelling, may have merit and certainly deserve to be considered if Plaintiff seeks summary judgment after certification. *See* ECF No. 93 at PageID.1660–61 ("Plaintiff's [Motion for Certification] should be granted[,] so Plaintiff[] can then move for summary judgment."). Second, this Court recently directed supplemental briefing on two issues: (1) whether the subclass could legally recover damages for parking tickets under 42 U.S.C. § 1983, and (2) whether the subclass could prove that tire-chalking proximately caused the parking tickets. *See* Order Directing Supp. Br., ECF No. 96 at PageID.1680–83. Although this Court now agrees with Plaintiff that these issues do not preclude certification, *see* Pl.'s Supp. Br., ECF No. 103, they can and should be addressed in future dispositive briefing. Therefore, Defendants will be permitted to file a cross-motion for summary judgment after certification in accordance with this Court's forthcoming scheduling order.

### III.

The next issue is whether class certification should be granted. The answer turns on Rule 23's familiar, multi-step analysis.

### A.

The first step is to determine whether both the primary non-damages class and the damages subclass meet Rule 23(a)'s four requirements: "numerosity, commonality, typicality, and adequate representation." *See Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 457 (6th Cir. 2020); *see also* FED. R. CIV. P. 23(c)(5) (stating that subclasses should be "treated as a class under [Rule 23]"). Importantly, "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. A court may certify a class "only if [it] is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id*. at 350–51 (cleaned up).

As explained below, both the primary class and subclass meet Rule 23's four requirements.

### i.

First, both classes are sufficiently numerous as to make joinder "impracticable." *See* FED. R. CIV. P. 23(a)(1). Notably, the word "impracticable" does not mean "impossible." Under Rule 23(a)(1), the plaintiff must show only that, as a matter of "common sense," "it would be difficult or inconvenient to join all class members." *Varacallo v. Mass. Mut. Life Ins.*, 226 F.R.D. 207, 229 (D.N.J. 2005); *see also Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 168 (E.D. Mich. 2006) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."), *aff'd* 511 F.3d 554 (6th Cir. 2007).

Given the frequency of tire-chalking, Plaintiff admits that the exact number of class members is "functionally unknown" but "easily in the tens of thousands." ECF 91 at PageID.1465.

Relying on data produced by the City, Plaintiff claims that Defendants used tire-chalking to issue at least 4,820 parking tickets with the help of tire-chalking between April 2014 and April 2019. *Id.* at PageID.1466. Defendants deny that all those tickets involved tire-chalking. ECF No. 92 at PageID.1560 (claiming that "no chalk was used after suit was filed in this case"). But even if only a small fraction did, joinder would still be impracticable. *See Peters v. Cars To Go, Inc.*, 184 F.R.D. 270, 276 (W.D. Mich. 1998) ("While there is no set rule for determining whether the numerosity requirement is satisfied, a class numbering more than 40 members usually satisfies the impracticability requirement, and classes containing 100 or more members routinely satisfy the numerosity requirement." (internal citations omitted)).

Accordingly, both classes satisfy the numerosity requirement.

### ii.

Second, both classes share common issues of fact and law. *See* FED. R. CIV. P. 23(a)(2). The commonality requirement is "easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart*, 564 U.S. at 349 (cleaned up). In essence, commonality requires "a common contention" that is "capable of classwide resolution"—in other words, a contention whose resolution "[would] resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

All members of both classes share at least one significant question in common: Did the City's warrantless tire-chalking violate the Fourth Amendment? The answer to that question is central to each of their claims and capable of class-wide resolution. *Cf. id.*

Defendants argue that the classes share "no commonality," because (1) "it is currently unknown which pu[tative] class members had a tire of their vehicle chalked before being issued a ticket," and (2) the reason for a parking ticket might vary because "there are several parking

ordinance violations a person could commit." ECF No. 92 at PageID.1561. Neither assertion is persuasive.

To begin, Defendants' argument is irrelevant to the primary class, as only the subclass would seek relief for the parking tickets. Moreover, whether each subclass member "had a tire chalked before being issued a ticket" is simply a threshold question for class membership, not a strike against commonality. *See* ECF No. 91 at PageID.1463 (defining subclass as "[a]ll persons within the [primary] class who paid a parking ticket from April 5, 2014 to present *as a result of* the warrantless chalking of vehicle tire(s)." (emphasis added)). Further, Plaintiff has already introduced evidence that when a City parking officer issues a parking ticket, she photographs the vehicle and its chalked tire. *See* Example Tickets and Photos, ECF No. 68-2. Finally, the reason why a ticket was issued seems irrelevant. For purposes of the subclass, the question is whether the tire-chalking *proximately caused* the ticket, and that question is likely capable of class-wide resolution, at least to some extent. *See infra* Section III.B.ii.

Accordingly, both classes satisfy the commonality requirement.

### iii.

Third, Plaintiff's claims are "typical of the [class] claims." *See* FED. R. CIV. P. 23(a)(3). Although the analysis for typicality and commonality "tend[s] to merge," the two concepts remain distinct for purposes of Rule 23. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). In essence, "[t]ypicality is met if the class members' claims are fairly encompassed by the named plaintiffs' claims." *Id.* at 852 (internal quotation marks omitted). The purpose of the typicality requirement is to ensure "that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Id.* at 852–53.

Plaintiff brings the same claim for the same type of injury as every other member of the two classes: a Fourth Amendment claim for the City's warrantless chalking of her tires. *Cf. Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (finding typicality where plaintiff's claims "ar[ose] from the same allegedly deceptive billing practice that g[ave] rise to the claims of the other class members"). The only difference between Plaintiff's claims and the claims of other class members is the dollar amount sought for the parking tickets. And as this Court previously held, "[a] variance in damages does not destroy commonality or typicality provided that the same event or practice or course of conduct gives rise to the claims of other class members, and if the named representatives' claims are based on the same legal theory." *Klender v. United States*, 218 F.R.D. 161, 165 (E.D. Mich. 2003) (cleaned up).

Defendants argue that the classes do not satisfy typicality because "Plaintiff's class definition sweeps too broadly and includes individuals . . . who may have paid their tickets, or who may own the vehicle, but were not operating the vehicle at the time of the violation." ECF No. 92 at PageID.1562. According to Defendants, such distinctions could affect the availability of relief or of a particular defense. *Id.* Defendants' argument is unpersuasive.

At bottom, a class as large as Plaintiff's primary class is likely to include claims with various factual differences. The purpose of typicality is not to ensure complete identity between the class representative and the class members but to ensure that their interests align. *See In re Whirlpool*, 722 F.3d at 852–53. If any of the distinctions Defendants noted prove legally relevant, the primary class can be further divided into additional subclasses. *See* FED. R. CIV. P. 23(c)(5). At this juncture, however, such distinctions do not preclude a finding of typicality.

Accordingly, both classes meet the typicality requirement.

**iv.**

Finally, Plaintiff "will fairly and adequately protect the interests of the class." *See* FED. R. CIV. P. 23(a)(4). The Sixth Circuit has identified "two criteria for determining adequacy of representation: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

As discussed above, Plaintiff brings the same claims as every other class member, and there is no reason that her interests and those of the two classes are antagonistic. Indeed, Plaintiff and the two classes appear to have the same goal: to obtain an injunction against the City and, if applicable, recover the amount paid in parking tickets.

Still, Defendants claim that "Plaintiff's situation may vary drastically from other members of the class." ECF No. 92 at PageID.1563. Their only example, however, is that Plaintiff paid her parking tickets while other class members presumably did not. Defendants do not explain why this distinction undermines adequacy, and this Court does not see how it could. To begin, the subclass is defined to include only those members of the primary class who received and paid a parking ticket. So, this "drastic" variation would only exist between subclass members and some unknown portion of primary class members who have yet to pay a parking they received. But the principal interest of both groups must be in avoiding further warrantless intrusions, as the highest parking-ticket fine is merely $30.00. *See* ECF No. 91 at PageID.1474 (claiming that tire-chalking ticket fines ranged between $15.00 and $30.00) Accordingly, this Court finds no antagonism between Plaintiff and the classes that would preclude a finding of adequacy.

Defendants also question the capability of Plaintiff's counsel, stating that despite "[counsel's] knowledge and experience in civil rights litigation, a class action requires the

knowledge, resources, and experience maintain [sic] such a lofty case." ECF No. 92 at PageID.1563. Defendants further claim that "[n]either attorney for Plaintiff has put forth any action plan or otherwise [sic] to indicate their capability of maintaining such a class." *Id.*

Defendants' objection is without merit. Plaintiff's counsel have successfully prosecuted this "lofty case" for nearly five years, obtaining two appellate victories on complex questions of law. They also have prior experience serving as class counsel. *See infra* Section III.C (discussing appointment of class counsel). As for an "action plan," Plaintiff represents that discovery is already completed and that she will move for summary judgment after obtaining certification. *See* ECF No. 93 at PageID.1661, 1664. In sum, this Court has not doubt that Plaintiff's counsel can effectively represent the two classes.

Accordingly, Plaintiff and her counsel satisfy the adequacy requirement.

**B.**

Having decided that both classes satisfy the four requirements of Rule 23(a), the second step is to determine whether they "fit[] within one of the three subsections of Rule 23(b)." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 457 (6th Cir. 2020). As explained below, the primary class fits within subsection (b)(2), and the subclass fits within subsection (b)(3).

**i.**

Rule 23(b)(2) allows a district court to certify a class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Subsection (b)(2) classes are referred to as "mandatory classes" because the district court need not "provide individual members of the class with notice and the opportunity to 'opt out' of the class action." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th

Cir. 2002). "These procedural protections are considered unnecessary for a Rule 23(b)(2) class because its requirements are designed to permit only classes with homogenous interests." *Id.*

The primary class clearly fits within subsection (b)(2). As indicated, Plaintiff seeks an order enjoining Defendants from further warrantless tire-chalking and declaring their prior tire-chalking unconstitutional. *See* ECF No. 9 at PageID.74. In this way, the interests of primary class members are "homogenous" and need not be protected by the procedures afforded to a damages class. *See Coleman*, 296 F.3d at 448 ("The additional requirements of notice and the opportunity to opt out are necessary in Rule 23(b)(3) classes precisely because claims for money damages involve individual interests that are necessarily heterogenous in nature.").

Accordingly, the primary class will be certified under subsection (b)(2).

### ii.

Subsection (b)(3) allows a district court to certify a class where it finds (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). These two requirements are necessary in the (b)(3) context to ensure that "a class action would achieve economies of time, effort, and expense." *See* FED. R. CIV. P. 23(b)(3) advisory committee's note to 1966 amendment. As explained below, the subclass meets both requirements.

First, the subclass's common questions of fact and law predominate over the individual ones. "To evaluate predominance, '[a] court must first characterize the issues in the case as common or individual and then weigh which predominate.'" *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413 (6th Cir. 2018) (quoting 2 William B. Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 4:50 (5th ed. 2010)). An action is proper under

Rule 23(b)(3) "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate," even if "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* at 414 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

Here, the common questions are (1) whether the tire-chalking was unconstitutional, (2) whether the tire-chalking was attributable to a City policy or custom, and (3) whether the subclass can, as a matter of law, recover the amount it paid in parking tickets. The primary individual question is one of causation; namely, whether Defendants' tire-chalking proximately caused the subsequent parking ticket. Another individual question is the dollar amount of the parking ticket.

On balance, the common questions predominate over the individual ones. The most significant questions for the subclass are those that can be resolved as a matter of law and on the basis of generalized proofs: specifically, (1) the constitutionality of Defendants' tire-chalking, (2) the existence of a policy or custom attributable to the City, and (3) the scope of damages under § 1983. Even the proximate-cause question could largely be resolved on a class-wide basis if Defendants choose to argue that some common fact severed the link between the tire-chalking and the payment of the parking ticket. As for the inevitable differences in damages, it is well settled that "individual damages calculations do not preclude class certification under Rule 23(b)(3)." *In re Whirlpool*, 722 F.3d at 861.

Second, a class action is the superior method of adjudicating the subclass claims. In evaluating superiority, district courts should consider "the difficulties of managing a class action," the comparative costs and benefits of "other means of disposing of the suit," and "the value of individual damage awards, as small awards weigh in favor of class suits." *Martin*, 896 F.3d at 416

(quoting *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011)).

Here, class resolution is clearly superior to individual resolution. The most obvious reason is that "the cost of litigation would dwarf any potential recovery," *In re Whirlpool*, 722 F.3d at 861, effectively closing the door for relief on thousands of affected motorists. *See also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."). Fairness is a central part of the superiority analysis, and it would be neither fair nor realistic to expect tire-chalked motorists to seek their claims individually in federal court.

Class resolution would also achieve significant "economies of time, effort, and expense." *See* FED. R. CIV. P. 23(b)(3) advisory committee's note to 1966 amendment. All subclass claims turn on common and complex questions of law that are best answered in a single proceeding. Even the individual questions, like the date and time of tire-chalking and ticketing, rely on data that can be analyzed and compiled in a systematic way. Indeed, according to Plaintiff, the City has already produced the necessary data in discovery. *See* ECF No. 93 at PageID.1665.

Accordingly, the subclass will be certified under subsection (b)(3).

### C.

The final step of certification is the appointment of class counsel. *See* FED. R. CIV. P. 23(g)(1) ("[A] court that certifies a class must appoint class counsel."). In appointing class counsel, the district court must consider several factors:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

FED R. CIV. P. 23(g)(1)(A). As discussed below, each of these factors weighs in favor of appointing Plaintiff's counsel, Messrs. Philip L. Ellison and Matthew E. Gronda, as class counsel.

First, Plaintiff's counsel have been at the helm of this case since they filed it in April 2017. As a result of their efforts, Plaintiff has earned two victories in the Sixth Circuit, resulting in two precedential opinions that have since been cited in other tire-chalking cases. *See, e.g.*, *Safaie v. City of L.A.*, No. CV193921FMOPJWX, 2021 WL 4786677, at *7 (C.D. Cal. July 12, 2021) (certifying class of motorists tire-chalked by the City of Los Angeles). Second, Plaintiff's counsel are career-long trial attorneys with substantial experience in class-action and civil-rights litigation. *See* Gronda Decl., ECF Nos. 91-3; Ellison Decl., ECF No. 91-4. Third, Plaintiff's counsel appear well versed in the Fourth Amendment and the law of § 1983. Fourth, Plaintiff's counsel represent they are prepared to contribute "significant resources" to this case, and last five years prove that they are capable of doing so. *See* ECF No. 91 at PageID.1471.

Accordingly, Plaintiff's counsel will be appointed as class counsel.

**IV.**

As mentioned above, Plaintiff has also filed a conditional motion for leave to file a second amended complaint. ECF No. 99. Plaintiff asks for leave to add a claim for nominal damages on behalf of the subclass in the event that this Court declines to certify the subclass on the basis of its damages theory. *Id.* at PageID.2034. But because the subclass will be certified, *see supra* Section III.B.ii, Plaintiff's conditional motion for leave will be denied as moot. Ultimately, whether the subclass can recover the amount paid in parking tickets under 42 U.S.C. § 1983 is a question of law that can be addressed at a later date if Plaintiff prevails on summary judgment.

- 16 -

## V.

Accordingly, it is **ORDERED** that Plaintiff's Renewed Motion to Certify, ECF No. 91, is **GRANTED**. The primary non-damages class and damages subclass, defined in Section I, *supra*, are certified under Federal Rule of Civil Procedure 23(b)(2) and (b)(3), respectively. Plaintiff is **APPOINTED** as class representative, and her counsel, Messrs. Philip L. Ellison and Matthew E. Gronda, are **APPOINTED** as class counsel.

Further, it is **ORDERED** that Defendant's Motion for Leave to File a Second Motion for Summary Judgment, ECF No. 94, is **GRANTED AND DENIED IN PART**. Defendants may file a cross-motion for summary judgment in accordance with this Court's forthcoming scheduling order.

Further, it is **ORDERED** that Plaintiff's Conditional Motion for Leave to File Second Amended Complaint, ECF No. 99, is **DENIED AS MOOT**.

Dated: January 21, 2022                              s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge