1UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALISON PATRICIA TAYLOR,

          Plaintiff,          Case No. 1:17-cv-11067

v.          Honorable Thomas L. Ludington
          United States District Judge

CITY OF SAGINAW and TABITHA HOSKINS,

          Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO DIRECT NOTICE OF CLASS CERTIFICATION**

This matter is before this Court upon Plaintiff's Motion to Direct Class Notice, ECF No. 107. For the reasons stated hereafter, Plaintiff's Motion will be granted.

**I.**

This is a putative class action challenging an age-old practice in parking enforcement: tire-chalking. On behalf of herself and a class of similarly situated motorists, Plaintiff Allison Patricia Taylor alleges that the City of Saginaw (the "City") violated the Fourth Amendment by chalking the tires of vehicles to record how long they had been parked. *See* ECF No. 9 at PageID.74. In addition to naming the City as a Defendant, Plaintiff also names the City's "most prolific [parking-ticket] issuer," Tabitha Hoskins, who allegedly ticketed Plaintiff 14 times. *Id.* at PageID.72.

In January 2022, this Court granted Plaintiff's motion for class certification, certifying two classes under Federal Rule of Civil Procedure 23(b): (1) a primary, non-damages class and (2) a damages subclass. ECF No. 105. The primary class is defined as:

> All persons (excluding the presiding judicial officer, his staff, the case counsel and their staff) who had and/or will have a vehicle tire chalked by a City of Saginaw parking enforcement officer, without a warrant, from April 5, 2014 to present.

*Id.* at PageID.2234. The subclass is defined as:

> All persons within the [primary] class who paid a parking ticket from April 5, 2014 to present as a result of the warrantless chalking of vehicle tire(s).

*Id.* at PageID.2235. The primary class was certified under (b)(2), while the subclass was certified under (b)(3). *Id.* at PageID.2248.

Three days after her motion to certify was granted, Plaintiff filed a motion to direct class notice, proposing three forms of notice: (1) a postcard, (2) a newspaper publication, and (3) a broadcast on the City's media platform, which is streamed on local television and YouTube. ECF No. 107at PageID.2256–58. Each form of notice would direct the reader to a website, www.SaginawChalk.com, which hosts a long-form notice and other papers related to this case. *Id.* As for timing, Plaintiff proposes that notices be sent on March 15, 2022, and that the opt-out period end on April 15, 2022. *Id.* at PageID.2259.

Defendants do not oppose Plaintiff's timeframe or the use of postcards and a newspaper publication; they only oppose Plaintiff's request to use the City's media platform. ECF No. 108 at PageID.2268–69. Specifically, they claim that a television and internet broadcast is unnecessary and might open Defendants to "claims from Plaintiff that the broadcast [was] in some manner insufficient or misleading." *Id.*

## II.

After class certification is granted, the next step in the class action process is to notify class members of the case. *See* FED. R. CIV. P. 23(c)(2). The type of notice required depends on the type of class that was certified.

"For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class." FED. R. CIV. P. 23(c)(2)(A) (emphasis added). Ordinarily, courts need not provide notice to a (b)(2) class given the "homogenous" interests of the class members. *See*

*Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002) (noting that a court need not provide "individual members of [a (b)(2)] class with notice and the opportunity to 'opt out' of the class action" because "[Rule 23(b)(2)] [is] designed to permit only classes with homogenous interests"); *Pelt v. Utah*, 539 F.3d 1271, 1289 (10th Cir. 2008) ("Due process does not require notice for absent class members in all actions under Rule 23(b)(2), as long as the class members were adequately represented.").

In contrast, "[f]or any class certified under Rule 23(b)(3) . . . [,] the court *must* direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B) (emphasis added). Such notice is necessary for a (b)(3) class because (b)(3) classes typically involve claims for money damages, which implicate "individual interests that are necessarily heterogenous in nature." *Coleman*, 296 F.3d at 448. Courts may provide notice to a (b)(3) class by either "United States mail, electronic means, or other appropriate means," but any such notice "must state clearly and concisely state in plain, easily understood language":

    (i.) the nature of the action;
   (ii.) the definition of the class certified;
  (iii.) the class claims, issues, or defenses;
  (iv.) that a class member may enter an appearance through an attorney if the member so desires;
   (v.) that the court will exclude from the class any member who requests exclusion;
  (vi.) the time and manner for requesting exclusion; and
 (vii.) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B). Courts must provide a notice comporting with these requirements "before class members can be legally bound." *Faber v. Ciox Health, LLC*, 944 F.3d 593, 603 (6th Cir. 2019) (emphasis added).

### III.

This case involves two classes: (1) a primary, non-damages class, and (2) a damages subclass. Notice for each class is addressed separately below.

### A.

Because the primary class was certified under Rule 23(b)(2), this Court "*may* direct appropriate notice to the class." *See* FED. R. CIV. P. 23(c)(2)(A) (emphasis added); *Coleman*, 296 F.3d at 447. Plaintiff contends that notice is unnecessary here, and this Court agrees.

As explained in the class certification order, the principal interest of every primary class member is to prevent further tire-chalking. *See* ECF No. 105 at PageID.2242. Plaintiff and her counsel adequately represent that interest in this case. *See id.* at PageID.2242–43; *Pelt*, 539 F.3d at 1289 ("Due process does not require notice for absent class members in all actions under Rule 23(b)(2), as long as the class members were adequately represented."). Further, the local press has consistently covered this case and the major developments in it. *See, e.g.*, Cole Waterman, *Appeals Court Again Reinstates Federal Tire-Chalking Lawsuit that Began in Saginaw*, MLIVE (Aug. 26, 2021), https://www.mlive.com/news/saginaw-bay-city/2021/08/appeals-court-again-reinstates-federal-tire-chalking-lawsuit-that-began-in-saginaw.html [https://perma.cc/3WHC-8AJ5]; Ed White, *Chalk It Up: Saginaw Parking Dispute Could Cover Thousands*, DETROIT NEWS (Jan. 25, 2022), https://www.detroitnews.com/story/news/local/michigan/2022/01/25/chalk-up-michigan-parking-dispute-could-cover-thousands/9213791002/ [https://perma.cc/47NC-Z47P]. In these circumstances, further notice to the primary class is unnecessary.

**B.**

Because the subclass was certified under Rule 23(b)(3), this Court "*must* direct to class members the best notice that is practicable under the circumstances" and consistent with the requirements of subsection (c)(2)(B). FED. R. CIV. P. 23(c)(2)(B) (emphasis added).

As noted previously, the subclass consists of "[a]ll persons within the [primary] class who paid a parking ticket from April 5, 2014 to present as a result of the warrantless chalking of vehicle tire(s)." ECF No. 105 at PageID.2235. Based on data that the City produced during discovery, Plaintiff estimates that approximately 4,820 parking tickets were paid during the relevant timeframe. ECF No.107 at PageID.2256. Of those tickets, 3,900 have a name and address associated with them. *Id.* The remaining 920 tickets are associated with only a license plate. *Id.* Given these circumstances, Plaintiff proposes a three-pronged approach to class notice.

First, Plaintiff proposes mailing a postcard to the 3,900 or so addresses associated with a parking ticket.[1] *Id.* at PageID.2256–57. The postcard would provide, among other things, a brief description of the case and the opt-out deadline. *See* Sample Postcard, ECF No. 107-1. Second, Plaintiff proposes publishing a notice "in a local newspaper of general circulation." ECF No. 107 at PageID.2257. Third, Plaintiff proposes broadcasting a notice on the City's media platform, Saginaw Government Television (SGTV), which is streamed on local television and YouTube. *Id.* at PageID.2258. Most importantly, all three forms of notice would direct the reader to a website that Plaintiff's counsel created, www.SaginawChalk.com. *See id.* at PageID.2256–58. Among other things, the website hosts a long-form class notice and a search tool that allows users to check whether they paid a City parking ticket during the class period.

---

[1] As Plaintiff notes, some subclass members paid more than one parking ticket, so the total number of addresses is likely to be lower than 3,900. *See* ECF No. 107 at PageID.2256.

Defendants oppose Plaintiff's approach only insofar as it calls for the City to broadcast a notice on SGTV. ECF No. 108 at PageID.2268. In short, Defendants argue that the postcard and newspaper publication provide sufficient notice, and that broadcasting a notice on SGTV would expose Defendants to liability for an "insufficient or misleading" broadcast. *Id.* at PageID.2269. Their argument is unconvincing.

As a threshold matter, this Court agrees that the postcard and newspaper publication would provide sufficient notice for subclass members who receive them. Specifically, after carefully reviewing the long-form notice on Plaintiff's website, this Court finds that such notice "clearly and concisely state[s] in plain, easily understood language" all the information required by Rule 23(c). *See* Class Notice, http://olcplc.com/classactions/saginawdocs/Saginaw_Class_Notice.pdf [https://perma.cc/C7H7-BTEU][2]. The problem is that not all subclass members are able to receive the postcard or likely to read the newspaper.

By Plaintiff's estimate, some 920 City parking tickets have no address associated with them. The subclass members who paid those tickets cannot receive notice of this case by postcard. And though print publications are a long-recognized means of providing notice, *see* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS, § 8:28 (5th ed. 2022), most Americans now receive their news from electronic sources, *see* Elisa Shearer, *More Than Eight-in-Ten Americans Get News from Digital Devices*, PEW RSCH. CTR. (Jan. 12, 2021) https://www.pewresearch.org/fact-tank/2021/01/12/more-than-eight-in-ten-americans-get-news-from-digital-devices/ [https://perma.cc/7NMC-4GEM].

---

[2] Nonetheless, there are several typos in the long-form class notice. *See, e.g.*, Class Notice at 3 ("Alison Patricia Taylor asserts that the City of Sagianw [sic] . . . ."). These typos are immaterial for Rule 23 purposes, but for the sake of professionalism, they should be corrected before class notice is issued.

At bottom, this Court is obligated to provide the "best notice that is practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B). Here, providing the best notice means enlisting the help of Defendant's media platform, SGTV, which is in a unique position to reach subclass members who cannot receive a postcard and might not read the newspaper. As for Defendants' liability concerns, they will be directed to broadcast language that is substantially identical in form and substance to the language used in Plaintiff's postcard.

Finally, this Court approves Plaintiff's proposed timeline for the notice and opt-out period. Although the legal theories presented here are somewhat novel, the monetary interest of each subclass member is relatively small. *See* ECF No. 105 at PageID.2242 (noting that "ticket fines ranged between $15.00 and $30.00." (citing ECF No. 91 at PageID. 1474)). Accordingly, a 30-day opt-out period will likely afford subclass members a reasonable opportunity to weigh the risks and benefits of opting out.[3] *See* MANUAL FOR COMPLEX LITIGATION § 21.321 (4th ed. 2022) ("Courts usually establish a period of thirty to sixty days (or longer if appropriate) following mailing or publication of the notice for class members to opt out.").

## IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion to Direct Class Notice, ECF No. 107, is **GRANTED**.

Further, it is **ORDERED** pursuant to Federal Rule of Civil Procedure 23(c), that:

---

[3] Plaintiff also requests that this Court allow the class-notice process to complete before deciding any motion for summary judgment, citing the so-called "rule against one-way intervention." *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 432 (6th Cir. 2012) ("The rule against one-way intervention prevents potential plaintiffs from awaiting merits rulings in a class action before deciding whether to intervene in that class action."). Motions for summary judgment are due on March 8, 2022 and will be subject to a five-week briefing schedule. *See* Am. Scheduling Order, ECF No. 106 at PageID.2249; E.D. MICH. LR 7.1(e)(2). Accordingly, this Court is unlikely to decide any motion for summary judgment until class notice is complete.

1. Plaintiff's proposed postcard, ECF No. 107-1, and the long-form notice to which that postcard refers, are **APPROVED** as class notice sufficient for purposes of Federal Rule of Civil Procedure 23(c)(2)(B).

2. Plaintiff is **DIRECTED** to make all necessary arrangements for the mailing of postcards to all addresses associated with the payment of a City parking ticket within the class period. Such postcards must be substantially identical in form and substance to Plaintiff's proposed postcard, ECF No. 107-1, and must be mailed **on or before March 15, 2022**.

3. Plaintiff is **DIRECTED** to make all necessary arrangements for the publication of a notice in a local newspaper of general circulation. Such notice must consist of language substantially identical in form and substance to Plaintiff's proposed postcard, ECF No. 107-1, and must be published weekly **beginning the week of March 15, 2022**, until the termination of the opt-out period, identified below.

4. Defendant City of Saginaw is **DIRECTED** to broadcast a notice on Saginaw Government Television (SGTV). Such notice must consist of language substantially identical in form and substance to Plaintiff's proposed postcard, ECF No. 107-1, and must be broadcast as part of SGTV's regularly scheduled programming, at least once a day, **beginning on March 15, 2022**, until the termination of the opt-out period, identified below.

5. The opt-out period for the subclass shall **TERMINATE on April 15, 2022**. Purported opt-out notices must be postmarked **no later than April 15, 2022**, to be effective.

It is **SO ORDERED.**

Dated: February 8, 2022    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge