UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| ALISON PATRICIA TAYLOR, on behalf of herself and a class of all others similarly situated,<br><br>        Plaintiffs,<br><br>v<br><br>CITY OF SAGINAW and TABITHA HOSKINS, sued in her official and Individual capacities,<br><br>        Defendants. | )<br>) Case No. 1:17-cv-11067<br>)<br>) HON. THOMAS L. LUDINGTON<br>) MAG. PATRICIA T. MORRIS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| OUTSIDE LEGAL COUNSEL PLC<br>PHILIP L. ELLISON (P74117)<br>Co-Counsel for Plaintiffs<br>P.O. Box 107<br>Hemlock, MI 48626<br>(989) 642-0055<br>pellison@olcplc.com | GREGORY W. MAIR (P67465)<br>KAILEN C. PIPER (P82865)<br>Attorneys for Defendants<br>300 St. Andrews Rd., Suite 302<br>Saginaw, MI 48638<br>(989) 790-0960 |
| MATTHEW E. GRONDA (P73693)<br>Co-Counsel for Plaintiffs<br>P.O. Box 70<br>St. Charles, MI  48655<br>(989) 249-0350<br>matthewgronda@gmail.com | |

**DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 56**

**ORAL ARGUMENT REQUESTED**

NOW COME the Defendants, CITY OF SAGINAW and TABITHA HOSKINS, by and through their attorney GREGORY W. MAIR, and for their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 state as follows:

1.    That this litigation arises out of Plaintiff's claim that she was issued multiple parking tickets in violation of the Fourth Amendment's prohibition on unreasonable searches.

2.    That, specifically, Plaintiff claims that her Fourth Amendment rights were violated because Ms. Tabitha Hoskins, a parking enforcement official for the City of Saginaw, marked one of her tires with a small line of chalk on several occasions.

3.    That the chalking was reasonable under an exception to the warrant requirement, including the *de minimis* rationale, consent, community caretaker, and automobile exceptions.

4.    That Plaintiff cannot prove causation to recover damages under a § 1983 claim when the alleged damages, a monetary fine, would have been incurred regardless of the unconstitutional violation.

5.    That Plaintiff is not entitled to injunctive relief because she lacks standing and the request is moot.

6.    That the City of Saginaw cannot be liable because the alleged injury was not a product of the City's own acts, and there is no identifiable policy that the City was the moving force behind Plaintiff's alleged constitutional deprivation

7.      That concurrence in the instant Motion is sought pursuant to Local Rule 7.1 and there was no response.

WHEREFORE, Defendants, CITY OF SAGINAW and TABITHA HOSKINS, respectfully request that this Honorable Court GRANT their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and enter an Order dismissing Plaintiff's Complaint with prejudice and in its entirety.

Respectfully Submitted,

Dated: March 3, 2022          /s/KAILEN C. PIPER
                              Attorney for Defendants
                              300 St. Andrews Road, Suite 302
                              Saginaw, Michigan  48638

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| ALISON PATRICIA TAYLOR, on behalf of herself and a class of all others similarly situated, | ) Case No. 1:17-cv-11067 ) ) HON. THOMAS L. LUDINGTON ) MAG. PATRICIA T. MORRIS |
| Plaintiffs, | ) ) |
| v | ) ) |
| CITY OF SAGINAW and TABITHA HOSKINS, sued in her official and Individual capacities, | ) ) ) ) ) |
| Defendants. | ) ) ) |

| | |
|---|---|
| OUTSIDE LEGAL COUNSEL PLC | GREGORY W. MAIR (P67465) |
| PHILIP L. ELLISON (P74117) | KAILEN C. PIPER (P82865) |
| Co-Counsel for Plaintiffs | Attorneys for Defendants |
| P.O. Box 107 | 300 St. Andrews Rd., Suite 302 |
| Hemlock, MI 48626 | Saginaw, MI 48638 |
| (989) 642-0055 | (989) 790-0960 |
| pellison@olcplc.com | |
| MATTHEW E. GRONDA (P73693) | |
| Co-Counsel for Plaintiffs | |
| P.O. Box 70 | |
| St. Charles, MI  48655 | |
| (989) 249-0350 | |
| matthewgronda@gmail.com | |

## DEFENDANTS' BRIEF IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT

PREPARED BY:
KAILEN C. PIPER
Attorney for Defendants
300 St. Andrews Road, Suite 302
Saginaw, MI  48638

## **TABLE OF CONTENTS**

**PAGES**

Index of Authorities ............................................ iii

Questions Presented ............................................ vii

Statement of Controlling or Most Appropriate Authority
for the Relief Requested ......................................... viii

Statement of Facts ................................................ 1

    I.     Background .................................................. 1

    II.    Allison Taylor's Systemic Violations of Parking
           Ordinances .................................................. 3

    III.   Procedural History ........................................ 3

Standard of Review ............................................... 5

Law and Argument ................................................ 6

    I.     Chalking Tires is Reasonable Under the Fourth
           Amendment .................................................. 6

           A. Chalking Tires Falls Under the *De Minimis*
              Exception .................................................. 6

           B. Chalking Tires Occurred With Consent ................ 9

           C. Community Caretaker Search ......................... 11

           D. The Automobile Exception ........................... 14

    II.    Plaintiff Cannot Recover for the Claimed Damages
           42 U.S.C. § 1983. .......................................... 15

           A. Plaintiff cannot show that her claimed damages
              (monetary fines) were caused by the alleged

constitutional violation.                                                    16

    B. In the alternative, Plaintiff is not entitled to the
       Compensatory or Punitive damages that she seeks
       as the damages do not compensate an actual injury
       and there is no evil motive, intent or reckless or
       callous indifference.                                           22

III.   Plaintiff is Not Entitled to Injunctive Relief.         24

IV.   The City of Saginaw is Not Liable Under § 1983.        26

Conclusion                                                              29

## TABLE OF AUTHORITIES

| CASES | PAGES |
|---|---|
| *Andrews v Hickman County, Tenn.,*<br>700 F.3d 845, 855-56 (6th Cir. 2012) | iii, 8, 9 |
| *Bringham City v Stuart,*<br>547 U.S. 398, 403 (2006) | iii, viii |
| *Cady v. Dombrowski,*<br>413 U.S. 433, 441 (1973); | iii, viii, 6, 12, 13, 14 |
| *Cardwell v. Lewis,*<br>417 U.S. 583, 591-92 (1974) | iii, 7, 9 |
| *Carey v Piphus,*<br>435 U.S. 247, 254 (1978) | iii, 23 |
| *Carroll v. United States,*<br>267 U.S. 132, 157-58 (1925); | iii, viii, 6, 8, 15 |
| *City of Los Angeles v Lyons,*<br>461 U.S. 95, 102 (1983) | iii, 25 |
| *City of Oklahoma City v. Tuttle,*<br>471 U.S. 808, 821 (1985) | iii, 27 |
| *Florida v. Jimeno,*<br>500 U.S. 248, 250-251 (1991) | iii, 10 |
| *Halpern 2012, LLC v City of Center Line,*<br>303 F.Supp.3d 1109 (2019) | iii, viii, 16, 17, 18, 21 |
| *Heck v Humphrey,*<br>512 U.S. 477, n. 7 (1994) | iii, 23 |
| *Hector v Watt,*<br>235 F.3d 154, 157 (3rd Cir. 2001) | iii, 21 |

*Illinois v McArthur*,
    531 U.S. 326, 331 (2001)                  iv, 8

*Illinois v Rodriguez*,
    497 U.S. 177, 181 (1990)                  iv, 10

*Katz v U.S.*,
    389 U.S. 347, 352-53 (1967)               iv, 15

*MS Rentals, LLC v City of Detroit*,
    362 F.Supp. 3d (E.D. Mich. 2019)      iv, 15, 17, 18, 21

*Meyers v City of Cincinnati*,
    14 F.3D 1115, 1120 (6th Cir. 1994)       iv, ix, 27

*Mich. Dep't of State Police v Sitz*,
    496 U.S. 444, 449-450 (1990)             iv, viii

*Monell v Department of Social Services of City of New York*,
    436 U.S. 658, 690 (1978)          iv, 26, 27, 28

*Olmstead v United States*,
    277 U.S. 438, 457 (1928)                 iv, 15

*Powers v Hamilton Cty. Pub. Comm'n*,
    501 F.3d 592, 608 (6th Cir. 2007)           iv, 17

*Ruth v Ford*,
    (No. 09-11278, 2010 WL 3245411, at *6 (E.D. Mich. Aug. 17, 2010)  iv, 17

*Schneckloth v Bustamonte*,
    412 U.S. 218, 219 (1973)          iv, viii, 6, 9

*South Dakota v Opperman*,
    428 U.S. 364, 368-69 (1976)            iv, 14

*Smith v Wade*,
    461 U.S. 30, 35 (1983)                 iv, 24

*Taylor v City of Saginaw*,
 922 F.3d 328, 336 (6th Cir. 2019)                                    v, 4, 13

*Townes v City of New York*,
 176 F.3d 138 (2d Cir. 1999)                                          v, 21. 22

*Uday v City of Dearborn*,
 356 Mich 542, 543 (1959)                                             v, 13

*U.S. v W.T. Grant Co.*,
 345 U.S. 629, 633 (1953)                                             v, ix, 25

*United States v Aluminum Co. of America*,
 148 F.2d 416 (2d Cir. 1945)                                          v, 25

*United States v Brown*,
 447 Fed. Appx. 706, 709 (6th Cir. 2012)                             v, 11, 12

*United States v Jacobsen*,
 466 U.S. 109, 125 (1984)                                             v, 7

*United States v Jones*,
 565 U.S. 400, 406 (2012)                                             v, viii

*United States v Lewis*,
 869 F.3d 460, 462 (6th Cir. 2017)                                    v, 12

*Whitmore v Arkansas*,
 495 U.S. 149, 158 (1990)                                             v, 25

## **COURT RULES**

Fed. R. Civ. P. 56                                                   v, 29

Fed. R. Civ. P. 56(a)                                                v, 5

Fed. R. Civ. P. 56(c)(1)                                             v, 6

M.C.L. 257.1 et seq                                                  v, 19

MCL 257.674 ix, 19

M.C.L. 257.907 ix, 19

MCL 600.8395 ix, 19

**STATUTES**

42 U.S.C. § 1983 i, ix, 16

**CONSTITUTIONAL AMENDMENTS**

U.S. Const. art. III, § 2 ix

U.S. Const. amend. IV ix, viii

**CITY OF SAGINAW ORDINANCES**

70.99 ix, 19

72.50 ix, 20

**SAGINAW CITY CHARTER**

Chapter XIV, Section 97 ix, 20

## **QUESTIONS PRESENTED**

I.   WHETHER CHALKING A TIRE A REASONABLE "SEARCH" UNDER THE FOURTH AMENDMENT?

> Defendants would Answer, "Yes."
> Plaintiff would Answer, "No."

II.  WHETHER PLAINTIFF CAN RECOVER FOR AN ALLEGED CONSTITUTIONAL VIOLATIONS WHEN SHE CANNOT ESTABLISH CAUSE IN FACT AND PROXIMATE CAUSE UNDER 42 U.S.C § 1983

> Defendants would Answer, "No."
> Plaintiff would Answer, "Yes."

III. WHETHER PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF WHEN SHE LACKS STANDING AND THE REQUEST IS OTHERWISE MOOT?

> Defendants would Answer, "No."
> Plaintiff would Answer, "Yes."

IV.  WHETHER THE CITY IS FREE FROM LIABILITY WHEN CHALKING IS DISCRETIONARY, NOT AN OFFICIAL POLICY, NOT A PERVASIVE CUSTOM, NOT A PRACTICE THAT LAWMAKERS KNOW OF, AND NOT AN ACT BY A FINAL DECISION-MAKER?

> Defendants would Answer, "No."
> Plaintiff would Answer, "Yes."

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF REQUESTED

The Fourth Amendment protects individuals from unreasonable searches and seizures.  U.S. Const. amend. IV.  Under the Fourth Amendment, a search occurs when there is (1) a trespass into a constitutionally protected area for (2) the purpose of gathering information.  *United States v. Jones*, 565 U.S. 400, 406 (2012).  While a search without a warrant is presumptively unreasonable, the Supreme Court has recognized several exceptions to the warrant requirement.[1]  *Bringham City v Stuart*, 547 U.S. 398, 403 (2006); See also,  *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 449-450 (1990); *United States v. Jacobsen*, 466 U.S. 109, 125 (1984); *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973); *Carroll v. United States*, 267 U.S. 132, 157-58 (1925); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

Even where there is a Fourth Amendment constitutional violation, Plaintiff must prove causation to recover damages under a § 1983 claim.  *Halpern 2012, LLC v City of Center Line*, 303 F.Supp.3d 1109 (2019); *MS Rentals, LLC v City of Detroit*, 362 F.Supp. 3d (E.D. Mich. 2019).  There is no causation where the damages, including a monetary fine, would have been incurred regardless of the unconstitutional violation.  *Id.*

---

[1] Counsel for Plaintiff has already admitted on the record that the pre-*Jones* exceptions to the warrant requirement should still apply to the post-*Jones* search analysis regarding reasonableness.

Furthermore, to hold a municipality liable under 42 U.S.C. § 1983 for an alleged Fourth Amendment violation, a plaintiff must show that the injury is "a product of the city's own acts; thus, an unconstitutional policy of the city must be identified as having been the moving force of the plaintiff's constitutional deprivation." *Meyers v. City of Cincinnati*, 14 F.3D 1115, 1120 (6th Cir. 1994).

Finally, Plaintiff in this case is seeking injunctive relief; however, Plaintiff is not entitled to an injunction as there is no ongoing and continuing harm. *U.S. v W.T. Grant Co.*, 345 U.S. 629, 633 (1953). Specifically, the city has directed its parking enforcement officials to not use chalk in the enforcement of parking ordinance violations. Since Plaintiff is not entitled to an injunction, the claim must be dismissed as against both Defendants. Further, Ms. Hoskins must be dismissed entirely from suit as the Sixth Circuit has already concluded that she is entitled to qualified immunity for the remaining allegations.

## STATEMENT OF FACTS

### I.  BACKGROUND

The City of Saginaw Code of Ordinances sets forth parking restrictions for all vehicles and their owners taking advantage of parking within the City.  (Motion, RE 64-5, Page ID# 1117).  The parking ordinances are designed to promote safe use on the roadways and access to parking and businesses for customers when they frequent the downtown shopping / business district.  (Motion, RE 64-2, PageID #1045 (¶ 5); Motion, RE 64-4, PageID #1114 (¶ 6)).  Parking ordinances promote equal access by ensuring parking spots are available throughout the day and can be utilized by anyone, not just those individuals who get to the spots first and hold the spot for the entirety of the day.  (Motion, RE 64-2., PageID # 1045 (¶ 4,5)); Motion, RE 64-4, PageID # 1114 (¶ 5,6)).  If a person violates a parking ordinance, he/she will be liable for a civil infraction, not a criminal penalty, and are required to pay a small fine.  (Motion, RE 64-5, Page ID# 1117).

To enforce the City's parking ordinances, the City employs parking enforcement officials.  (Motion, RE 64-4, Page ID# 1114, (¶ 3)).  Prior to 2019, the parking enforcement officials would mark the tires of certain vehicles with chalk.[2]  Ms. Hoskins explained that chalking was discretionary:

---

[2] The parking enforcement officials no longer use chalk in connection with parked vehicles in the City. (Motion, RE 64-3, PageID#  1074-75).

1

Q: All right. Why do you have a chalking wand then if you're putting things down on a piece of paper?
A: It's your discretionary (sic) to use it if you want to.

(Motion, RE 64-3, PageID # 1085).  Ms. Hoskins further explained the process of enforcing parking ordinances, stating that when she saw a vehicle in a timed parking spot, she would **always** note the time on a paper form.  (Motion, RE 64-3, PageID # 1084-1085).  She would also input this information into a handheld device.  (Motion, RE 64-3, PageID# 1084-1085).   While she would always write the vehicle information on a piece a paper, she did not always use chalk.  (Motion, RE 64-3, PageID# 1085-1086).  She explained that she does not have to use it and can tell if someone exceeds the time limitations in a parking zone without it.  (Motion, RE 64-3, PageID# 1073).  Therefore, parking enforcement officials, such as Ms. Hoskins, did not rely on the chalk to gather information about parking violations.  (Motion, RE 64-3, PageID # 1085; Motion, RE 64-4, Page ID# 1114-1115 (¶¶ 8, 9)).  In an affidavit, Ms. Hoskins stated:

That the use of chalk to enforce parking was not required and was not done on every vehicle that parking in a time-limited space within the City of Saginaw from the time I have been employed with the City as a parking enforcer until present.

(Motion, RE 64-4, PageID# 1115, ¶ 10).   John Stemple, City Director of Neighborhood Services and Inspections, confirms Ms. Hoskins, stating in an

2

affidavit "[t]hat using chalk was not a required policy or practice by the City." (Motion, RE 64-2, PageID# 1045, ¶ 7).

The purpose of the "chalking" was to help enforce the parking ordinances and promote the City's interests regarding safe use on the roadways, helping downtown businesses, and providing equal access to parking. (Motion, RE 64-2, PageID # 1045 (¶ 4,5); Motion, RE 64-4, PageID # 1114 (¶ 5,6)). Chalking was used to alert vehicle owners that parking ordinances, including time restrictions, were being enforced. (Motion, RE 64-3, PageID # 1081- 1088; Motion, RE 64-4, PageID # 1114-1115 (¶¶ 8, 9)).

## II. ALLISON TAYLOR'S SYSTEMIC VIOLATIONS OF PARKING ORDINANCES

Plaintiff, Allison Taylor, frequently violated the City's parking ordinances. (Amended Complaint, RE 9, PageID # 72, ¶ 13). Since 2014, Plaintiff accumulated fourteen (14) parking tickets. (Amended Complaint, RE 9, PageID # 72, ¶ 13). She admits that she has paid all of the parking tickets incurred prior to filing suit. (Response, RE 68-8, PageID #1225). She also admits that she has never appealed any of her parking tickets. (Response, RE 68-8, PageID #1227)

## III. PROCEDURAL HISTORY

As this Court is aware, Plaintiff filed a Complaint on April 5, 2017, and First Amended Complaint on May 17, 2017, under § 1983 alleging that the small chalk marks placed on her tire when enforcing parking

violations within the City of Saginaw violated the Fourth Amendment.  (Complaint, RE 1, PageID #1);(Amended Complaint, RE 9, PageID # 70).

The City and Ms. Hoskins filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Motion, RE 10, PageID# 132).  This Court granted the Motion and dismissed Plaintiff's Complaint relying on the community caretaker exception to the Fourth Amendment warrant requirement.  (Opinion and Order, RE 14, PageID# 201).  Plaintiff subsequently appealed the dismissal to the Sixth Circuit.  (Notice of Appeal, RE 16, PageID # 215).  The Court found that *at the pleading stage* there was a question regarding whether an unreasonable search occurred.  *Taylor v City of Saginaw*, 922 F.3d 328, 336 (6th Cir. 2019).  The Court issued an amended opinion to address that the holding did not extend beyond the pleading stage and the City was free to renew its arguments.  *Id.*

After discovery, Plaintiff filed a Motion for Class Certification and Defendants filed a Motion for Summary Judgment arguing once more that there was no search under the Fourth Amendment and that even if there were, one of the exceptions to the warrant requirement applies.  (Motion, RE 47, PageID# 502); (Motion, RE 64, PageID #1001). This Court granted Defendant's Motion for Summary Judgment on the grounds that there was a reasonable search pursuant to the administrative exception to the warrant requirement under Fourth Amendment

jurisprudence. (Order, RE 77, PageID # 1407-1408). As a result, this Court did not address whether any other exceptions apply to the facts of this case, nor whether the Defendants are in fact liable under § 1983. (Order, RE 77, PageID # 1408).

On appeal, the Sixth Circuit reversed this Court's opinion granting Summary Judgment to Defendants under the administrative search exception and found that Defendant Tabitha Hoskins is entitled to qualified immunity. (Opinion and Judgment, RE 86). The Sixth Circuit declined to consider the remaining exceptions to the warrant requirement or Defendant's liability under § 1983. (Opinion and Judgment, RE 86). However, the Sixth Circuit granted qualified immunity as to Defendant Hoskins and found no abuse of discretion in connection with this Court's decision to consider summary judgment motions prior to resolving Plaintiff's Motion for Class Certification. (Opinion and Judgment, RE 86).

On remand, this Court issued an Order reopening the case (Order, RE 96) and this Renewed Motion for Summary Judgement now follows.

## **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:"

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## LAW AND ARGUMENT

## I.   CHALKING TIRES IS REASONABLE UNDER THE FOURTH AMENDMENT.

The Supreme Court has recognized several exceptions to the Fourth Amendment warrant requirement where the search is reasonable: *De minimis* searches, community caretaker searches, vehicle searches, or consent searches. *See Sitz*, 496 U.S. at 449-450; *Jacobsen*, 466 U.S. at 125; *Cady*, 413 U.S. at 441; *Carroll*, 267 U.S. at 158; *Schneckloth*, 412 U.S. at 219.

## A.   CHALKING TIRES FALLS UNDER THE *DE MINIMIS* EXCEPTION[3]

Chalking tires is reasonable under the Fourth Amendment because it is *de minimis*. The Supreme Court has held that minor intrusions into private property by

---

[3] The Court of Appeals has addressed an interest in the application of the de minimis exception to this case. Specifically, the Court inquired into the de minimis exception at oral argument on the 2020 appeal. Further, the Court's recent opinion states, "But a question remained whether, at common law, **a de minimis** or harmless trespass to chattels, like putting some chalk on a tire, gave rise to a cause of action for trespass." (Opinion and Judgment, RE 86).

government officials are considered reasonable under the *de minimis* rationale when the government's interests outweigh the minor intrusion.  *United States v Jacobson*, 466 U.S. 109, 125 (1984). The City has significant interests that are furthered by enforcing its parking ordinances through the use of chalk, and these interests greatly outweigh the minimal intrusion that a chalk mark creates.

When a minor intrusion occurs, a balancing test is employed.  In *Jacobsen*, the Court found that the warrantless destruction of a small amount of cocaine during a field drug test was *de minimis* because only a trace amount of material was involved.  *Id.*  The Court explained the destruction was reasonable because the government interests justifying the search and seizure were "substantial" and outweighed the minimal intrusion into private property. *Id.*

Similarly, in *Cardwell v. Lewis,* 417 U.S. 583, 591-92 (1974), the Court found that examining the outside of a tire and taking small paint scrapings from a vehicle were *de minimis* searches of an individual's constitutional interest.[4]  The reasoning included the long – established Fourth Amendment principle that searches of an automobile are less intrusive than the search of one's home.  *Id.* at 590.  The Court explained, "one has a lesser expectation of privacy in a motor vehicle because its

---

[4] While the Court in *Cardwell* did not explicitly state that it was applying the *de minimis* rationale, the Court later explained in *Jacobsen* that *Cardwell* was based on the *de minimis* rationale. 466 U.S. at 125. Specifically, the Court explained, "examination of automobile's tires and taking of paint scrapings was a de minimis invasion of constitutional interests" *Id.*

function is transportation, and it seldom serves as one's residence or as the repository of personal effects.  A car has little capacity for escaping public scrutiny. It travels public thoroughfares where its occupants and its contents are in plain view." *Id*.  The Court relied, in part, on *Carroll v U.S.* wherein the Supreme Court explained that "practically since the beginning of government" it has been recognized that securing a warrant is not as practicable for an automobile because it "can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."  267 U.S. 132, 153 (1925).

In *Illinois v McArthur*, the Supreme Court considered "exigent circumstances" in which a warrantless search and / or seizure was not found *per se* unreasonable.  531 U.S. 326, 331 (2001).  These circumstances involve warrantless searches of automobiles and suspicionless stops of drunk drivers at checkpoints.  *Id*. In analyzing these cases, the Court explained that warrantless searches and seizures were held reasonable when "the restraint at issue was tailored to that need, being limited in time and scope."  *Id*.  Ultimately, the court held that it "balance[es] the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable."  *Id*.

In *Andrews v Hickman County, Tenn.*, the Sixth Circuit addressed *Illinois v McArthur* and the *de minimis* exception. The Sixth Circuit held that the de minimis exception did not apply where the intrusion was to a higher degree and not for the

purpose of maintaining the status quo and preserving the evidence.  700 F.3d 845, 855-56 (6th Cir. 2012).  *Andrews* differed because the officers did not enter the home to preserve the "status quo."  Instead, the officer fully entered the home rather than remaining near the doorway and observed the potential criminal suspect for the destruction of evidence.

Chalking is a minimal intrusion. Like the small amount of cocaine involved in *Jacobsen*, chalking involves a small amount of material.  A parking official will only mark a single tire, with a small line of chalk that will wash off shortly after it is applied.  Additionally, chalking involves only the exterior of the vehicle and is even less intrusive than the small amount of scrapings that were taken in Cardwell as it is not permanent.  Further, and arguably most importantly, the chalk was used to maintain the "status quo" and did not intrude beyond what was necessary for that purpose.  Finally, the circumstances are such that it is unreasonable to first obtain a warrant before chalking a tire to enforce a parking ordinance.

## B.   CHALKING TIRES OCCURRED WITH CONSENT.

Chalking is reasonable because individuals who park in the City's parking spaces consent to a minimal search of the outside of their vehicles.  A search of private property that occurs after the owner of the property provides consent to search is reasonable under the Fourth Amendment.  *See Schneckloth*, 412 U.S. at 219.  There are three elements that must be met for consent to be valid: (1) the

9

consent must be granted voluntarily, (2) the consent must be obtained from someone with real or apparent authority to give consent, and (3) the scope of the search must not exceed the consent granted. *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

Individuals who park in a city parking area are voluntarily giving their consent for officials to search the outside of their vehicles. Throughout the City there are signs notifying individuals that they are subject to parking enforcement. An individual who parks in a public parking area is, or should be, aware that parking enforcement may occur. This includes minor examinations of the exterior of a vehicle.

Further, individuals who park in public spaces have actual or apparent authority to grant permission to government officials to conduct a search. In *Rodriguez*, the Supreme Court explained that consent can be given by an individual with actual authority or apparent authority. 497 U.S. 185. Here, anyone driving and parking a vehicle in a public parking area would have apparent authority to consent to a search. A reasonable government official would believe that an individual who drives a vehicle has the ability to consent to having that vehicle searched.

Chalking did not exceed the scope of the consent that was granted. In *Florida v. Jimeno*, 500 U.S. 248, 250-251 (1991) the Supreme Court reasoned that the scope of the consent dictates the scope of the permissible search. By parking in a public space, the driver of the vehicle is only consenting to have the outside of his vehicle

searched. Leaflets can be placed on the vehicle; tickets can be placed on the vehicle; and identifying information, such as the license plate, can be observed. These are all permissible searches that individuals consent to when they park in a public parking spot. In fact, beyond other items that might be placed on one's vehicle, it is common knowledge that tire chalking is an expected practice when parking in a public space.

The tire chalk is minimally intrusive and does not extend beyond that which is necessary for parking enforcement. It does not provide any more information than a generalized idea of how long the vehicle was in the space. Because individuals consented to having the outside of their vehicles searched, and the parking officials stayed within the parameters of that consent, the alleged searches were reasonable.

## C.    COMMUNITY CARETAKER SEARCH.

Chalking tires is reasonable under the Fourth Amendment because parking officials are undertaking a reasonable and long-accepted community caretaking activity.[5] "The community-caretaking exception applies most clearly when the action of the police is 'totally divorced from the detection, investigation, or acquisition of evidence relating **to the violation of a criminal statute**[.]'" *United*

---

[5] The Sixth Circuit Opinion and Order on Appeal specifically provides that the Defendants may re-argue the vehicle exception and/or the community caretaker exception to the warrant requirement beyond the pleading stage. It has yet to be decided as a matter of law beyond the pleadings.

*Staes v. Brown*, 447 Fed. Appx. 706, 709 (6th Cir. 2012) (quoting *Cady*, 413 U.S. at 441) (emphasis added). When the community caretaker exception is applied, the actions of the government official must be reasonable. *United States v. Lewis*, 869 F.3d 460, 462 (6th Cir. 2017). Chalking tires was not designed to enforce criminal statutes and the practice was objectively reasonable and long accepted by society; therefore, chalking tires was reasonable under the Fourth Amendment. In *Lewis*, the Court of Appeals found that the community caretaker exception was applicable because a police officer opened a car door for the sole reason of finding the passenger a safe ride home. *Id.* In *Brown,* the Court reasoned that the community caretaker exception applied to a police officer's stopping of a vehicle because the officer was not seeking to investigate a crime, but only to question the driver as to the whereabouts of a missing minor. 447 Fed. Appx. at 710. Thus, when the purpose of the search is not primarily to enforce a criminal statute, but it is for another purpose, then the community caretaker exception is applicable.

Chalking by the City was designed to enforce its own City ordinances, and not criminal statutes; therefore, the community caretaker exception applies. Like the officer in *Brown,* the parking officials for the City are not enforcing any criminal statutes and are thus divorced from criminal enforcement. In fact, Chalking is even less invasive and more reasonable than opening the doors of a vehicle as in *Lewis*. The City's use of chalk was promoting its parking ordinances, which were designed

to help road safety.  If opening a car door is reasonable under the community caretaking exception to promote road safety, then chalking a tire is reasonable under the community caretaking exception to promote safe and equal access to parking.

Since *Taylor v City of Saginaw,* 922 F.3d 328 (2019), the facts that were developed *beyond the pleading stage* demonstrate how the search in this instance bears a relation to public safety to support the community caretaker exception. Notably, the reason we have parking ordinances and enforcement thereof is to promote safe use of the roadways and provide access to parking and businesses for customers when they frequent the downtown shopping / business district.  When an individual overstays the 2-hour time limitation, the parking lots become congested with traffic, which can lead to people creating their own spaces to frequent the business district.  This is particularly an issue because the officers enforce parking near the County courthouse, where people often have no choice but to show up for a scheduled hearing.  The hazard with congested parking in a business district has been recognized by the Michigan Supreme Court in *Uday v City of Dearborn*, 356 Mich 542, 543 (1959)("The personal injury hazard in the congested business areas requires no elaboration from us.") – Exhibit 3.

The Supreme Court in *Cady v Dombrowski* explained:

Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection,

investigation, or acquisition of evidence relating to the violation of a
criminal statute.

413 US 433, 441(1973).   Likewise, in *South Dakota v Opperman*, the Supreme

Court explained:

> In the interests of public safety and as part of what the Court has called
> "community caretaking functions," *Cady v. Dombrowski, supra*, 413
> U.S. at 441, 93 S.Ct. at 2528, automobiles are frequently taken into
> police custody. Vehicle accidents present one such occasion. To permit
> the uninterrupted flow of traffic and in some circumstances to preserve
> evidence, disabled or damaged vehicles will often be removed from the
> highways or streets at the behest of police engaged solely in caretaking
> and traffic-control activities. **Police will also frequently remove and
> impound automobiles which violate parking ordinances and which
> thereby jeopardize both the public safety and the efficient
> movement of vehicular traffic. The authority of police to seize and
> remove from the streets vehicles impeding traffic or threatening
> public safety and convenience is beyond challenge.**

428 U.S. 364, 368-69 (1976)(emphasis added).   The purpose of chalking was to help

enforce the parking ordinances and promote the City's interests regarding safe use

on the roadways, helping downtown business, and providing equal access to parking.

Courts have recognized vehicular traffic, including stopped or parked vehicles, as a

public safety concern.   The chalk did not extend beyond the scope of this reasonable

government interest in parking enforcement.

**D.      THE AUTOMOBILE EXCEPTION.**

Chalking is reasonable because vehicles can be searched under the "trespass

theory" when a government official has probable cause.   The Supreme Court has

previously addressed whether a warrantless search is reasonable for a vehicle under the "trespass theory" in *Carroll*, 267 U.S. at 158-59.

At the time *Carroll* was decided, the "trespass theory" was the controlling theory for Fourth Amendment jurisprudence. *See Olmstead v. United States,* 277 U.S. 438, 457 (1928)*; Katz v. U.S.*, 389 U.S. 347, 352-53 (1967).   The Court in *Carroll* reasoned that the officers could search a vehicle without a warrant because they had probable cause that some type of violation occurred. 267 U.S. at 159.   The Court explained that the type of violation did not matter, but instead it was whether the searching officer had a probable cause to believe some violation occurred. *Id.* at 158.

The Court further explained that it did not matter what type of violation occurred; rather, what was key was whether the investigating officer had probable cause to believe that some violation occurred.   267 U.S. at 158.   Here, just like in *Carroll*, it does not matter what type of violation occurred, just that the investigating parking officials had probable cause to believe that a violation did occur or would occur.   Although these violations were ordinances and not criminal statutes, *Carroll* explains that the distinction does not matter.   *Id.*   Therefore, this Court should follow *Carroll* and find chalking tires is reasonable because the City had a probable cause to believe a violation of a parking ordinance occurred.

## II.  PLAINTIFF CANNOT RECOVER FOR THE CLAIMED DAMAGES UNDER 42 U.S.C. § 1983

### a.  Plaintiff cannot show that her claimed damages (monetary fines) were *caused by* the alleged constitutional violation.

Even where there is a constitutional violation, Plaintiff must prove causation, both cause – in – fact and proximate, to recover damages under a § 1983 claim. *Halpern 2012, LLC v City of Center Line*, 303 F.Supp.3d 1109 (E.D. Mich. 2019); *MS Rentals, LLC v City of Detroit*, 362 F.Supp. 3d (E.D. Mich. 2019).

In *Halpern 2012, LLC v City of Center Line*, the Court granted summary judgment to Defendants on the issue of damages because Plaintiff failed to establish a causal link between the alleged damages and the Fourth Amendment violation. 303 F. Supp. 3d at 1122.  Plaintiff filed a putative class action challenging the constitutionality of the municipality's rental property ordinance, which required rental property owners to submit their properties for inspection. *Id.* at 1112.  The municipality charged a fee for occupancy certificates and inspections of these rental properties and imposed fines when the inspections were refused. *Id*. at 1113.  The plaintiff in *Halpern* failed to schedule an inspection and was subject to fines. *Id.* The Court held that the ordinance was in violation of the Fourth Amendment because there was no warrant and it lacked pre-compliance review to fall under the administrative search exception. *Id*. at 1121.

16

As a result of the unconstitutional ordinance, plaintiff complained that it sustained damages in the form of registration and inspection fees paid to the municipality. *Id.* The Court explained, "Plaintiff must show that it and the other property owners would not have paid the registration and inspection fees 'but for' the absence of pre-compliance review." *Id.* at 1122. Further, the Court quoted, "If the result would have occurred without the conduct complained of, such conduct cannot be a cause in fact of that particular result." *Id.* quoting, *Powers v Hamilton Cty. Pub. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). In *Halpern*, the Court explained that the "unavailability of pre-inspection review process or warrant procedure is not the cause in fact of these fees or the 'damages' which Plaintiff claims to have incurred." *Id.* Rather, to lawfully rent property within the jurisdiction, the property owner was required to obtain a certificate of compliance and pay fees for registration and inspection, which the municipality is entitled to do for the health, safety, and welfare of its citizens. *Id.* The Court explained, "plaintiff cannot hide behind the Fourth Amendment to avoid paying registration and inspection fees." *Id.* at 1123.

Similarly, in *MS Rentals, LLC v City of Detroit*, 362 F.Supp. 3d 404 (E.D. Mich. 2019), a property manager filed a putative class action complaint alleging that the City of Detroit's property maintenance code was unconstitutional. 362 F. Supp. 3d at 407-08. The Court agreed that the code was unconstitutional as it lacked a

warrant or pre-compliance review for inspections. *Id.* at 417. However, the Court held that the Plaintiff's claims for damages failed because the lack of pre-compliance review was insufficient to establish a causal link between the damages (registration and inspection fees) and the constitutional violation. *Id.* at 418-19. Specifically, Plaintiff requested damages in the form of all inspection fees and blight fines because the "payments were compelled over the plaintiffs' objections to unlawful searches." *Id.* at 418. Regarding the blight fines, the Court held that the municipality has the authority to regulate land use and occupancy and the plaintiffs did not contest the municipality's power to institute blight violations where a landlord rents property without a certificate of compliance. *Id.* The Court further held that "the underlying requirements that rental properties possess certificates of compliance and failure to do so may result in a blight violation are lawful and their validity in no way depends upon what preinspection process was afforded to owners." *Id.* at 418-419.

In this case, Plaintiff has alleged that the Fourth Amendment was violated because there was no warrant to "search" Plaintiff's vehicle and the administrative search exception does not apply because there was a lack of pre-compliance review. (Response, RE 68, PageID 1140-1141). As a result of the alleged Fourth Amendment violation (tire chalking), Plaintiff contends that she suffered monetary damages (i.e. fines). (Amended Complaint, RE 9, PageID 75). Like *Halpern* and *MS Rentals*, Plaintiff cannot establish causation.

MCL 257.674 related to prohibited parking provides that:

(1)   A vehicle shall not be parked, except if necessary to avoid conflict with other traffic or in compliance with the law or the directions of a police officer or traffic-control device, in any of the following places:

*** 

(w) In violation of an official sign restricting the period of time for or manner of parking.

*** 

(4) A person who violates this section is responsible for a civil infraction.

Furthermore, the Saginaw Code of Ordinances, Title VII: Traffic Regulations,

Chapter 70: General Provisions, Section 70.99 Impoundment of Vehicles:

(A) Any provision of this title which describes an act or omission constituting a civil infraction under the terms of the Michigan Vehicle Code, Public Act 300 of 1949, being M.C.L. §§ 257.1 et seq., as amended, shall be processed as a civil infraction and any person found to have committed a civil infraction may be ordered to pay a civil fine in accordance with the Michigan Vehicle Code, Public Act 300 of 1949, being M.C.L. § 257.907. Any civil fine ordered to be paid shall be collected in any manner authorized by law.

(B) A violation of any other section of this title constituting a criminal misdemeanor shall be punishable by a fine of not more than $100, imprisonment for not more than 90 days, or by both such fine and imprisonment, unless such section contains a specific penalty therein, in which case said penalty shall apply.

City of Saginaw Ordinance § 70.99. Furthermore, City ordinance provides:

(A) The city hereby establishes a Parking Violations Bureau (Bureau) pursuant to the Revised Judicature Act, Public Act 236 of 1961, being M.C.L. § 600.8395.

19

(B) The purpose of the Bureau shall be to accept admissions in parking violation cases and to collect and retain civil fines and costs as prescribed by city ordinance.

(C) A ***PARKING VIOLATION NOTICE*** or ***CITATION*** means a notice directing a person to pay the fines and costs herein prescribed for the parking or standing of a motor vehicle in violation of city ordinance. The parking violation notice shall indicate the nature of the violation, the section of the ordinance violated, the contact information for the Bureau (or its authorized agent), and the amount of fine and/or penalty levied for the offense.

(D) A parking violation notice or citation may be issued by a police officer, including a limited duty officer, or other personnel duly authorized by the City Manager.

City of Saginaw Ordinance § 72.50.

Plaintiff does not dispute the authority to enforce parking. (Response, RE 68 PageID # 1137-38).  She also does not dispute that she was in violation of the two-hour time parking limitation, paid the fines, and did not avail herself of the appeal process. (Response, RE 68-8, PageID #1225, 1227).  Therefore, she has admittedly violated the ordinance of which she is subjected to fines for doing so.  (Response, RE 68-8, PageID #1225).  Furthermore, Plaintiff failed to comply with the City of Saginaw Charter requiring all persons to present any claims for damages in writing within 60 days after said damages were incurred.  (Saginaw City Charter, Chapter XIV, Section 97—Exhibit 3).  Plaintiff did not present any such claim to the City.

Notably, the result, i.e. fines for parking violations, would have been incurred by Plaintiff without chalk.  We know this because the parking enforcer, Ms. Hoskins, testified that she did not need the chalk to perform her job. (Motion, RE 64-3,

PageID # 1073, 1084-1085).   She was able to rely on notes identifying the license

number and the time that she was there and would confirm same upon return.

(Motion, RE 64-3, PageID # 1073, 1084-1085).   She admits that she uses her paper

"all the time" and the chalk is discretionary.   (Motion, RE 64-3, PageID # 1084-

1085). Indeed, the chalk, as determined by the Court of Appeals, was not necessary

to enforce parking.   (Opinion, RE 35-2, page 6).   Therefore, the chalk could not have

been the "cause in fact" of Plaintiff's alleged damages because without the chalk,

Plaintiff still would have otherwise been caught in violation and incurred the fines

much like the blight fines in *MS Rentals, LLC.*   Indeed, "[t]he plaintiff cannot hide

behind the Fourth Amendment to avoid paying" her fines that were lawfully

imposed. *Halpern,* supra, 303 F. Supp. 3d at 1123.

In *Ruth v Ford*, the Sixth Circuit relied on opinions of the Second and Third

Circuits *Hector v Watt*, 235 F.3d 154, 157 (3rd Cir. 2001) and *Townes v City of New

York*, 176 F.3d 138 (2d Cir. 1999).   (No. 09-11278, 2010 WL 3245411, at *6 (E.D.

Mich. Aug. 17, 2010).[6]   In *Townes,* the Second Circuit explained, "Victims of

unreasonable searches or seizures may recover damages directly related to the

invasion of their privacy – including (where appropriate) damages for physical

injury, property damage, injury to reputation, etc.; but such victims cannot be

---

[6] *Hector v Watt*, 235 F.3d 154, 157 (3rd Cir. 2001) and *Townes v City of New York*,
176 F.3d 138 (2d Cir. 1999) are attached for reference as exhibits 1 and 2,
respectively.

compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Townes*, supra, 176 F.3d at 148.  Given the foregoing, the Sixth Circuit in *Ruth* held that Plaintiff was not entitled to the damages he sought for false arrest / imprisonment (legal fees, loss of employment opportunities and emotional distress) because these damages were not connected to the unlawful search and seizure and were instead connected to his time in jail, conviction, and probationary sentence. *Ruth* at pg. *6. Similarly, in this case, Plaintiff is not seeking damages for the alleged invasion of her privacy (unlawful search) and instead seeks damages connected to her violation of City Ordinance (i.e. related civil infraction fines), which she does not dispute she violated.  As stated in *Townes*, the "evil" is the invasion of privacy and not the uncovering of a crime, or in this case, an ordinance violation.  *Townes*, supra, 176 F.3d 138.  Indeed, not a single "damage" she alleges in her First Amended Complaint relate to an invasion of privacy, not even property damage.

> **b. In the alternative, Plaintiff is not entitled to the Compensatory or Punitive damages that she seeks as the damages do not compensate an actual injury and there is no evil motive, intent or reckless or callous indifference.**

Plaintiff's First Amended Complaint sets forth a claim for compensatory and punitive Damages. (Amended Complaint, RE 9, PageID 74-75). The Supreme Court has explained, "when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived

from the common law of torts." *Memphis Community School Dist. v Stachura*, 477

U.S. 299, 306 (1986). "'[T]he basic purpose' of § 1983 damages is 'to *compensate*

*persons for injuries* that are caused by the deprivation of constitutional rights.'" *Id.*

at 307, quoting *Carey v Piphus*, 435 U.S. 247, 254 (1978). Compensatory damages

cannot be "awarded for violation of [a] right absent proof of actual injury." *Id.* at

308. Specifically, "the abstract value of a constitutional right may not form the basis

for § 1983 damages." *Id.* In *Heck v Humphrey*, the Supreme Court stated: "In order

to recover compensatory damages, … the § 1983 plaintiff must prove not only that

the search was unlawful, but that it caused him actual, compensable injury, which,

we hold today, does *not* encompass the 'injury' of being convicted and imprisoned

(until his conviction has been overturned)." 512 U.S. 477, n. 7 (1994).

In this case, Plaintiff has not suffered, nor is she claiming an "actual injury"

for which she is entitled to compensatory damages. Instead, like a

conviction/imprisonment, Plaintiff is seeking compensatory damages for the civil

infraction, namely a fine. (RE 9, PageID 74-75). Like a criminal conviction,

Plaintiff cannot recover compensatory damages for this so-called "injury."

Furthermore, like § 1983 claims involving criminal convictions she has not sought

the right to appeal the civil infraction violations to have it overturned. There was a

process of which she was afforded and admittedly failed to avail herself of.

(Response, RE 68-8, PageID #1227)

It is also true that "punitive damages are available" in a § 1983 action,"
however, punitive damages must only be awarded in the "proper" case.  *Smith v
Wade*, 461 U.S. 30, 35 (1983).  In *Smith v Wade*, the Supreme Court set forth the
standard in awarding punitive damages in a § 1983 action.  *Id*. at 56.  "We hold that
a jury may be permitted to assess punitive damages in an action under § 1983 when
the defendant's conduct is shown to be motivated by evil motive or intent, or when
it involves reckless or callous indifference to the federally protected rights of
others."  *Id*.

In this case there was no evil motive, intent or reckless or callous indifference
for federally protected rights.   Indeed, qualified immunity was granted to
Ms. Hoskins for the very reason that ("every reasonable parking officer would not
understand from *Jones* that suspicionless chalking of car tires violates the Fourth
Amendment.").  (Opinion and Judgment, RE 86).  Nobody disputes that the facts of
this case have been a matter of first impression under Fourth Amendment
jurisprudence.  Therefore, one cannot say that defendants had an evil motive, intent,
or reckless or callous indifference for federally protected rights in a case such as this
where it was not clearly established that chalking a tire violates the Fourth
Amendment.

### III.   PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF.

As this Court is aware, the jurisdiction of the federal court is limited by the

Constitution to "an actual case or controversy." U.S. Const. art. III, § 2. The U.S.

Supreme Court has explained, "[a]llegations of possible future injury do not satisfy

the requirements of Art. III.  A threatened injury must be certainly impending to

constitute an injury in fact." *Whitmore v Arkansas*, 495 U.S. 149, 158 (1990). "Past

exposure to illegal conduct does not in itself show a present case or controversy

regarding injunctive relief … if unaccompanied by any continuing, present adverse

effects." *City of Los Angeles v Lyons*, 461 U.S. 95, 102 (1983). It is necessary that

Plaintiff prove a likelihood of future injury. *Id.* at 105. Where there is no threat of

repeated injury, or imminent threat, injunctive relief should be denied.  *Id.* at

105,111.

Furthermore, the party requesting the injunction "must satisfy the court that

relief is needed.  The necessary determination is that there exists some cognizable

danger of recurrent violation, something more than the mere possibility which serves

to keep the case alive."  *Id.*  A request for injunctive relief is moot where the

defendant can demonstrate that "'there is no reasonable expectation that the wrong

will be repeated.'" *U.S. v W.T. Grant Co.*, 345 U.S. 629, 633 (1953), quoting *United

States v Aluminum Co. of America,* 148 F.2d 416 (2d Cir. 1945).   Where a

municipality has taken steps to change an unconstitutional action to constitutional,

no injunction is warranted. *M.S. Rentals, LLC v City of Detroit*, 362 F.Supp. 3d 404,

417 (2019) ("Because the ordinance has been amended to include opportunities for

landlords to obtain precompliance reviews before yielding the inspection, there is no

need to grant injunctive relief.")

Here, Plaintiff's Complaint sets forth a claim for injunctive relief.  However,

Plaintiff lacks standing to do so.  Namely, there is no evidence of a likelihood of

future injury or imminent threat of injury.  Furthermore, there is no cognizable

danger of a recurrent violation.  Indeed, Tabitha Hoskins testified that she was

directed to stop chalking tires by her boss as a result of this lawsuit and City has

since implemented new methods.  (Motion, RE 64-3, PageID#  1074-75).  There is

no evidence that the City has re-commenced with chalking since 2017 (Motion, RE

64-3, PageID# 1074-75).  As such, an injunction is not warranted as there is no

cognizable danger that tires are being chalked and will be chalked going forward.

Furthermore, the request for injunction is moot as the City's officers have amended

their methods for enforcing parking violations that do not include the use of chalk.[7]

## IV.  THE CITY OF SAGINAW IS NOT LIABLE UNDER § 1983.

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658,

690 (1978), the Supreme Court held that a local governing body can be sued under

---

[7] Should Plaintiff's suit continue, Defendant Hoskins should be dismissed entirely
as there is clearly no right to injunctive relief, which remains Plaintiff's only basis
to keep her in this suit as she has already been granted qualified immunity. (Opinion
and Judgment, RE 86).

§ 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision *officially* adopted and promulgated by that body's officers." Thereafter, in *Meyers*, the Sixth Circuit set forth the principles to be used to determine under *Monell* whether a municipality is liable pursuant to § 1983. 14 F.3d at 1120. To be liable, the injury "must always and only be a product of the city's own acts; thus, an unconstitutional policy of the city must be identified as having been the moving force of the plaintiff's constitutional deprivation." *Id.* The Court explained a plaintiff can prove such a policy exists under three means:

> (1) an officially promulgated *policy* as that term is commonly understood, *i.e.* a general statement adopted by the city's lawmakers with an intention of governing future conduct; (2) a pervasive *custom or practice*, of which the city lawmakers know or should know; and (3) a *single act* taken by a city employee who, as a matter of state law, has final policymaking authority with respect to the area in which the action was taken.

*Id.* (internal citations omitted).

First, there does not exist an "official policy" adopted by City lawmakers regarding chalking tires. Further, this was not a single act by a City employee with final policymaking authority in parking enforcement. Thus, Plaintiff must prove that it was a pervasive custom or practice.

In *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985), the Supreme Court considered the meaning of a pervasive *custom or practice* within the meaning of *Monell*. The Court held that, "proof of a single incident of unconstitutional

27

activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, **which policy can be attributed to a municipal policymaker.**" *Id.* at 821. (emphasis added).   The Court explained, "some limitation must be placed on establishing municipal liability through policies that are not themselves, unconstitutional, or the test set out in *Monell* will become a dead letter." *Id.* at 823. It is necessary that the policy is attributed to a municipal policymaker.  *Id.* at 821. Thus, to establish proof of such a policy under *Monell*, there must be a statement of the policy by the municipal corporation and its exercise thereof.  *Id.* at 822.

In this case, Plaintiff attempts to hold the City liable for "an official custom and practice," *i.e.* chalking tires.  Specifically, the alleged "policy" at issue is not the result of an "official" act and the exercise of chalking tires cannot be traced back to any municipal policymaker.  In addition, there is no statement of said policy.  Rather, the City provided Ms. Hoskins and its parking officials with chalk as a tool that could be used to perform their job.  Ms. Hoskins even testified that she did not have to chalk tires to enforce tickets.  There are identifiable time-limited parking tickets issued without chalk.  Moreover, Ms. Hoskins's job was not impacted in any respect if she did not chalk tires.  She was not disciplined for not chalking tires and she was never told that she was *required* to chalk tires.  Rather, her job is to enforce the parking ordinances.  How she chooses to do so is at her own discretion.  It was not

the result of any official custom, official practice, or traced back to any particular municipal policymaker.

## CONCLUSION

WHEREFORE, Defendants, CITY OF SAGINAW and TABITHA HOSKINS, respectfully request that this Honorable Court GRANT their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and enter an Order dismissing Plaintiff's Complaint with prejudice and in its entirety.

Respectfully Submitted,

Dated: March 3, 2022
/s/KAILEN C. PIPER
Attorney for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan 48638

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send confirmation of such filing to the following:

Philip L. Ellison:  pellison@olcplc.com
Matthew E. Gronda:  matthewgronda@gmail.com
Gregory Mair: gregmair@owdpc.com, dana@owdpc.com, jmconnolly@owdpc.com
Kailen C. Piper:  kpiper@owdpc.com

Respectfully submitted,

Date:  March 3, 2022
/s/KAILEN C. PIPER (P 82865)
Attorney for Defendants
300 St. Andrews Road, Suite 302
Saginaw, MI  48638