## US DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

ALISON PATRICIA TAYLOR
and all those similarly situated as
defined by two certified classes,
    Plaintiffs,

Case No.: 17-cv-11067
Honorable Thomas L. Ludington

**MOTION**

v.

CITY OF SAGINAW, et al,
    Defendants

_____ /

| | |
|---|---|
| OUTSIDE LEGAL COUNSEL PLC | O'NEILL, WALLACE & DOYLE, PC |
| PHILIP L. ELLISON (P74117) | GREGORY W. MAIR (P67465) |
| Counsel for the Classes | KAILEN C. PIPER (P82865) |
| PO Box 107 | Attorneys for Defendants |
| Hemlock, MI 48626 | 300 St. Andrews Rd, Suite 302 |
| (989) 642-0055 | Saginaw, MI 48638 |
| pellison@olcplc.com | (989) 790-0960 |
| | gregmair@owdpc.com |
| MATTHEW E. GRONDA (P73693) | kpiper@owdpc.com |
| Counsel for the Classes | |
| PO Box 70 | |
| St. Charles, MI 48655 | |
| (989) 249-0350 | |
| matt@matthewgronda.com | |

## PLAINTIFF CLASSES' MOTION FOR SUMMARY JUDGMENT

NOW COME the certified Classes, by counsel, and move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the single Fourth Amendment claim for the reasons outlined in the attached brief. Concurrence was declined. LR 7.1(a).

## QUESTION(S) PRESENTED

Should this Court grant summary judgment
in favor of the Classes?

**Answer:**
Yes

# MOST RELEVANT AUTHORITY

FRCP 56

*Taylor v. City of Saginaw*,
922 F.3d 328 (6th Cir. 2019)
("*Taylor I*")

*Taylor v. City of Saginaw*,
11 F.4th 483 (6th Cir. 2021)
("*Taylor II*")

**BRIEF IN SUPPORT**

This long-fought class action is challenging a particular practice in municipal parking enforcement: warrantless suspicionless tire-chalking. On behalf of two certified classes of similarly situated motorists, it is asserted that, without consent or a valid search warrant, the City of Saginaw and its parking enforcement official(s) place "chalk" marks on tires of private vehicles while parked along public roadway to conduct a suspicionless search—



City parking enforcement officials then return after a particular amount of time to find if those previously-chalked vehicles remained in place over the

1

applicable time limit. For those chalked vehicles located in the same spot, a parking ticket with an applicable fund-generating fine issued using the chalk mark. It is either $15 or $30. See **ECF No. 1-2, PageID.53**. Chalking occurred to tens of thousands of vehicles over the past years. Approximately 4,800 issued tickets were paid as a result of the tire-chalking process. **ECF No. 91-2.**

Because this case has previously gone twice[1] to the Sixth Circuit, there is very little left to debate in this motion. The Supreme Court has explained—

> The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the Constitution and laws of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory. This second element requires that the plaintiff show that defendant acted under color of law.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). The city and its officials undisputedly act under the color of law. *Ritchie v. Wickstrom*, 938 F.2d 689, 692 (6th Cir. 1991) ("it follows *ipso facto* that one acting in an official capacity for a governmental unit is acting under color of law"). Thus,

---

[1] *Taylor v. City of Saginaw*, 922 F.3d 328 (6th Cir. 2019) ("*Taylor I*"); *Taylor v. City of Saginaw*, 11 F.4th 483 (6th Cir. 2021) ("*Taylor II*"). The "law of the case" doctrine "mandates that the district court adhere to rulings of the appellate court issued earlier in the case." *U.S. v. Charles*, 843 F.3d 1142, 1145 (6th Cir. 2016).

the only question is whether Defendants' conduct deprives class members of a constitutional right.

## STANDARD OF REVIEW

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). In the shown absence of a genuine issue of material fact, the burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The party opposing summary judgment cannot rest on its pleading or allegations, to prevail, they must present material evidence in support of their allegations." *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007). The Court determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-252.

## ARGUMENT

The Fourth Amendment mandates that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…" Searches by public actors are within the purview of the Fourth Amendment. After *U.S. v. Jones*, 565

3

U.S. 400 (2012), trespassory-based search challenges have a two-step process—"first, whether the alleged government conduct constitutes a search within the meaning of the Fourth Amendment; and second, whether the search was reasonable." *Taylor I,* 922 F.3d at 334.

Defendants undisputedly chalked the vehicle tires of thousands of motorists to determine how long a vehicle remained in a particular spot. For each respective vehicle, it is a two-pass process. The first "pass" has parking enforcement official driving by parked private vehicles and, using a stick/wand loaded with greasy chalk, mark the driver's side rear tires of private vehicles parked on public streets in Saginaw. **Taylor Dec., ECF No. 104-1, PageID.2229, ¶8.** After the passage of a specific amount of time, the parking enforcement official(s) would, via a second pass, come back through the same area looking for private vehicles containing the chalk-marks that the parking enforcement official(s) had previously made. *Id.* **at PageID.2230, ¶9.** When a marked tire was located, a parking ticket issues. The City of Saginaw collects substantial funds using this process.

This tire-chalking process is individually documented with photographs associated with each ticket, for which many thousands have been produced by discovery—far too many to attach in this record. The exhibits at **ECF No.**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

4

**68-9, PageID.1240-1254**[2] provide a FRE 1006[3] sampling of the last five previous over-the-time tickets issued prior to the Sixth Circuit's *Taylor I* decision.

| Ticket Date | Ticket No. | Plate No. | Violation # | Chalk Used? |
|---|---|---|---|---|
| 04/18/2019 | 5030007387 | DJK8355 | 17 | Yes, see Exhibit H1 |
| 04/17/2019 | 5030007376 | EAZ1670 | 17 | Yes, see Exhibit H2 |
| 04/17/2019 | 5030007367 | 1LMN16 | 17 | Yes, see Exhibit H3 |
| 04/03/2019 | 5030007264 | BRW624 | 18 | Yes, see Exhibit H4 |
| 04/03/2019 | 5030007260 | 9LWP10 | 18 | Yes, see Exhibit H5 |

This sampling confirms it was the normal, regular practice that over-the-time tickets issued were the result of the use of tire chalking. The first step is resolved in the Classes' favor—this tire-chalking process is a *Jones* search under the Fourth Amendment. **Order, RE 77, PageID# 1405** (citing *Taylor I*, 922 F.3d at 332).

The second question is whether the search was reasonable. Securing a warrant is the rule of reasonableness. *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2188 (2016). The Fourth Amendment's warrant requirement, in the absence of an exception, is "not an empty formality." *Gardner v. Evans*, 920 F.3d 1038, 1056 (6th Cir. 2019). Undisputedly, no warrants were sought or obtained prior to chalking tires. **Order, ECF No. 77, PageID.1405; Hoskins**

---

[2] A copy is reattached containing the same Exhibit H_ designation.
[3] "The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."

5

**Dep., RE 64-3, PageID.1100-1101**; see also **Taylor Decl., RE 68-5, PageID# 1217, ¶21.** In the absence of a warrant or consent, such warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Taylor I*, 922 F.3d at 334 (citing *U.S. v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013)). The burden of demonstrating an applicable exception to the warrant requirement lies with Defendants. *Id.* (citing *U.S. v. Jeffers*, 342 U.S. 48, 51 (1951)). Following *Taylor I* and *II*, no exception applies. As such, the Class is entitled to summary judgment.

### *Monell*

For the City to be responsible, the Classes also have the added responsibility to meet *Monell*. Municipalities can be liable for constitutional violations pursuant to Section 1983. Through *Monell*, the Supreme Court rejected the idea that a rogue employee's unconstitutional actions make a municipality automatically liable on a *respondeat superior* theory. Instead, where the municipality was a "moving force," liability can attributable to such a government defendant. There are four methods to show this. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). One such method is where "the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." *Powers v. Hamilton Cty.*

6

*Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007). Here, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker still subjects a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. *Bd. of Cnty. Commm'rs of Bryan Cnty., Okl., v. Brown*, 520 U.S. 397, 404 (1997). A Section 1983 "custom" is a "persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753 (5th Cir. 2009); *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998). "For purposes of § 1983, a 'custom' is a "legal institution" that is "permanent and established" though not specifically authorized by the "written law." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993); see also *Doe v. Claiborne Cty.*, 103 F.3d 495, 507 (6th Cir. 1996).

There is no doubt that governmental liability under *Monell* exists here. Nearly 5,000 subclass members alone were ticketed after being chalked. Defendants have produced tens of thousands of photographs of chalked vehicles taken by the park enforcement officers. See *supra*, at 1. And what has to easily be tens of thousands of others were unconstitutionally searched

by tire-chalking but never issued a ticket. The custom was clearly widespread and established.

Furthermore, the City of Saginaw expressly supported the custom. Defendant Hoskins explained that she was trained by City employees to use chalking to enforce parking in Saginaw. **Hoskins Dep., ECF No. 64-3, PageID.1057, 1063.** The City purchased, owns, and supplies the chalk. ***Id.* at PageID.1064-1065.** The wand device,[4] which delivers the chalk to the tire, was purchased and supplied by the City. ***Id.* at PageID. 1063.** The City refills the chalk supply when Defendant Hoskins runs out. ***Id.* at PageID.1064.** City management directs her chalking activities. ***Id.* at PageID.1095.** The "handheld" device[5] which issues and records the ticket as well as takes the photographs of the tire chalking was purchased and supplied by the City. ***Id.* at PageID.1075.** The software which operates the ticketing system premised on the use of chalk was purchased and is supplied by the City. ***Id.* at PageID.1070.**

Unquestionably, the City is a moving force behind the existence and continuation of the tire-chalking process within Saginaw. There clearly is a City custom to use chalk as a parking enforcement tool—it supplied the

---

[4] The chalk wand can be seen at **ECF No. 68-6, PageID.1219.**
[5] The ticket 'handheld' device can be seen at **ECF No. 68-7, PageID.1220.**

training to use it, the equipment to undertake chalking, and the actual chalk to cause the trespassory marks on the Class members' tires. The *Monell* standard is easily fulfilled via a city custom.

## REMEDY

When a constitutional violation occurs, three forms of relief are available via Section 1983—damages, injunctive relief, and declaratory relief. Except for qualified immunity protecting Defendant Hoskins from a damages judgment,[6] the Court can award all forms relief for this case. However, as this Court knows, the two certified classes seek different forms of relief. The primary class seeks declaratory and injunctive relief; the subclass seeks an award of damages. **Class Cert. Order, ECF No. 105, PageID.2235.** Such relief is appropriate.

### Declaratory Relief

"In a case of actual controversy within its jurisdiction," this Court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.§ 2201. Such relief is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal

---

[6] While the Sixth Circuit did *sua sponte* grant Tabitha Hoskins qualified immunity, "'qualified immunity only immunizes [] from monetary damages'— not injunctive or declaratory relief." *Kanuszewski*, 927 F.3d at 417-418. So, Defendant Hoskins remains in the case along with the government she serves.

9

relations in issue" and "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Such relief is warranted "whether or not further relief is or could be sought." 28 U.S.C.§ 2201. Factors to consider include 1) whether the judgment would settle the controversy; 2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; 3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or to provide an arena for res judicata; 4) whether the use of the declaratory action would constitute a federal encroachment on state jurisdiction; and 5) whether there is an alternate remedy that is better or more effective. *Grand Trunk*, 746 F.2d at 326.

This Court should enter a declaratory judgment as to the primary class against both Defendants. The *Grand Trunk* factors weigh in favor of such relief in these non-monetary remedy circumstances for the primary class. Formally declaring tire-chalking as a Fourth Amendment violation would settle the controversy between these parties by defining the legal relations between the parties. This sought relief is not used for procedural fencing or to raise for res judicata against another case. A declaration would not improperly encroach on state authority or jurisdiction as this Court has the

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

10

duty and responsibility to remedy violations of the federal Constitution.[7] Declaratory relief should issue.

## Permanent Injunctive Relief

This Court can issue injunctive relief for civil rights violations. The primary class members are entitled to a permanent injunction when establishing that they suffered a constitutional violation and will suffer continuing irreparable injury for which there is no adequate remedy at law. *Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006) (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998)). The three prongs of *Women's Medical* are easily met here.

First, there has been clear violations of the Fourth Amendment as outlined herein. Second, there is continuing irreparable injury because irreparable harm is presumed as a matter of law when a moving party shows that a constitutional right is being threatened or impaired. *Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438, 445 (6th Cir. 2003). The City has not formally changed its policies or formally self-prohibited the practice. Nothing has officially changed since this case has commenced.[8]

---

[7] Defendants continue to defend the use and ability to use the practice even today.
[8] Defendants might suggest they are no longer tire-chalking because of this lawsuit. However, it is well settled that any voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. *Ammex, Inc. v. Cox*, 351 F.3d 697, 704 (6th Cir. 2003). Instead, there is a "heavy burden" of persuading the court that the "challenged conduct cannot reasonably be expected to

11

Third and finally, there is no adequate remedy at law (i.e. money damages or declaratory relief) for non-ticketed chalking. An injury is not fully compensable by money damages if the nature of the plaintiff's loss—like violations of constitutional rights—would make the damages difficult to calculate. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

Because all three elements are met, the primary class is also entitled to this remedy.

**Damages**

Lastly, the members of the certified Rule 23(b)(3) subclass seek the respective awards of damages equal to the amount of dollars exacted by tickets (and any related late fee). Defendant City of Saginaw's use of tire chalking is the 'but for' cause of the fines imposed and then exacted monies from members of the subclass. See *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 608-610 (6th Cir. 2007). Each subclass member has a known calculable amount of damages—$15 per ticket of $30 if a late fee was imposed—which would not have been imposed but for the

---

start up again." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008). These are required because litigation promises are like pie crusts—easily made, easily broken. See *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (stringent standard required to prevent a party, freed of a lawsuit, to be "free to return to his old ways").

12

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

unconstitutional chalking process. A spreadsheet of all known ticketees and the amounts collected is in the court record. **ECF No. 91-2.**

## CONCLUSION

There is no material questions of fact remaining and the two certified classes are entitled to summary judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## RELIEF REQUESTED

At the close of the opt-out period[9], the Court is requested to grant summary judgment in favor of the two classes and respectively—

1. issue a declaratory judgment and impose a permanent injunction against both Defendants prohibiting the use of warrantless suspicionless tire chalking in the City of Saginaw in favor of the members of primary class; and

2. award actual damages in favor of each subclass member in an amount equal to amount paid for the issued tickets (together with any late fees).

The request for an award of attorney fees and costs is reserved to be sought,

---

[9] The Court is reminded and requested not to rule upon plaintiff-side's motion for summary judgment under *after* class notification is complete, else the case runs head-long into potential problems under the one-way intervention rule. See **ECF No. 63** (collecting cases).

post-judgment, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and Rules 54.1.1 and 54.1.2 of the Local Rules of the US District Court for the Eastern District of Michigan.

Date: March 4, 2022

RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
by PHILIP L. ELLISON (P74117)
Counsel for the Classes
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

/s/ Matthew E. Gronda
MATTHEW E. GRONDA (P73693)
Counsel for the Classes
PO Box 70
St. Charles, MI 48655
(989) 249-0350
matt@matthewgronda.com

14

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of and a copy of such filing to counsel of record at their email address(es) of record.

Date: March 4, 2022

RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
by PHILIP L. ELLISON (P74117)
Counsel for Classes
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com