UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALISON PATRICIA TAYLOR,
on behalf of herself and all others
similarly situated,

                Plaintiff,

v.

CITY OF SAGINAW
and TABITHA HOSKINS,

                Defendants.

_____/

Case No. 1:17-cv-11067

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

When "[t]he Government physically occupie[s] private property for the purpose of obtaining information," it conducts "a search within the meaning of the Fourth Amendment." *See United States v. Jones*, 565 U.S. 400, 400 (2012). In 2012, the Supreme Court applied this principle to the placement of a tracking device on a vehicle's undercarriage. *Id.* at 403–04. Seven years later, the Sixth Circuit extended the principle to instances in which cities apply chalk to vehicles' tires to track violations of parking ordinances. *See Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019). In both cases, the harmlessness of the intrusion was irrelevant. As Justice Scalia wrote, when a man "set[s] his foot upon his neighbor's close without his leave," he trespasses, even "[if] he does *no damage at all*." *See Jones*, 565 U.S. at 405 (quoting *Entick v. Carrington*, 95 Eng. Rep. 807, 817 (C.P. 1765) (emphasis added)).

Defendants now advance an unexpected twist on *Jones*, arguing that chalking tires requires no search warrant because "it does no damage at all." *Id.* Their argument hinges on the so-called

*de minimis* exception to the warrant requirement. That argument—and Defendants' alternative arguments—find no support in the law.

As a result, Defendants' practice of suspicion-less chalking will be declared unconstitutional, and they will be ordered to pay nominal damages for each instance of chalking. Plaintiff's additional requests for a permanent injunction and refunds of parking tickets, however, will be denied. As explained below, Plaintiff has not shown a continuing harm that would justify injunctive relief, or that parking-ticket damages are recoverable under 42 U.S.C. § 1983.

## I.

Like many motorists, Plaintiff Alison Taylor sometimes parks on the street. And, like many municipalities, the City of Saginaw restricts how long motorists may park there. Before 2019, Saginaw officials routinely marked vehicle tires with chalk to record how long the vehicles had been parked. *See* ECF No. 64-3 at PageID.1072–75. If a vehicle parked for too long, then its owner would receive a parking ticket ranging from $15.00 to $30.00. ECF No. 68-4 at PageID.1212.

From 2014 to 2017, Saginaw parking officer Tabitha Hoskins chalked Plaintiff's vehicle 14 times and issued 14 parking tickets. ECF Nos. 9 at PageID.71; 68-5 at PageID.1216. In Plaintiff's view, each instance was a warrantless search under the Fourth Amendment and, therefore, presumptively unreasonable. In April 2017, Plaintiff brought this action under 42 U.S.C. § 1983 on behalf of herself and a class of similarly situated motorists, seeking a declaratory judgment, a permanent injunction, and a refund of her parking tickets. ECF No. 1 at PageID.3–4.

Since being filed, this case has been dismissed twice, appealed twice, and remanded twice: first at the pleading stage and then at the summary-judgment stage. *See Taylor v. City of Saginaw*, No. 17-CV-11067, 2017 WL 4098862, at *7 (E.D. Mich. Sept. 15, 2017), *rev'd and remanded*, 922 F.3d 328 (6th Cir. 2019) [hereinafter *Taylor I*]; *Taylor v. City of Saginaw*, No. 17-CV-11067,

2020 WL 3064448, at *9 (E.D. Mich. June 9, 2020), *aff'd in part, rev'd in part and remanded*, 11 F.4th 483 (6th Cir. 2021) [hereinafter *Taylor II*].

During that time, the Sixth Circuit has held (1) that tire-chalking constitutes a search that is presumptively unreasonable without a warrant, and (2) that neither the community-caretaker, automobile, nor administrative exceptions to the warrant requirement apply.[1] *See Taylor I*, 922 F.3d at 333–35 (holding that tire-chalking is a search not excused by the community-caretaker doctrine or automobile exception); *Taylor II*, 11 F.4d at 489 ( the administrative-search exception).

Recently, this Court granted class certification and certified both (1) a primary, nondamages class comprised of all the people whose vehicles were chalked by Defendants and (2) a damages subclass comprised of all class members who received a parking ticket. *See Taylor v. City of Saginaw*, No. 1:17-CV-11067, 2022 WL 202999, at *8 (E.D. Mich. Jan. 21, 2022).

Accordingly, with the class certified, three issues remain: (1) whether any other exception to the warrant requirement applies, (2) whether the City had a custom or policy of chalking for purposes of *Monell*, and (3) the appropriate remedy if chalking is unconstitutional. The parties have filed another round of dispositive motions to resolve these issues. *See* ECF Nos. 114; 115.

Having reviewed the parties' briefing, this Court finds that a hearing is unnecessary and will proceed to decide the pending motions on the papers. *See* E.D. Mich. LR 7.1(f)(2).

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] The Sixth Circuit concluded that Defendant Hoskins enjoys qualified immunity because of the novelty of Plaintiff's claims. *See Taylor II*, 11 F.4th at 490 ("[E]very reasonable parking officer would not understand from *Jones* that suspicionless chalking of car tires violates the Fourth Amendment.").

FED. R. CIV. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When the moving party "bears the burden of persuasion at trial, [its] 'initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."'" *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)); *accord Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984) (emphasis omitted)).

In reviewing cross-motions for summary judgment, courts must apply the proper standard of review for each motion and may not "treat the case as if it was submitted for final resolution on a stipulated record." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)); *see also EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) ("[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable

inferences against the party whose motion is under consideration." (quoting *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016))).

### III.

As previously noted, the three remaining issues in this case are (1) whether any exception to the warrant requirement applies, (2) whether the City had a policy or custom of chalking for purposes of *Monell*, and (3) the appropriate remedy if chalking is unconstitutional. Each issue is considered in turn below.

### A.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Naturally, this protection extends to automobiles. *See South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). "To determine whether a Fourth Amendment violation has occurred, [courts must] ask two primary questions: first, whether the alleged government conduct constitutes a search within the meaning of the Fourth Amendment; and second, whether the search was reasonable." *Taylor I*, 922 F.3d at 332. The Sixth Circuit has already answered the first question. *See id.* at 332 ("[C]halking is a search for Fourth Amendment purposes.").

The only remaining question is whether chalking is reasonable under the Fourth Amendment. *Id.* And because the chalking in this case occurred without a warrant and was therefore "presumptively *unreasonable*," *Taylor II*, 11 F.4th at 487 (citing B*righam City v. Stuart*, 547 U.S. 398, 403 (2006) (emphasis added), the question becomes whether one of the remaining "few specifically established and well-delineated exceptions" to the warrant requirement applies, *id.* (quoting *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015)). Defendants bear the burden of proof on this question. *See id.* ("It is the government's burden to establish the applicability of

- 5 -

an exception to the warrant requirement." (citing *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 281 (6th Cir. 2018))).

Defendants raise four exceptions to the warrant requirement: (1) the *de minimis* exception, (2) the consent exception, (3) the automobile exception, and (4) the community-caretaker exception. *See* ECF No. 114 at PageID.2314–23. Each exception is considered in turn below.

## i.

The first exception is the *de minimis* exception. Defendants contend that this Court must determine the constitutionality of chalking tires by balancing the City's interests in enforcing parking ordinances against Plaintiff's interests in the privacy of her vehicle. *See* ECF No. 114 at PageID.2314–17. Defendants reason that, because chalking is a "minimal intrusion," the City's "significant interests . . . . [in] enforcing its parking ordinances" outweigh Plaintiff's interests in keeping chalk off her tires. *Id.* at PageID.2315, 2317.

Some background on the *de minimis* exception is appropriate. The term "*de minimis*" translates to "of the least" and denotes something "trifling," "negligible," or "so insignificant that a court may overlook it in deciding an issue or case." *See De Minimis*, BLACK'S LAW DICTIONARY (11th ed. 2022). The term is a shortening of the Latin phrase "*de minimis non curat lex*," meaning "the law does not take account of trifles." *See Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021). Although courts primarily invoke this principle in copyright, labor, and employment cases, *see, e.g.*, *id.* (Title VII); *In re Amazon.com, Inc.*, 942 F.3d 297, 303 (6th Cir. 2019) (Fair Labor Standards Act); *Mihalek Corp. v. Michigan*, 821 F.2d 327, 328 (6th Cir. 1987) (copyright), they sometimes invoke it for Fourth Amendment purposes, *see, e.g.*, *Andrews v. Hickman Cnty.*, 700 F.3d 845, 855 (6th Cir. 2012) (holding that a sheriff deputy's warrantless entry into a home was not *de minimis*).

With respect to the Fourth Amendment, the seminal *de minimis* case is *United States v. Jacobsen*, 466 U.S. 109 (1984). In *Jacobsen*, federal agents responded to a report from FedEx employees of a package containing "a white powdery substance, originally concealed in eight layers of wrapping." *Jacobsen*, 466 U.S. at 111. The FedEx employees told the agents that they opened the package after discovering that it was damaged. *Id.* at 109. Suspecting the powder to be cocaine, the agents removed a trace amount from the package without a warrant and tested it. *Id.* Their suspicions were confirmed, and the intended recipients of the package were arrested and eventually convicted. *Id.*

On review, the Supreme Court considered the reasonability of two actions: first, the initial seizure of the package, *id.* at 120–21; second, the destruction of the trace amount of powder during testing, *id.* at 124. The second issue was logically distinct from the first because, as the Court explained, an initially lawful seizure might become unlawful if "its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[]." *Id.*

The Court held that both actions were reasonable. With respect to the initial seizure, the Court noted that the FedEx employees had already opened the package by the time the agents arrived, and that it "was apparent that the [package] contained contraband and little else." *Id.* at 121. Therefore, the "package could no longer support any expectation of privacy," and the agents were authorized to seize it, "at least temporarily." *Id.*

With respect to the destruction of the trace amount of powder, the Court relied on a "balanc[ing] [of] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 125 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). The Court concluded that the government's interests outweighed, explaining its conclusion as follows:

> The law enforcement interests justifying the procedure were substantial; the suspicious nature of the material made it virtually certain that the substance tested was in fact contraband. Conversely, because only a trace amount of material was involved, the loss of which appears to have gone unnoticed by respondents, and since the property had already been lawfully detained, the "seizure" could, at most, have only a *de minimis* impact on any protected property interest. *Cf. Cardwell v. Lewis*, 417 U.S. 583, 591–592 (1974) (plurality opinion) (examination of automobile's tires and taking of paint scrapings was a *de minimis* invasion of constitutional interests). Under these circumstances, the safeguards of a warrant would only minimally advance Fourth Amendment interests. This warrantless "seizure" was reasonable.

*Id.* (internal footnote omitted).

Emphasizing *Jacobsen*'s reliance on the seizure's "*de minimis* impact," Defendants argue that the same reasoning should apply here. But merely reciting the facts of *Jacobsen* is sufficient to rebut that argument. As explained, *Jacobsen* concerned whether an initially reasonable seizure had become unreasonable, not whether any search was reasonable—and certainly not whether any *suspicion-less* search was reasonable. *See id.* at 123 (holding that the testing was not a search because it "merely disclose[d] whether or not [the] . . . substance [was] cocaine" and, therefore, "d[id] not compromise any legitimate interest in privacy"). And even if *Jacobsen* could be extended to this case, the agents in *Jacobsen* were "virtually certain that the substance tested was in fact contraband." *Id.* Defendants, by contrast, chalked tires without any individualized suspicion—far from virtual certainty. *See* ECF No. 64-3 at PageID.1072–74. In other words, even if *Jacobsen*'s balancing test were applied here, the scales would tip against Defendants.

The other cases that Defendants cite are similarly inapposite. In *Cardwell v. Lewis*, 417 U.S. 583 (1974), the Supreme Court held that police could scrape the paint from a vehicle without a warrant because they had probable cause to believe that the vehicle had been used in a murder. *See Cardwell*, 417 U.S. at 592. No such probable cause exists here, and the governmental interest

in solving a murder is considerably greater than the governmental interest in enforcing a parking ordinance. *See Jacobsen*, 466 U.S. at 125.

Similarly, in *Illinois v. McArthur*, 531 U.S. 326 (2001), the Supreme Court held that police could temporarily detain a suspect on his porch while awaiting a search warrant because they "had probable cause to believe that [the] home contained evidence of . . . unlawful drugs" that the suspect might have tried to destroy. *See McArthur*, 531 U.S. at 331–32.

In summary, Defendants' argument appears premised on a misunderstanding of the *de minimis* exception. Properly understood, the *de minimis* exception allows government officials to make minor, warrantless intrusions in favor of only "substantial" government interests. *See Jacobsen*, 466 U.S. at 125. The *de minimis* exception does not, however, allow government officials to ignore the bedrock requirement of "individualized suspicion." *See City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000) ("A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." (citing *Chandler v. Miller*, 520 U.S. 305, 308 (1997))); *United States v. Martinez-Fuerte*, 428 U.S. 543, 560 (1976) ("[S]ome quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure." (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968))).

Indeed, the individualized-suspicion requirement has been abrogated in only cases involving "overwhelming" governmental interests or "special needs," neither of which is present here. *See, e.g.*, *Samson v. California*, 547 U.S. 843, 853 (2006) (parolee searches); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) (student-athlete drug testing). Accordingly, Defendants' reliance on the *de minimis* exception is misplaced.

As a final note, Plaintiff's stated position—that there is no *de minimis* exception for trespassory searches—raises an important question about the Supreme Court's decision in *Jones*.

*See* ECF No. 118 at PageID.2426 (citing *State v. Howard*, 496 P.3d 865, 868 (Idaho 2021)). *Jones*'s primary contribution was its holding that common-law trespasses, even harmless ones, may be searches under the Fourth Amendment. *See Jones*, 565 U.S. at 405. Although *Jones* expressly declined to consider any exception to the warrant requirement, *id.* at 413 (noting that the government forfeited the issue), some authorities have questioned whether a trespassory search may still be subject to a privacy-based exception, *see Taylor II*, 11 F.4th at 487 n.2 (addressing and declining to resolve an amicus argument that "'privacy-based exceptions' to the warrant requirement 'are inapplicable to property-based' Fourth Amendment searches after *Jones*").

That question, however, need not be resolved because neither the *de minimis* exception nor any other exception applies to the facts of this case.

### ii.

The next exception is the consent exception. Defendants argue that, by parking on the public streets, Plaintiff and other motorists consented to a search of the exterior of their vehicles as a reasonable measure to enforce the ordinances intended to make parking available to numerous citizens. *See* ECF No. 114 at PageID.2317–19. Defendants emphasize the presence of signs "[t]hroughout the City . . . notifying individuals that they are subject to parking enforcement." *Id.* at PageID.2318.

"Where valid consent is given, a search is permissible under the Fourth Amendment even without a warrant or probable cause." *United States v. Morgan*, 435 F.3d 660, 663 (6th Cir. 2006) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). But "[n]ot [every] type of consent will suffice." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999). For consent to be valid, it must be "unequivocally, specifically, and intelligently given." *Id.* (quoting *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992)). The validity of consent is a fact-specific inquiry. *Harris v. Klare*, 902 F.3d 630, 639 (6th Cir. 2018). And the government bears the burden of

proving consent "by a preponderance of the evidence, through clear and positive testimony," *United States v. Blomquist*, 976 F.3d 755, 758 (6th Cir. 2020) (quoting *United States v. Alexander*, 954 F.3d 910, 918 (6th Cir. 2020)).

Defendants have not carried their burden. They have not produced any evidence of the City's parking signs, where those signs are posted, or even what they say. *See id.* (holding that the government must prove consent through "clear and positive testimony"). Based on Defendants' briefing, it appears that the signs merely warn motorists that "parking enforcement may occur." ECF No. 114 at PageID.2318 (arguing that "[a]n individual who parks in a public parking area is, or should be, aware that parking enforcement may occur"). Yet a motorist's awareness that parking enforcement may occur does not necessarily demonstrate her consent to chalking. At most, it demonstrates that she acquiesced to the City's authority. But mere acquiescence is not the equivalent to consent. *Harris*, 902 F.3d at 639 (noting that the government must show more than "mere acquiescence" to authority); *see Worley*, 193 F.3d at 386 (consent must be "unequivocally, specifically, and intelligently given").

Defendants' reliance on *Florida v. Jimeno*, 500 U.S. 248 (1991), is also misplaced. In *Jimeno*, the Supreme Court held that a motorist's unconditional consent to search his vehicle extended to the search of a closed paper bag in the passenger compartment. *Id.* at 250–51. Defendants cite *Jimeno* for the proposition that chalking does not "exceed the scope of the consent" granted by parking in a public area. *See* ECF No. 114 at PageID.2318–19. But, as explained above, there is no evidence of consent in this case. Therefore, *Jimeno*'s guidance is irrelevant.

Defendants are also mistaken in suggesting that chalking is similar to placing tickets on a vehicle or observing a license plate. *Id.* at PageID.2319. Although this Court is hesitant to decide the constitutionality of conduct not at issue here, particularly given the history of the case, it is

obvious that neither placing a ticket on a vehicle nor observing its license plate are "searches" within the meaning of *Jones*. The government conducts a search under *Jones* only if it "(1) trespasses upon a constitutionally protected area, (2) to obtain information." *Taylor I*, 922 F.3d at 332 (citing *Jones*, 565 U.S. at 404–05). By placing a ticket on a vehicle, the government is not hoping "to obtain information." *Id.* And merely observing a license plate does not constitute a "trespass." *Id.*

Simply put, the consent exception does not apply to this case.

### iii.

The final two exceptions are the community-caretaker and automobile exceptions. "The community-caretaking exception applies most clearly when the action of the police is 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *United States v. Lewis*, 869 F.3d 460, 463 (6th Cir. 2017) (quoting *United States v. Brown*, 447 F. App'x 706, 709 (6th Cir. 2012) (unpublished)). By contrast, the automobile exception applies when police have "probable cause to believe that [a] vehicle contains evidence of a crime." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)).

With respect to this case, the Sixth Circuit has already addressed and rejected both exceptions. *See Taylor I*, 922 F.3d at 333–36. First, the Sixth Circuit explained that the community-caretaker exception applies only "when public safety is at risk." *Id.* at 335 (collecting cases); *see, e.g.*, *Lewis*, 869 F.3d at 463 (applying community-caretaker exception because the officers opened a vehicle door to see whether a sleeping driver could safely drive home). And, according to the Sixth Circuit, Defendants had not "show[n] that the length of time that [Plaintiff's] vehicle was parked created . . . a public safety concern." *Id.* at 335. Nor had they shown that the

City was chalking primarily to "mitigate public hazard" rather than "to raise revenue." *Id.* As for the automobile exception, the Sixth Circuit noted that Defendant Hoskins had "no probable cause" to believe that Plaintiff had violated the parking ordinance when she chalked her tire. *Id.* at 334.

Defendants claim that they may reargue these exceptions because the facts have changed since *Taylor I* was decided. ECF No. 114 at PageID.2321. Defendants have not, however, substantiated that claim with evidence.

Regarding the community-caretaker exception, Defendants rely on a generalized fear of traffic congestion. They claim that "[w]hen an individual overstays the [two]-hour time limitation, the parking lots become congested with traffic, which can lead to people creating their own spaces." *Id.* at PageID.2321. This congestion, Defendants claim, might create a "personal injury hazard." *Id.* (quoting *Uday v. City of Dearborn*, 96 N.W.2d 775, 776 (Mich. 1959) (en banc)). Although this reasoning might be persuasive in the context of a due-process challenge, the issue here is not whether the City may regulate parking; the issue is whether, based on a "public safety concern," the City may chalk tires without a warrant. *See Taylor I*, 922 F.3d at 335; *Taylor II*, 11 F.4th at 489 (noting that this case does not implicate "the City's ability to regulate parking through police powers"). Other than the conclusory affidavit of one city official, who merely reiterates Defendants' assertions verbatim, *see* ECF No. 64-2 at PageID.1045, there is no evidence demonstrating that chalking is necessary to mitigate traffic congestion.[2] Nor is there any evidence that such congestion has posed or would pose a substantial threat to public safety.

---

[2] Defendants' citation to *Uday v. City of Dearborn*, 96 N.W.2d 755 (Mich. 1959) (en banc) is without merit. In *Uday*, the Michigan Supreme Court held that a city ordinance allowing downtown businesses to acquire adjoining residential land for parking was "a reasonable exercise of [its] police power." *Uday*, 96 N.W.2d at 778. In doing so, the Michigan Supreme Court noted that "[t]he personal injury hazard in . . . congested business areas require[d] no elaboration." *Id.* at 776. Even ignoring the difference in legal issues, this single statement made with respect to the

Regarding the automobile exception, Defendants merely assert that their chalking was supported by probable cause. ECF No. 114 at PageID.2322–23. The undisputed evidence, however, is that Defendant Hoskins chalked tires for timekeeping purposes, not because of any indicia of wrongdoing. *See* ECF No. 64-3 at PageID.1072–74. Moreover, the mere fact that a vehicle is parked in a time-restricted zone—where vehicles *should* park—is not "sufficient to warrant a reasonable [person] in believing that" it is illegally parked. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (defining "probable cause").

Given the lack of any material change in facts, *Taylor I* remains controlling, and neither the community-caretaker exception nor the automobile exception applies to this case.

### iv.

No reasonable person would argue that something as trivial and transitory as chalk on a tire offends a reasonable expectation of privacy. But the Fourth Amendment protects more than those expectations that society deems reasonable. As the Supreme Court explained in *Jones*, the Fourth Amendment also protects the ancient right of the people to exclude the government from their "houses, papers, and effects." *See Jones*, 565 U.S. at 405 (quoting U.S. CONST. amend IV).

In extending that right to this case, the Sixth Circuit held that chalking was reasonable only if it fell within one of the "few specifically established and well-delineated exceptions" to the warrant requirement. *Taylor II*, 11 F.4th at 487. Because no such exception applies,[3] this Court

---

City of Dearborn more than 60 years ago is hardly evidence of a substantial risk to public safety in the City of Saginaw.

[3] Defendants note that it would be "unreasonable to first obtain a warrant before chalking." ECF No. 114 at PageID.2317. But as a practical matter, not every investigatory tool will find a path through the Fourth Amendment. In some cases, the Fourth Amendment is more of a roadblock than a speedbump. *See, e.g.*, *City of Indianapolis v. Edmond*, 531 U.S. 32, 48 (2000) (holding that

must take the Sixth Circuit's prior decisions one step further: Defendants' chalking was not only a search under the Fourth Amendment, but also a violation of it.

**B.**

The next issue is whether the City had a custom or policy of chalking, such that it may be held liable for the conduct of its parking officials. Because § 1983 "does not permit a municipal entity to incur liability under a theory of *respondeat superior*," *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)), "[a] plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury," *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Monell*, 436 U.S. at 690–91). For purposes of § 1983, a "policy" includes "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality]," *Johnson v. Hardin Cnty.*, 908 F.2d 1280, 1285 (6th Cir. 1990) (quoting *Monell*, 436 U.S. at 690–91), and "custom" refers to "a legal institution that is permanent and established, but is not authorized by written law," *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *Monell*, 436 U.S. at 691).

The City argues that it is not liable under *Monell* because it did not require Hoskins and other parking officials to use chalk or to "discipline [them] for not chalking." ECF No. 114 at PageID.2336. Instead, it merely provided them with chalk "as a tool that could be used to perform their job." *Id.* And, in some instances, they apparently performed their job without chalk. *See id.* (noting that some "parking tickets [were] issued without chalk").

---

drug-interdiction checkpoints violated the Fourth Amendment); *Chandler v. Miller*, 520 U.S. 305, 322 (1997) (same as to drug testing political candidates).

The City's argument is unconvincing for two reasons. First, as explained, a plaintiff need not demonstrate an official policy to establish *Monell* liability. "[T]he existence of a custom of tolerance or acquiescence of federal rights violations" is sufficient. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020). In this case, the City provided chalk to its parking officers and then issued thousands of parking tickets based in part on their chalking. *See* ECF No. 91 at PageID.1466 (noting that nearly 5,000 parking tickets were issued during the relevant period). At the very least, the City has "tolera[ted] or acquiesce[d]" to a pervasive custom of chalking. *See Lipman*, 974 F.3d at 747.

Second, as Plaintiff notes, the City played a more direct role in chalking than it acknowledged. The City provided Defendant Hoskins with not only the chalk but also training for using it, a "wand" for holding it, and a handheld device for recording when she "marked" a vehicle. ECF No. 64-3 at PageID.1058, 1063, 1084–86. Although Defendant Hoskins enjoyed some discretion in deciding *when* to chalk, the practice of chalking was not hers. In her own words, "[s]he just d[id] what the city t[old] [her] to do." ECF No. 64-3 at PageID.1076; *see also id.* ("Q: All right. So you don't have the choice whether or not to mark tires on a vehicle, you're told whether to do it or not? A: Yes.").

Accordingly, all reasonable jurors would agree that the City had a custom of chalking that caused Plaintiff's injury.

## C.

The final issue is remedies. As previously noted, Plaintiff seeks (1) a declaratory judgment, (2) a permanent injunction, and (3) damages. Each remedy is addressed in turn below.

**i.**

Under the Declaratory Judgment Act, federal courts "may declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could

be sought." 28 U.S.C. § 2201(a). District courts enjoy "substantial discretion" when deciding

whether to exercise declaratory jurisdiction, as "facts bearing on the usefulness of the declaratory

judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp."

*Scottsdale Ins. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton v. Seven Falls Co.*,

515 U.S. 277, 289 (1995)). The Sixth Circuit has identified five factors that district courts should

consider:

> (1) [W]hether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*United Specialty Ins. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (quoting *Grand Trunk*

*W. R.R. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). The fourth factor is divided into

three subfactors:

> (1) [W]hether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* (quoting *Scottsdale Ins.*, 513 F.3d at 560).

Here, all five factors weigh in favor of exercising declaratory jurisdiction. Because this

case turns on whether chalking is constitutional, a declaratory judgment would both "settle the

controversy" (except as to damages) and "clarify[] the legal relations in issue." *See Cole's Place*, 936 F.3d at 396. There is also no indication that Plaintiff is seeking a declaratory judgment for "procedural fencing," or that such a judgment would encroach on state-court jurisdiction. *See id.* A declaratory judgment is also the most effective remedy because damages are limited and a permanent injunction is inappropriate. *See* discussion *infra* Sections III.C.ii, III.C.iii.

Defendants' only argument to the contrary rests on the mistaken assumption that chalking is constitutional. *See* ECF No. 117 at PageID.2411 ("Defendants deny that Plaintiff is entitled to declaratory relief [because] [t]ire chalking [is] reasonable under Fourth Amendment . . . .").

Accordingly, this Court will exercise declaratory jurisdiction and declare that Defendants' practice of suspicion-less chalking is unconstitutional.

## ii.

Plaintiff next seeks to permanently enjoin Defendants from chalking. *See* ECF No. 115 at PageID.2371–72. "Injunctive relief is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 429 (6th Cir. 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "A party is entitled to a permanent injunction if it can establish that it suffered a constitutional violation and will suffer continuing irreparable injury for which there is no adequate remedy at law." *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006). "If [a plaintiff] succeed[s] in demonstrating an actual constitutional violation and continuing irreparable injury, [then she] must also show 'that the public interest would not be disserved by a permanent injunction.'" *Friedlander*, 978 F.3d at 429 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Although Plaintiff and the class have suffered a constitutional violation, there is no evidence that their injury is "continuing." *See Baird*, 438 F.3d at 602. The City stopped chalking

tires in 2019 and has since used other methods to enforce its parking restrictions.[4] *See* ECF No. 64-3 at PageID.1074–75. There is no evidence that the City intends to resume chalking. Nor would it be in the City's best interest to do so. As discussed above, suspicion-less chalking is unconstitutional. *See* discussion *supra* Section III.C.i. And any parking official who continues to chalk despite this declaration risks personal liability. *See Vanderhoef v. Dixon*, 938 F.3d 271, 276 (6th Cir. 2019) (noting that officials are entitled to qualified immunity only if "their conduct does not violate clearly established statutory or constitutional rights" (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Still, Plaintiff maintains that a permanent injunction is warranted. She notes that "[the] voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." ECF No. 115 at PageID.2371 n.8 (citing *Ammex, Inc. v. Cox*, 351 F.3d 697, 704 (6th Cir. 2003)). Plaintiff is correct that voluntary cessation usually does not deprive federal courts of jurisdiction. *See League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008) ("A defendant's 'voluntary cessation of a challenged practice' does not moot a case." (quoting *Ammex*, 351 F.3d at 704)). Even so, the issue is not whether this Court *may* issue an injunction but whether this Court *should* issue an injunction. There is no evidence that the City will resume chalking and, thus, no reason to believe that Plaintiff's injury is "continuing." *See Baird*, 438 F.3d at 602 (emphasis added).

For these reasons, Plaintiff's request for a permanent injunction will be denied.

---

[4] During her deposition, Hoskins testified that every time she marked a vehicle she noted the time of day on a piece of paper. *See* ECF No. 64-3 at PageID.1084–86. Presumably, the City now relies exclusively on this paper method to record how long vehicles have been parked.

### iii.

The final issue is damages. On behalf of herself and the subclass, Plaintiff seeks to recover a refund of the parking fine. *See* ECF No. 115 at PageID.2372-73. She reasons that chalking was "the 'but for' cause of the fines imposed." *Id.*

### a.

At common law, it was widely recognized that "every injury imports a damage," even if that damage is nominal. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 799 (2021) (quoting *Ashby v. White*, 92 Eng. Rep. 137 (K. B. 1703)). The same rule applies to constitutional injuries. *See id.* at 800 ("Nominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages. They are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages."); *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978) (holding that due-process violations are actionable for nominal damages despite lack of an "actual injury"); *see also A'La v. Atwood*, 21 F.3d 427 (6th Cir. 1994) (unpublished table decision) ("Because the jury found a violation of Al-Jabbar's Fourth Amendment rights, he is entitled to one dollar in nominal damages."). Accordingly, a plaintiff who establishes the violation of her constitutional rights is entitled to recover nominal damages, as well as compensatory damages for any "actual injury." *See Uzuegbunam*, 141 S. Ct. at 800.

The seminal case in this context is *Carey v. Piphus*, 435 U.S. 247 (1978). In *Carey*, the Supreme Court recognized that "the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." *Carey*, 435 U.S. at 254. The Supreme Court also recognized, however, that this principle would be difficult to apply "to concrete cases." *See id.* at 257.

This case is certainly no exception. Unlike a typical Fourth Amendment case, in which the injury might be a broken arm or damaged property, the "injury" alleged here is a parking ticket—an injury that, though causally connected to the constitutional violation (i.e., chalking), does not directly flow from it. The question under *Carey*, then, is whether Plaintiff may be compensated for that injury.

The answer begins with the common law of torts. *See id.* at 258. As the Supreme Court explained, common-law courts have spent centuries "develop[ing] a set of rules to implement the principle that a person should be compensated fairly for [her] injuries." *Id.* at 257. Those rules provide "the appropriate starting point for the inquiry under § 1983." *Id.* at 258; *see also Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007) ("Traditional tort concepts of causation inform the causation inquiry on a § 1983 claim." (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005))). And when "the interests protected by a particular branch of the common law of torts" closely parallel "the interests protected by a particular constitutional right," "it may be appropriate to apply the tort rules of damages directly." *Carey*, 435 U.S. at 258.

Yet the common law will not "provide a complete solution to the damages issue" in every case. *Id.* In some cases, "the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law torts." *Id.* "In those cases, the task will be the more difficult one of adapting common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right." *Id.* In other words, the rules governing compensation might have "[to] be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law."[5] *Id.* at 259.

---

[5] Unfortunately, neither side briefed *Carey* or the framework that it established.

**b.**

The Seventh Circuit recently applied this framework to a similar claim for damages. In *Martin v. Marinez*, 934 F.3d 594 (7th Cir. 2019), a motorist (Martin) brought an action under § 1983 after being arrested for possession of cocaine. *Martin*, 934 F.3d at 596–97. He claimed that the police lied about him having a broken taillight to justify stopping him, after which they discovered cocaine in his vehicle. *Id.* On the officers' motion, the district court held that Martin could not recover for conduct occurring after the police discovered the cocaine, including his 65-day incarceration, because the police had probable cause to arrest him. *Id.* at 597. At trial, the jury awarded Martin $1.00 in nominal damages for the illegal stop. *Id.* On appeal, Martin argued that because the illegal stop was the "proximate cause" of his arrest, he should have been allowed to recover damages for his time in custody. *Id.* at 598.

"Using the available common-law torts as a starting point," the Seventh Circuit first considered whether Martin could have recovered incarceration damages under a common-law theory of false arrest or malicious prosecution. *Id.* at 598–99. That hurdle proved "insurmountable." *Id.* at 599. Because the police had probable cause to arrest him, Martin could not have maintained actions for false arrest or malicious prosecution. *Id.* at 598–99.

The Seventh Circuit then considered whether incarceration damages "would effectively redress" Martin's Fourth Amendment interests. *Id.* at 599. But Martin fell short again. After surveying the relevant case law, much of which precludes the recovery of incarceration damages, *see id.* at 600–04, the Seventh Circuit concluded that such an award would result in a "mismatch between the violation and the damages," *id.* at 605. "[T]he right in question," the Seventh Circuit explained, "[was] Martin's right not to be stopped by officers without reasonable suspicion," which "was vindicated by the nominal damage the jury awarded." *Id.*

**c.**

Examined under the same framework, Plaintiff's argument for reimbursement of her parking-fine damages stops short. The closest common-law analog to chalking is trespass to chattels. *See Taylor I*, 922 F.3d at 332–33 (citing RESTATEMENT (SECOND) OF TORTS § 217 cmt. e (AM. L. INST. 1965)). But Plaintiff could not claim trespass to chattels in this case, because chalking does not "impair . . . [the] condition, quality, or value" of the vehicle; cause "bodily harm"; or meet any of the other conditions for actionable trespass. *See* RESTATEMENT (SECOND) OF TORTS § 218 (AM. L. INST. 1965).

The basic problem is that chalking is relatively harmless. And, unlike possessors of land, the common law does not allow possessors of chattel to seek relief "for harmless intermeddlings." *See id.* § 218 cmt. e; *see also Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 739 (E.D. Mich. 2010) ("A trespass to chattels is actionable if one dispossesses another of or intentionally and harmfully interferes with another's property." (quoting *Mackie v. Bollore S.A.*, No. 286461, 2010 WL 673295 (Mich. Ct. App. Feb. 25, 2010) (unpublished) (per curiam))), *aff'd sub nom. Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010) (unpublished); *Intel Corp. v. Hamidi*, 71 P.3d 296, 302 (Cal. 2003) ("The Restatement, too, makes clear that some actual injury must have occurred in order for a trespass to chattels to be actionable."); *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981) ("Liability [for trespass to chattels] does not attach, unless the wrongful detention is accompanied by actual damage to the property or deprives the owner of its use for a substantial period of time.").

Although this common-law rule cannot alter Plaintiff's ability to recover nominal damages, *see Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 800 (2021) ("[Nominal] damages [are] awarded

- 23 -

by default . . . ."), it weighs heavily against her claim to any additional damages because of the common-law origin of her right, *see Taylor I*, 922 F.3d at 332–33; *Carey v. Piphus*, 435 U.S. 247, 258 (1978) ("[If] the interests protected by a particular branch of the common law of torts . . . parallel closely the interests protected by a particular constitutional right . . . [, then] it may be appropriate to apply the tort rules of damages directly to the § 1983 action.").

With no refuge in the common law, Plaintiff's claim to parking-fine damages turns on whether such damages are necessary to "effectively redress" her Fourth Amendment interests. *See Martin v. Marinez*, 934 F.3d 599 (7th Cir. 2019). This Court is unaware of any controlling authority considering a similar issue, but arguments could be made both ways. On the one hand, nominal damages would likely deter municipalities from chalking tires due to the cumulative effect that such damages would have. *See* ECF No. 105 at PageID.2239 (noting that class membership is "easily in the tens of thousands"). On the other hand, the parking fines in this case merely cost each ordinance violator $15.00 to $30.00, ECF No. 68-4 at PageID.1212, which is dramatically less than the damages at issue in *Martin*. *See Martin*, 934 F.3d at 597 (seeking "civil damages [for one plaintiff] totaling $110,500").

This impasse is best resolved by considering the relative significance of Plaintiff's Fourth Amendment interests. In *Martin*, the Seventh Circuit concluded that $1.00 was sufficient to vindicate a motorist's interest in avoiding a brief, unlawful detention. *See id.* at 605. It stands to reason, then, that Plaintiff's interest in preventing a harmless trespass like tire chalking—an interest that derives from the common law but is not compensable thereunder—will also be "vindicated by [a] nominal award." *Id.*

Plaintiff's arguments to the contrary miss its mark. Plaintiff conceptualizes the issue as one of only proximate cause—that is, whether the tire chalking was the natural cause of the parking

tickets. *See* ECF No. 115 at PageID.2373. But, as explained above, *Carey* calls for a case-by-case analysis that begins with the consideration of tort-law analogs. *See Carey*, 435 U.S. at 258. And in this case, the closest tort-law analog—trespass to chattels—forecloses Plaintiff's requested relief.[6]

Given the lack of support under both the common law and Fourth Amendment, Plaintiff's claim for parking-fine damages must be rejected.[7]

**d.**

Ordinarily, there would be some damages question left for the jury to resolve. After all, many § 1983 cases entail more than one discrete injury. *See, e.g.*, *Martin*, 934 F.3d at 597 (seeking damages for incarceration and lost business income). But, in this case, Plaintiff's only evidence of "actual injury" is the payment of parking tickets. *See Uzuegbunam*, 141 S. Ct. at 800. With that issue resolved, there is nothing left to decide in this case. For that reason, a final judgment will be entered declaring that Defendants' practice of chalking tires is unconstitutional and awarding nominal damages to the subclass for each instance of chalking. The issue of attorney's fees may be resolved in post-judgment motion practice. *See* FED. R. CIV. P. 54(d)(2) (providing that motions for attorney's fees should be filed after judgment).

---

[6] For the same reason, Plaintiff's reliance on *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592 (6th Cir. 2007), is misplaced. In *Hamilton*, the Sixth Circuit considered whether a public-defender organization had proximately caused the plaintiff's injury for purposes of *Monell* liability. *Powers*, 501 F.3d at 608. But the *Monell* issue in this case has already been resolved. *See* discussion *supra* Section III.B. Simply put, the issue here is not whether the City violated Plaintiff's rights but whether Plaintiff may recover parking-fine damages for the City's violation.

[7] As a result, this Court declines to consider the issue of proximate cause. *See* ECF No. 114 at PageID.2324–30 (arguing that Plaintiff has failed to demonstrate that chalking caused the parking tickets).

**IV.**

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 114, is **GRANTED IN PART AND DENIED IN PART**. Defendants' Motion is **GRANTED** to the extent that it seeks to foreclose (1) a permanent injunction and (2) the recovery of the amounts paid for parking tickets. Defendants' Motion is **DENIED** in all other respects.

Further, it is **ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 115, is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion is **DENIED** to the extent that it seeks (1) a permanent injunction and (2) to recover the amounts paid in parking tickets. Plaintiff's Motion is **GRANTED** in all other respects.

A final judgment will be issued separately.

Dated: August 8, 2022                                    s/Thomas L. Ludington
                                                         THOMAS L. LUDINGTON
                                                         United States District Judge